SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
816.474.6550 (Telephone)
816.421.5547 (Facsimile)
Todd W. Ruskamp, Esq. (*pro hac vice*)
truskamp@shb.com

SHOOK, HARDY & BACON L.L.P.
1155 F Street, N.W., Suite 200
Washington, D.C.  20004-1313
202.783.8400 (Telephone)
202.783.4211 (Facsimile)
Kenneth E. Chase, Esq. (NY Bar #4943544)
kchase@shb.com

*Attorneys for Creditor Shannon L. Spangler, P.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                              :
                                                    :  Case No. 15-23105
KNOWLEDGE STRATEGY SOLUTIONS, LLC,  :
                                                    :  Chapter 11
                    Debtor.              :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**RESPONSE TO DEBTOR'S MOTION FOR AN ORDER (I) ENFORCING
THE AUTOMATIC STAY; (II) RECOGNIZING REMOVAL OF JURISDICTION
PURSUANT TO 28 U.S.C. §1452; (III) EXTENDING THE AUTOMATIC STAY
TO THE DEBTOR'S PRINCIPAL, A. KERSHAW P.C.; AND (IV) FOR
COSTS ASSOCIATED WITH MAKING THIS MOTION**


**TO:    THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE**

Shannon L. Spangler, P.C. ("Spangler") through its undersigned counsel, submits the

following Response To Debtor's Motion For An Order (I) Enforcing The Automatic Stay; (II)

Recognizing Removal Of Jurisdiction Pursuant To 28 U.S.C. §1452; (III) Extending The Automatic Stay to Debtor's Principal, A. Kershaw P.C.; And (IV) For Costs Associated With Making This Motion (the "Motion"). The relief requested in the Motion should be denied.

## A.    Background

1.    On August 7, 2014, Spangler commenced an action captioned *Shannon L. Spangler, P.C. v. A. Kershaw, P.C. et al.*, Case No. 1416-CV188112 in the Circuit Court of Jackson County, Missouri ("Jackson County Action"). A true and accurate copy of the petition initiating the Jackson County Action is attached as Motion Ex. B (the "Jackson County Petition"). [1]

2.    The Jackson County Petition names three defendants: A. Kershaw, P.C. ("AK"), Knowledge Strategy Solutions, LLC, a Missouri limited liability company ("KSS") and Knowledge Strategy Solutions, LLC, a New York limited liability company ("KSS – New York") (AK, KSS and KSS-New York are collectively referenced as "Defendants").

3.    On September 22, 2014, Defendants in the Jackson County Action filed a motion to compel arbitration ("Arbitration Motion"). A true and accurate copy of the Arbitration Motion is attached as Ex. 1. Among other things, Defendants stated in the Arbitration Motion that "Defendant Knowledge Strategy Solutions, LLC of New York is not nor has it ever been a party to the agreement between Plaintiff and A. Kershaw, P.C." Arbitration Motion, ¶ 2, Ex. 1 (referencing the underlying Operating Agreement for KSS).

4.    On October 14, 2014, the Circuit Court of Jackson County entered an Order referring portions of the Jackson County Action for arbitration. A true and accurate copy of the

---

[1]    In an effort to avoid burdening the Court with duplicate exhibits, Spangler will refer throughout to exhibits included with Debtor's Motion to the extent possible with the designation "Motion Ex. ___."

2

Order is attached as Motion Ex. D.  As reflected in the Order, only claims made by Spangler against AK were referred to arbitration.

5.      On October 17, 2014, AK and KSS, but not KSS-New York, filed a Motion to Stay Court Proceedings, a true and accurate copy of which is attached as Ex. 2.

6.      On the same day, October 17, 2014, KSS-New York filed a Motion to Dismiss for Lack of Jurisdiction and Lack of Standing ("Jurisdictional Motion").  A true and accurate copy of the Jurisdictional Motion is attached as Ex. 3.  In the Jurisdictional Motion, KSS-New York emphasized again that it was not a party to the Operating Agreement and that it was an entity separate from KSS.  Jurisdictional Motion, ¶¶ 2 and 4, Ex. 3.

7.      Spangler commenced an arbitration proceeding before JAMS on October 24, 2014 in response to the Court's October 14, 2014 Order (the "Arbitration").  A true and accurate copy of the Arbitration Demand submitted by Spangler to JAMS is attached as Ex. 4.  Only AK is identified a respondent/defendant and claims are asserted against only it in the Arbitration.

8.      On November 12, 2014, AK filed an Answer and Counterclaim in the Jackson County Action ("AK Answer").  A true and accurate copy of the AK Answer is attached at Motion Ex. C.

9.      On November 12, 2014, KSS (referencing itself as "KSS-Mo" in the pleading) filed an Answer and Counterclaim in the Jackson County Action ("KSS Answer").  A true and accurate copy of the KSS Answer is attached at Ex. C.

10.     On November 12, 2014, KSS-New York filed a Motion to Reconsider an Order Dated November 6, 2014 ("Reconsideration Motion").  A true and accurate copy of the Reconsideration Motion is attached as Ex. 5.  In the Reconsideration Motion, KSS-New York

urged that "there is, in fact, only one company named Knowledge Strategy Solutions, LLC." Reconsideration Motion, ¶ 2, Ex. 5.

11.     Spangler's Combined Suggestions in Opposition to Motions to Reconsider Orders filed on November 24, 2014 in response to the Reconsideration Motion identified numerous representations by KSS and KSS-New York that they are separate legal entities.  *See* Spangler Combined Opposition, ¶¶6-8. Ex. 6.

12.     The Jackson County Court entered an Order denying the Reconsideration Motion. In doing so, the Court stated: "Further, Defendant's claim that KSS and KSS-New York are the same entity is inconsistent with Defendant's answer and previous pleadings."  *See* Order, p. 2, Ex. 7.

13.     On November 24, 2014, AK and "KSS" (without identification as the Missouri or New York entity) filed Defendants A. Kershaw, PC's and Knowledge Strategy Solutions, LLC's Motion for Declaratory Judgment ("Declaratory Judgment Motion")  A true and accurate copy of the Declaratory Judgment Motion is attached as Ex. 8.

14.     On December 5, 2014, KSS-New York, like AK and KSS the prior month, filed its Answer and Counterclaim in the Jackson County Action ("KSS-New York Answer").  A true and accurate copy of the KSS-New York Answer is attached at Motion Ex. C.

15.     On December 10, 2014, counsel for "A. Kershaw, PC and Knowledge Solutions Strategy, LLC (Missouri and New York)" filed a Motion for Leave to Withdraw as Counsel in the Jackson County Action.   In the Motion to Withdraw, Defendants' counsel represented "Defendants insist upon taking actions that Counsel considers repugnant and with which Counsel has a fundamental disagreement."  *See* Motion to Withdraw, ¶2, Ex. 9.

16.     On December 30, 2014, new counsel for Defendants entered an appearance in the Jackson County Action.

17.     On December 31, 2014, the Jackson County Court denied the Motion for Declaratory Judgment.

18.     On January 23, 2015, new counsel for Defendants sent correspondence to counsel for Spangler stating, among other things, that "neither you [Ruskamp] nor SHB [Shook, Hardy & Bacon, LLP] can serve as counsel for Plaintiff [Spangler] in this case". Defendant's counsel requested that Ruskamp and SHB withdraw as counsel to Spangler based upon an assertion that Ruskamp is a "necessary witness with personal knowledge of the 'communications' that allegedly lead (or, truthfully, did not lead) to an agreement among the parties." *See* January 23, 2015 letter, Ex. 10.

19.     On February 2, 2015, Spangler's counsel responded to the January 23 letter from Defendants' counsel. *See* February 2, 2015 letter, Ex. 11. Among other things, counsel for Spangler stated that there was no proper basis for Defendants to suggest that counsel must withdraw from representation of Spangler in the Jackson County Action and further questioned whether the belated threat was a tactical ploy. Defendants never responded to the February 2, 2015 letter.

20.     On May 25, 2015, Spangler filed its Motion for Appointment of Receiver and Memorandum of Law in Support ("Receiver Motion"). A true and accurate copy of the Receiver Motion is attached as Ex. 12. The Receiver Motion requested the appointment of a receiver over AK and KSS-New York by the Jackson County Court. In the Receiver Motion, Spangler set forth detailed factual statements with citations to the record in support of the relief requested. Receiver Motion, ¶¶ 1-18, Ex. 12. The Receiver Motion detailed the many ways in which AK

had taken control of the business of KSS and transferred and used all the assets of KSS to benefit itself and KSS-New York, including cash, clients, accounts receivable, website, intellectual property, etc.

21.     AK and KSS-New York refused to respond to the Receiver Motion by June 4, 2015, the original response deadline.  Instead, they requested that Spangler agree to an extension through July 10, 2015 based upon an assurance that Defendants wanted to mediate the dispute. Spangler agreed to the extension.

22.     On June 29, 2015, former Circuit Court Judge Jackie Cook, acting as a mediator, assisted the parties in reaching what Spangler thought was a settlement.  The mediation was attended by all three defendants – AK, KSS and KSS-New York.   At the conclusion of the mediation, the parties executed the Memorandum of Agreement in Mediation attached as Exhibit 13 (the "Mediation Memorandum").  The Mediation Memorandum required, inter alia, AK, KSS (the Missouri limited liability company) and KSS-New York (the New York limited liability company) to execute a settlement agreement and to pay Plaintiff $8,500 at signing and $7,000 on August 1, 2015, followed by a series of other payments all totaling $92,500.  Defendants also agreed to execute consent judgments in favor of Spangler to be held pending payment in full of the settlement amount.

23.     Anne Kershaw, a New York licensed attorney, accompanied by two attorneys from Rouse Hendricks German May PC, attended the mediation in Jackson County, Missouri on behalf of Defendants.   Ultimately Anne Kershaw, as corporate representative, signed the Mediation Memorandum on behalf of AK, KSS and KSS-New York, representing that all

Defendants would pay the settlement amount and sign consent judgments for that amount[2]. *See* Mediation Memorandum, Ex. 13, ¶ 5. Notwithstanding the representations of Anne Kershaw and the language of the Mediation Memorandum, on July 21, 2015, Defendants repudiated the Mediation Memorandum by affirmatively stating that AK *would not* execute a consent judgment or be obligated to pay the settlement amount set forth in the Memorandum. That position was subsequently confirmed in writing by Defendants' counsel on July 24, 2015. *See* Boulware email dated July 24, 2015; Ex. 14. Defendants did not make the payments due by August 1, 2015 and did not execute the settlement agreement or the consent judgment as required by paragraphs 5(b) and 6 of the Mediation Memorandum.

24. Despite having negotiated and signed the Mediation Memorandum which expressly required AK to sign the settlement agreement as an obligor for the settlement amount, Defendants subsequently drafted an agreement without AK as an obligor and argued that AK need not sign the settlement agreement and consent judgment. *See* Draft settlement agreement from Boulware; Ex. 15. After receiving comments from Spangler, including with respect to the need for AK to be a party to the obligation to pay the settlement amount, AK's counsel refused to talk with the undersigned about the needed revisions. Defendants then sought additional sessions with the mediator, in an attempt to induce Spangler to sign a settlement agreement without AK as an obligor. Even on July 24, 2015, when Defendants confirmed in writing that AK would not sign the settlement agreement as obligor, they continued the pretense of seeking additional assistance from the mediator. *See* Boulware email dated July 24, 2015; Ex. 14.

25. On August 3, 2015, KSS-New York filed this Chapter 11 proceeding. As required by the Bankruptcy Code, KSS-New York submitted a Statement of Financial Affairs

---

[2] Defendants also expressly agreed that, in the event of a default in payment, Plaintiff may recover attorneys' fees incurred in enforcement and collection.

which included a summary of payments made by KSS-New York within the 90 days prior to filing. *See* Statement of Financial Affairs; Ex. 16. Surprisingly, after signing the Mediation Memorandum on June 29, 2015, AK, Anne Kershaw and her husband Cliff Berger were paid over $90,000 by KSS-New York in the 35 days prior to the filing. Yet, not a penny was paid to Spangler, despite the promise to pay $15,500 (of the $92,500) to Spangler during the same period. As is now clear, AK refused to sign the settlement agreement as agreed in the Mediation Memorandum, while at the same time urging Spangler to sign a settlement agreement with only KSS-New York as the obligor, knowing that KSS-New York was being stripped of its assets by AK and its principal immediately prior to the Chapter 11 filing.

26.     Only KSS-New York is a debtor in this Chapter 11 proceeding.

27.     The bankruptcy schedules filed by KSS-New York list AK as a creditor of the debtor. Schedule B filed by KSS-New York does not include claims pending in the Arbitration as assets of the bankruptcy estate. Schedule D shows no secured creditors and Schedule E shows only minimal, non-insider priority claims. Excluding insider claims and Spangler's claim, Schedule F reflects unsecured claims of less than $4,000. In truth, Spangler is the only significant creditor of the estate. Schedule G fails to identify the Mediation Memorandum as an executory contract. And, the Statement of Financial Affairs fails to identify the tens of thousands of dollars paid to insiders, including AK and Anne Kershaw, in the one year prior to the filing – choosing instead to state that "none" were paid. *See* Statement of Financial Affairs; Question 3, Ex. 16.

28.     No bankruptcy proceeding has been filed by AK or KSS. Both are separate legal entities from KSS-New York. AK is an active New York limited liability company. KSS has

been terminated and dissolved as a matter of Missouri law. AK failed to properly liquidate the

assets of KSS when AK terminated KSS in June 2014. *See* Receiver Motion, pp. 8-12, Ex. 12.

**B.**     **KSS-New York Is Not A Party To The Operating Agreement**

KSS-New York asserts in the Motion that "Debtor was conceived and formed by Ms.

Anne Kershaw and Ms. Shannon Spangler pursuant to an Operating Agreement dated April 10,

2013." Motion, ¶ 5. That plainly is not the case. KSS-New York, the Debtor here, is a New

York limited liability company formed in July, 2014. *See* Receiver Motion, ¶ 14, Ex. 12. The

Operating Agreement relates to the formation of KSS – a Missouri limited liability company

formed in 2013. *See* Operating Agreement, Preamble, Motion Ex. A. KSS-New York and KSS

are entirely separate and distinct legal entities. Contrary to statements in the Motion, Spangler

has never been a member of nor held an interest in KSS-New York. Spangler never withdrew

from KSS-New York. It is true that Ms. Kershaw apparently formed KSS-New York and that

the assets and business of KSS were improperly transferred and used by AK after Spangler's

withdrawal from KSS, despite obligations under the Operating Agreement and Missouri law to

pay Spangler. But, all of those activities, including the formation of the Debtor, occurred long

after KSS was "conceived and formed" under the Operating Agreement in 2013. KSS-New

York was neither conceived nor formed under the Operating Agreement.

Beyond the dispositive terms of the Operating Agreement, the statements made in the

Motion cannot be reconciled with the pleadings in the Jackson County Action. Specifically, the

Jackson County Petition identifies three defendants, all of which were served with process and

filed answers and counterclaims in the case. *See* Motion Exs. B and C. It was not only that

"Spangler PC sued the Debtor and Kershaw PC in Missouri state court," as the Motion states.

Motion, ¶ 10. All three entities actively participated in the Jackson County Action. And, the

prior admissions made by AK, KSS and KSS-New York in the Jackson County Action further contradict the Motion.  For example, KSS-New York repeatedly represented to the Jackson County Court that it "is not nor has it ever been a party to the agreement between Plaintiff and A. Kershaw, P.C."  Arbitration Motion, ¶ 2, Ex. 1.  *See also* Jurisdictional Motion, ¶¶ 2 and 4, Ex. 3.

Apparently, it was only after Defendants realized the significance and seriousness of AK's failure to properly dissolve and liquidate KSS under the Operating Agreement and Missouri law that the story changed strikingly.[3]  In the Reconsideration Motion filed in November, 2014, and after months of representations in the Jackson County Action to the contrary, KSS-New York claimed "there is, in fact, only one company named Knowledge Strategy Solutions, LLC."  Reconsideration Motion, ¶ 2, Ex. 5.  Not fooled, Jackson County Court denied the Reconsideration Motion and made short work of the tactic: "Further, Defendant's claim that KSS and KSS-New York are the same entity is inconsistent with Defendant's answer and previous pleadings."  *See* Order, p. 2, Ex. 7.

Undeterred, AK and KSS filed the Declaratory Judgment Motion on November 24, 2014.  Implicit in the Declaratory Judgment Motion was the same argument that KSS and KSS-New York are the same entity and that KSS-New York is a party to the Operating Agreement.  *See* Declaratory Judgment Motion, ¶¶ 18-20, Ex. 8.  Yet, this time AK and Ms. Kershaw added a new document dated June 12, 2014 and titled "Agreement to Continue Business of Knowledge Strategy Solutions, LLC" to the discussion.  *See* Ex. 5 to the Declaratory Judgment Motion, Ex. 8.  Putting aside the inaccurate statements that Ms. Spangler and Ms. Kershaw individually were

---

[3]     An explanation of the facts and law applicable to AK's actions leading to dissolution of KSS and its failure to properly liquidate KSS and pay Spangler under the Operating Agreement and Missouri law is set forth in the Receiver Motion.  *See* Receiver Motion, pp. 2-10, Ex. 12.

members of KSS, most surprising was that a document with the legal significance that AK and Ms. Kershaw attributed to it in the Declaratory Judgment Motion would turn up for the first time so many months later—seemingly out of the blue.  After multiple requests for production of the "native" version of the document were sent to Defendants' counsel, the "native" version was finally produced.  It was then learned that the document was in fact created and signed on November 5, 2014, not on June 12, 2014.  In truth, the document signed by Ms. Kershaw was nothing more than a fabricated "agreement" apparently offered in the Jackson County Action as purported evidence that KSS and KSS-New York are the same entity or that KSS-New York is a party to the Operating Agreement.  At that point, Defendant's counsel apparently had seen enough and filed a motion to withdraw only days later representing to the Jackson County Court: "Defendants insist upon taking actions that Counsel considers repugnant and with which Counsel has a fundamental disagreement." *See* Motion to Withdraw, ¶2, Ex. 9.[4]

In short, there is no factual or legal basis for the Motion's statements that the Debtor, KSS-New York, is a party to the Operating Agreement, is the entity in which Spangler was a member, is the entity from which Spangler withdrew, is the party against which claims are alleged in the Arbitration, or is the company with assets at issue in the Arbitration.  There are no legitimate corporate records, "agreements" or other facts supporting those conclusions.  Rather, the documents (Operating Agreement, filings with the Missouri Secretary of State and New York Division of Corporations and contemporaneous communications) say exactly the opposite.  The Motion offers nothing but unsupported allegations which do not support extension of the automatic stay.

---

[4]   Unfortunately, discovery of the fabrication only caused AK to change tactics again.  Less than a month later, AK and the vaguely-referenced "KSS", through new counsel, launched an attack on Spangler's counsel by threatening a motion to disqualify.  *See* January 23, 2015 letter, Ex. 10.

C.     **Applicability Of The Automatic Stay To Non-Debtor Parties**

Spangler has not and does not question the applicability of the automatic stay to claims and actions brought against KSS-New York.  It is the debtor in this Chapter 11 proceeding and all pre-petition claims asserted against it are subject to the provisions of §362.  However, Spangler disputes that §362 stays prosecution of the Arbitration or any claims against AK, a non-debtor party and the only defendant/respondent in the Arbitration:

> Although the stay protects the debtor against a broad range of actions and activities, it does not protect separate legal entities, such as corporate directors, officers or affiliates, partners in debtor partnerships or codefendants in pending litigation.
>
> . . .
>
> The stay of litigation does not protect nondebtor parties who may be subjected to litigation for transactions or events involving the debtor.  Thus, for example, a suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing.

3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2013) (citations omitted).  Innumerable bankruptcy courts, district courts and courts of appeal agree, including courts in this district.  *See Queenie, Ltd. v. Nygard International,* 321 F.3d 282, 287 (2d Cir. 2003); *In re Excel Innovations, Inc.,* 502 F.3d 1086  (9th Cir. 2007) (reversing bankruptcy court order enjoining arbitration against non-debtors); *RCS Engineering Products Co., Inc. v. Himmelspach,* 102 F.3d 223 (6th Cir. 1996) (automatic stay did not apply to action against debtor's parent corporation); *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541 (5th Cir. 1983) (stay does not prohibit actions against non-bankrupt third parties or codefendants); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 192 B.R. 73 (S.D.N.Y. 1996) (same).[5]

---

[5]     Because the automatic stay does not apply to claims in the Arbitration brought against only AK, Spangler has not previously sought relief from the automatic stay pursuant to 11 U.S.C. §362(d) with respect to those claims.

The suggestion by counsel for KSS-New York that the automatic stay applies in the Arbitration action where KSS-New York is not a party is contradicted by this well-established precedent. For example, in the *Bank of Brussels* matter, a creditor with a security interest in some of the bankrupt debtor's accounts receivable brought an action against another creditor and non-debtor affiliates alleging claims that the creditor and defendants had improperly diverted accounts receivable from the debtor to non-debtor affiliates to the detriment of the plaintiff. The claims were similar to those made against AK in the Arbitration for its role in diverting and absconding with assets of KSS by – admittedly – "moving" them to itself and KSS-New York. In *Bank of Brussels,* the defendant creditor and non-debtor affiliates argued that various subsections of §362(a), including those cited by KSS-New York here, prevented the continued prosecution of the action. The district court for the Southern District of New York rejected every single argument and concluded that the automatic stay was inapplicable. *Bank of Brussels,* 192 B.R. at 75-79.

A similar result was reached in *RCS Engineering Products Co., Inc. v. Himmelspach,* 102 F.3d 223 (6th Cir. 1996). There, the Sixth Circuit rejected the argument that §362 stayed an action by a creditor against the debtor's parent corporation for unpaid invoices on an alter ego theory. The parent corporation, like KSS-New York here, claimed that §362(a)(3) stayed the action. The Circuit found that the claims at issue, like Spangler's claims here, were not property of the debtor's estate and therefore were not within the scope of subsection (3).

Finally, in *In re The Tax Group, LLC,* 397 B.R. 670 (Bankr. S.D.N.Y.), Judge Glenn provided a comprehensive analysis of the applicability of §362 to the prosecution of state court actions against former employees of the bankrupt employer for diverting the funds of the plaintiffs/customers. The bankruptcy trustee for the employer sought to stay the cases on the

grounds that they undermined settlement efforts with the former employees and related insurers. Judge Glenn's analysis focused on whether the claims at issue in the underlying cases were claims that were direct and belonged to the plaintiffs/creditors or were derivative and belonged to the trustee and therefore were property of the bankruptcy estate under 11 U.S.C. §541. *Tax Group,* 397 B.R. at 679. The court concluded that a large majority of the 25 claims alleged were direct claims belonging to the plaintiffs and it declined to stay the prosecution of those claims. *Tax Group,* 397 B.R. at 687.

Here, there is no suggestion that the claims alleged by Spangler against AK in the Arbitration belong to any party other than Spangler. The Arbitration Demand alleges only claims that Spangler has against AK. KSS-New York does not identify any claims at issue in the Arbitration as assets of the bankruptcy estate. KSS-New York has no standing to assert the claims alleged by Spangler against AK, nor are those claims property of the bankruptcy estate under 11 U.S.C. §541.

The Arbitration Demand makes clear that Spangler seeks a money judgment against AK for its actions related to the improper transfer, use and deprivation of the assets of KSS, not KSS-New York. A comparison of the unsupported statements made in the Motion to the record illustrates the point:

The table on page 5 of the Motion states that claims are made against only "Debtor and/or Kershaw PC." The Jackson County Petition shows otherwise. For example, Count I of the Petition is specifically brought against AK and KSS only. The Debtor is not now nor has it ever been a party to the claim. The same is true of Count II and Count III despite what the Motion suggests. Count IV is brought against only AK. And, while Count V and Count VI include the Debtor (KSS-New York), Spangler does not dispute that the claims against KSS-New York are

stayed.  Importantly, neither Count V nor Count VI alleged against the Debtor were referred to Arbitration.

The same table states in the Nature of Allegation that it involves "the manner the Debtor was operated."  But, the Petition states otherwise.  Count I sets forth detailed allegations concerning the efforts of AK and KSS to operate and loot the business of KSS (not the Debtor) of virtually all of its assets to the detriment of Spangler.  There is no damage claim alleged against the Debtor.  In fact, the Debtor had not even been formed until July, 2014 – weeks after AK and KSS had largely stripped KSS of its assets.  Count II is no different.  The Motion suggests Count II raises issues about the payment of draws by the Debtor to Spangler.  But, Count II does not allege a claim against the Debtor.  Instead, it asserts that AK and KSS failed to make required distributions.  Count III again makes no claim of breach of the Operating Agreement against the Debtor.  The Debtor is not a party to the Operating Agreement as it repeatedly argued to the Jackson County Court.

The related comments in the second table in the Motion that Spangler's First Supplemental Responses to A. Kershaw, PC's First Interrogatories involve "**only the Debtor and the Debtor's property**" are wrong.  *See* Motion, p. 6-7.  On the first line, the Motion indicates that the Supplemental Responses state that "Plaintiff claims damages related to: the use and transfer of **[the Debtor's]** assets."  Motion, p. 6.  But, what the Supplemental Responses really say is: "Plaintiff claims damages related to:  (1) the use and transfer of the assets of **Knowledge Strategy Solutions, LLC, a Missouri limited liability company**…."  *See* Motion Ex. E, p. 1 (emphasis added).  The same substitution is used in the Motion for categories two and three.  The Motion claims that damages are sought related to **"[the Debtor]."**  But, the Supplemental Responses actually state "Knowledge Strategy Solutions, LLC, a Missouri limited

liability company," again, not the Debtor.  *See* Motions Ex. E, p. 1.  The only reference in the table which accurately references "**[the Debtor]**" is in category 6 where the Supplemental Responses state that damages are sought from the Debtor (KSS-New York) for tortious interference.  Of course, there is no dispute that those claims are stayed by §362, and those claims are not part of the Arbitration.

There is no factual or legal support for the Motion's proposition that "the Civil Action and Arbitration solely involved damages claims against the Debtor, its property and its assets." Motion, p. 7.  The only way such statements can be made is to literally change what the Jackson County Petition and Supplemental Responses actually say – as the Motion does.  Debtor's recasting, in its Motion, of the claims pending in Jackson County and the Arbitration cannot be excused merely as an excess of advocacy.  The Motion misstates the clear language of the Petition and the Supplemental Responses, and these misrepresentations cannot justify the application of §362 to claims against only a non-debtor entity in the Arbitration proceeding.

**D.    No Relief Is Appropriate Concerning Removal Of The Jackson County Action**

In its conclusion and as additional relief, the Motion requests "recognizing that removal of the Civil Action to the United States District Court of the Western District of Missouri removed jurisdiction from the state court and related arbitration to further preside over the Civil Action." Motion, p. 12.  It is unclear precisely what the Debtor seeks.  There is no citation to any authority in the Motion, except possibly a passing reference to 28 U.S.C. §1452.  Motion, pp. 1 and 2.  Certainly, no authority is cited for the position that the Debtor's removal of the Jackson County Action somehow revoked or nullified prior orders entered by the Jackson County Court.  That position is clearly at odds with 28 U.S.C. §1450: "all injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect

until dissolved or modified by the district court."  And, the established authority in the Eighth

Circuit which includes the Western District of Missouri where the Jackson County Action was

removed agrees.  *See In re Minnesota Mutual Life Insurance Co. Sales Practices Litigation,* 346

F.3d 830, 834 (8th Cir. 2003) (affirming removal and holding that prior state court order was law

of the case); *see also Torah Soft, Ltd. v. Drosnin,* 224 F. Supp. 2d 704, 710 (S.D.N.Y.2002)

(recognizing as law of the case state court order entered prior to removal); 14C Wright, Miller,

Cooper & Steinman, *Federal Practice and Procedure,* §3738 (West 2009) ("it is well-settled that

state court rulings do remain binding on the parties unless and until formally set aside by the

federal district court").  The Motion's apparent criticism that the "Arbitrator did not even address

the Removal of Counts I, III and IV to federal court" is not well-placed.  The referral to

Arbitration of the claims against only AK by the Jackson County Court remains an enforceable

order.

     The deadline for Spangler to seek remand of the claims against AK is no sooner than

September 7, 2015.  Spangler intends to file a motion requesting remand before the deadline.

The notice of removal indicates that removal is sought under 28 U.S.C. §1452 and Bankruptcy

Rule 9027.  *See* Notice of Removal, Ex. 17.[6]  An important difference between removal under

§1452 is that "any claim or cause of action" may be removed, while broader federal question

removal under §1441 permits removal of the entire lawsuit.  1 *Collier on Bankruptcy* ¶ 3.07[1]

(16th ed. 2015)  Given that the Jackson County Action includes claims against the Debtor and

two non-debtors, the distinction is important.  Spangler expects to raise questions about whether

---

[6]      In filing the notice of removal, Debtor failed to comply with Bankruptcy Rule 9027's
requirement that "a copy of all process and pleadings" from the state court action
accompany the notice of removal.  Debtor has also failed to seek an order approving the
employment of counsel filing the removal papers and subsequent motion to transfer as
required by 11 U.S.C. §327 and Bankruptcy Rule 2014.

the district court has jurisdiction over the claims against the non-debtors and the Arbitration for purposes of §§ 1334 and 1452(a).  Spangler also intends to request, in any event, that the Court remand the claims against AK on "equitable grounds" as permitted by §1452(b) based on AK's conduct throughout the Jackson County Action.  "Section 1452(b) gives broad discretion to the district court to which a claim or cause of action has been removed to remand such claim or cause of action back to the court whence it came."  1 *Collier on Bankruptcy* ¶ 3.07[6] (16th ed. 2015).  Whatever the relief requested in the Motion, it is both misplaced and premature given Spangler's to-be-filed motion for remand.

**E.   KSS-New York Fails To Comply With Procedure To Seek Extraordinary Relief Under Section 105**

As this Court knows, there are limited circumstances when bankruptcy courts can and do order that injunctive relief should be entered to extend the protections of the automatic stay to non-debtors pursuant to the bankruptcy court's equitable powers under 11 U.S.C. §105.  The procedure for seeking such relief is well-established.  And, KSS-New York has failed entirely to comply with the procedure.

Section 105(a) gives a bankruptcy court the power to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).  Section 105 bestows authority on the bankruptcy court to "use its equitable powers to assure the orderly conduct of the reorganization proceedings."  *In re Neuman,* 71 B.R. 567, 571 (S.D.N.Y. 1987).  Even where some claims may belong to the bankruptcy estate (not the situation here), "[t]he Court's conclusions about which claims are direct and which are derivative does not end the inquiry.  The Court must also decide whether a preliminary injunction pursuant to §105(a) is warranted…."  *Tax Group,* 397 B.R. at 683.

"Where an injunction is sought by a debtor under section 105 to stay actions against non-debtors, the relief must be sought through an adversary proceeding under Fed. R. Bankr. P. 7001" in the bankruptcy court. *In re Residential Capital, LLC,* 480 B.R. 529, 538 (Bankr. S.D.N.Y. 2012). "Because the practical effect of such an injunction is to broaden the scope of the automatic stay beyond the terms of 11 U.S.C. §362(a), this is a power that must be used 'sparingly.'" *In re Third Eighty-Ninth Associates,* 138 B.R. 144, 146 (S.D.N.Y. 1992). "The debtor bears the burden of proof in obtaining the 'extraordinary and drastic remedy' of an injunction." *Id.* Throughout this district, parties seeking relief under §105 have recognized the requirement to file an adversary proceeding. *See, e.g., In re Berkelhammer,* 279 B.R. 660 (Bankr. S.D.N.Y. 2002) (adversary proceeding filed over stay violation and discriminatory treatment claim); *In re Nyree Belton,* 2014 WL 5819586 (Bankr. S.D.N.Y. November 10, 2014) (adversary proceeding filed under §105 to enforce discharge injunction). Extending the automatic stay to actions like the Arbitration and over claims against non-debtor parties like AK must be initiated through an adversary proceeding under Bankruptcy Rule 7001 *et seq*.

In this instance, KSS-New York has not properly requested the extraordinary and drastic remedy of extending the automatic stay over claims asserted against only AK in the Arbitration. No adversary proceeding has been filed. And, KSS-New York has not met its burden to obtain relief under §105. The act of counsel for KSS-New York in sending a letter to the Arbitrator fails to meet the requirements of the Bankruptcy Code. Rather, it undermines the protections afforded all parties in an adversary proceeding. And, even though filed with this Court, the Motion fails to initiate an adversary proceeding. The repeated instances of unsupported statements in the Motion which are contradicted by the record demonstrate the problem. The relief requested in the Motion based on §105 should be denied on procedural grounds alone.

**F.      Relief Under Section 105 Is Not Appropriate In Any Event**

The last section of the Motion (pp. 9-11) is a classic §105 argument cast as a request to extend the automatic stay to the Arbitration.  "Extending the automatic stay to the Debtor's sole member A. Kershaw P.C." as the Debtor requests is absolutely inappropriate outside the context of an adversary proceeding.  AK is not a party to the Motion and Spangler, as essentially the only creditor of KSS-New York, receives none of the protections afforded it in an adversary proceeding under Rule 7001 *et seq.*  Spangler objects in the strongest terms to use of the Motion to extend the automatic stay to AK or to enjoin the Arbitration.

The series of comments made in the Motion about the Arbitration proceeding are misplaced:

a)  "Kershaw PC is the subject of the arbitration only by virtue of its membership interest in the Debtor and the relief requested seeks to compel Kershaw PC to turn over the Debtor's property." – To the contrary, AK is a party to the Arbitration based on its own actions to loot KSS of virtually all assets after AK received notice that Spangler intended to withdraw from KSS as a member.  The record of AK's direct activity is indisputable.   Additionally, Spangler seeks a money judgment against AK, not property of the Debtor, as the discussed above.

b)  "The removal of the Civil Action to federal court removes the jurisdiction of the state court to preside over Counts I, III and IV, which includes the arbitration of those same claims that continues to be the subject of the Civil Action." – The Debtor does not cite a single authority for the proposition.  As discussed above, the removal has no impact on prior orders entered by the state court, absent action by the federal

court.  No action has been requested by any party, nor has the federal court taken any action concerning the Arbitration order.

c) "Allowing the arbitration to proceed could result in a massive waste of the Debtor's resources." – This statement is completely without basis.  The Debtor is not a party to the Arbitration and should not be paying any of the expenses of the Arbitration proceeding.  In the 90 days prior to this chapter 11 filing, AK and its principal have taken over $115,000 from the Debtor.  AK has more than enough money to pay for the Arbitration proceeding.  Moreover, only $92,500 of that amount could have been used to avoid the chapter 11 filing, the Arbitration and all other pending litigation.  Rather than perform its obligations under the Mediation Memorandum which provided for a global settlement, AK and its principals took the money.

Debtor points to *Queenie, Ltd. v. Nygard, Int'l,* 321 F.3d 282 (2nd Cir. 2003) to support its request for an extension of the automatic stay to claims made against only AK in the Arbitration. In *Queenie,* the Circuit Court reviewed the applicability of the automatic stay to non-debtor parties in the context of an appeal of an adverse verdict.  One appellant filed a chapter 11 proceeding after the district court addressed post-trial motions.  *See  Queenie, Ltd. v. Nygard, Int'l,* 204 F. Supp. 2d 601 (S.D.N.Y. 2002).  Noting that such relief is invoked not only under §362(a), but also §105, the Court affirmed a limited stay of the pending appeal.  *Queenie,* 321 F.3d at 287-288.  The Second Circuit commented that relief is appropriate where it is shown that there is "a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, [or in] actions where 'there is such identity between the debtor and third-party defendant that the debtor may be said to be the real party defendant….'"  *Queenie,* 321 F.3d at 287-288 (citations omitted).

There is no evidence that KSS-New York is a guarantor for liabilities of AK arising from the Arbitration. And, no insurer has been identified by Defendants for the underlying liability. Additionally, AK has been adamant throughout the Arbitration that it is a separate entity with no liability to Spangler – a position which is directly contrary to the Motion's suggestion that there is such an identity between KSS-New York and AK that KSS-New York is the real party defendant. *See* Motion, p. 11 ("Debtor can be said to be the real party defendant in the arbitration and the civil action"). It is true that the Debtor can make the statement, but that does not make it true. KSS-New York certainly has not treated the parties as one in the same throughout the Jackson County Action as reflected in its filed pleadings. Instead, it proclaimed its separateness and, still today, lists AK as one of its creditors.

Comments in the Motion that the Arbitration claims are "for the Debtors income and assets" are plainly contradicted by the pleadings. Spangler's claims against AK are based upon its own highly improper conduct and role in absconding with assets of KSS. The evidence to be presented at the Arbitration hearing will include information about transfers of tens of thousands of dollars to AK. AK's liability is direct and distinct from actions taken by KSS-New York. In fact, KSS-New York did not even exist until its formation in July, 2014 – weeks after much of AK's looting of KSS assets had occurred.

AK's statements and admissions in the Arbitration also prove the point. It was AK that served discovery responses in which it objected to the production of its financial records on the basis that "information concerning the organization and operation of A. Kershaw, P.C. is not relevant to this arbitration." *See* Respondent A. Kershaw, P.C.'s Amended Responses to Complainant's Document Requests, Response Nos. 7-9, Ex. 18. AK has also taken the position throughout that its affairs are so unrelated that it need not produce any information in response to

discovery requests propounded in the Arbitration. While the position is incorrect, it is disingenuous for the Debtor to now make unsubstantiated claims that it and AK are "functionally the same."

AK demanded that Spangler commence the Arbitration and it did so. AK has been uncooperative and difficult throughout the Arbitration and Jackson County Action. AK spent thousands of dollars and months of time focused on improper tactics and threats of retaliation against Spangler and her counsel. AK (not the Debtor) filed a counterclaim for fraud against Ms. Spangler personally in the Jackson County Action, even though Ms. Spangler was not a party to any agreement or business relationship with AK. AK has leveraged scheduling opportunities to suit its principal's demands and has done virtually everything to delay its day of reckoning. Its conduct in connection with the mediation and settlement reflects that it will stop at nothing to avoid paying Spangler what it is owed, even after acknowledging its own liability to Spangler in the Mediation Memorandum. AK had the means to avoid the bankruptcy filing and the need to reorganize the Debtor by simply performing the settlement terms it agreed to through its owner Anne Kershaw. Doing so would have literally cost less than the payments make to the Debtor's insiders and counsel prior to the filing of the chapter 11 case. Instead, AK refused to sign the properly drafted settlement agreement and set out on an obvious mission to take even more money from KSS-New York before authorizing this chapter 11 filing. Along the way, AK through its counsel, tried to bully, trick and compel Spangler to sign a settlement documents that only obligated KSS-New York to pay the settlement amount. If the grossly inappropriate payments to AK, Kershaw, and Kershaw's husband in the 35 days after the Memorandum prove anything, they prove that those parties have no interest in reorganizing KSS-New York so that it can pay its obligations, including acknowledged obligations to Spangler. The failure to properly

identify tens of thousands of dollars of additional payments to insiders within one year of the filing and the failure to identify executory contract obligations raise serious disclosure issues. The schedules that have been completed demonstrate that Spangler is the only real creditor. There is no reason to stay this action on the pretense that AK is necessary to the effective reorganization of KSS-New York. Given the undeniable conduct of AK, the protections of the automatic stay should only be extended to it if it too files a chapter 11 proceeding so that the corresponding responsibilities of the Bankruptcy Code are borne by AK with the automatic stay benefits.

The Arbitration is scheduled for final hearing over four to five days in September. It will be a "virtual" arbitration. None of the parties or counsel need to travel as all proceedings will be conducted via the internet. The proceeding was scheduled months ago to permit all parties to clear their calendars. There is no factual or legal support to impose a stay of this case for the claims brought against AK. Spangler respectfully requests that the Court deny all requests to stay, enjoin or further delay the Arbitration proceeding and that the Court grant such other relief as it deems appropriate.

Dated:  August 26, 2015

Respectfully submitted:

SHOOK, HARDY & BACON L.L.P.

By:  /s/  Todd W. Ruskamp
   Todd W. Ruskamp, MO #38625
   (*pro hac vice*)

2555 Grand Boulevard
Kansas City, MO  64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
truskamp@shb.com

Kenneth E. Chase, NY #4943544
SHOOK, HARDY & BACON L.L.P.
1155 F Street, N.W., Suite 200
Washington, D.C.  20004-1313
202.783.8400 (Telephone)
202.783.4211 (Facsimile)
kchase@shb.com

ATTORNEYS FOR SHANNON L.
SPANGLER, P.C.

## CERTIFICATE OF SERVICE

A true copy of the above and foregoing was served via electronic mail this 26th day of

August, 2015, on the following:

Jonathan S. Pasternak
Dawn Kirby
Julie Cvek Curley
Delbello Donnellan Weingarten Wise & Wiederkehr, LLP
One North Lexington Avenue
White Plains, NY  10601
jpasternak@ddw-law.com
dkirby@ddw-law.com
jcurley@ddw-law.com

United States Trustee
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY  10014

 /s/  Todd W. Ruskamp

Todd W. Ruskamp
Attorney for Shannon L. Spangler, P.C.