UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
IN RE:                         .     Case No. 15-23105(RDD)
                               .
KNOWLEDGE STRATEGY             .
SOLUTIONS, LLC,                .     300 Quarrapos Street
                               .     White Plains, NY 10601
                               .
        Debtor.                .
                               .     October 15, 2015
. . . . . . . . . . . . . .          11:39 p.m.
```

TRANSCRIPT OF MOTION OF SHARON L. SPANGLER, P.C. SEEKING
ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY TO PROCEED
IN AN ARBITRATION WITH A. KERSHAW, P.C.
BEFORE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:             DelBello Donnellan Weingarten Wise &
                             Wiederkehr, LLP
                            By: DAWN KIRBY, ESQ.
                            One North Lexington Ave.
                            White Plains, NY 10601

For the U.S. Trustee:       Office of the United States Trustee
                            By: GREG M. ZIPES, ESQ.
                            U.S. Federal Office Building
                            201 Varick Street, Suite 1006
                            New York, NY 10014

TELEPHONIC APPEARANCES:

For the Creditor            Shook, Hardy & Bacon L.L.P.
Shannon L. Spangler,        By: TODD W. RUSKAMP, ESQ.
P.C.:                       2555 Grand Blvd.
                            Kansas City, MO 64108


Audio Operator:             T. Wright

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

(609) 586-2311     Fax No. (609) 587-3599

1  THE COURT: Okay, in re Knowledge Strategy Solutions.
2  I think I have someone on the phone for this too?
3  MR. RUSKAMP: You do, Your Honor. This is Todd
4  Ruskamp on behalf of Shannon L. Spangler, P.C. Thank you for
5  allowing me to participate by phone.
6  THE COURT: Sure. Good morning.
7  MS. KIRBY: Dawn Kirby --
8  MR. RUSKAMP: Good morning.
9  MS. KIRBY: -- DelBello Donnellan, representing the
10 debtor and to my right is Anne Kershaw.
11 THE COURT: Good morning.
12 MR. ZIPES: And Greg Zipes with the U.S. Trustees
13 Office.
14 THE COURT: Okay. So this is the hearing on Sharon
15 L. Spangler, P.C.'s motion to lift the stay to proceed with
16 arbitration that was pending against A. Kershaw, P.C., the
17 debtor's sole member, before the commencement of the bankruptcy
18 case.
19 Obviously, you all have been here before on the
20 motion to enforce the stay and were extended, which I granted
21 but I, I think I was pretty clear that unless there were --
22 well first of all I deemed, in granting it, I deemed Ms.
23 Spangler's opposition to that motion, a lift stay motion so we
24 didn't have to redo it.
25 And I think I was pretty clear at that hearing that

it was likely I'd grant it unless there was some unusual new facts. But I also strongly urged everyone to try to resolve their dispute.

MS. KIRBY: Yes, Your Honor.

THE COURT: Particularly since everyone seemed to agree I think that there actually had been, well, you were down to like the one foot line on that on a settlement of the dispute, if not further, before the bankruptcy.

MS. KIRBY: We had had very extensive conversations. Mr. Ruskamp and I probably have been on the phone for four or five hours total at least going back and forth. We're not at an impasse. We're continuing to discuss. However we're prepared to go forward on the motion today and from the debtor's perspective ask this Court to keep this discreet legal question and decide it because it really is a question of what are the debtor's rights, what is the formation of the debtor and what is validly property of the debtor. As you will --

THE COURT: You can sit down. You don't need to stand up, miss.

MS. KIRBY: Yeah, you can have a seat. I'm sorry. Ms. Spangler is an -- I mean, sorry, Ms. Kershaw is an attorney.

THE COURT: Right.

MS. KIRBY: Which is probably why she's showing respect for the Court. Your Honor, the arbitration that's

1  pending against A. Kershaw, P.C. --

2          THE COURT:  Right.

3          MS. KIRBY:  -- is as you recall from the last
4  argument, simply claims that were brought also against the
5  debtor in a civil action concerning actions of the debtor or A.
6  Kershaw, P.C. has alleged causing actions of the debtor.

7          The very discreet legal question that would really
8  resolve the many, many, many of the claims between the parties
9  is what was the effect of Spangler, P.C.'s withdraw from the
10 debtor by a notice that was served under the operating
11 agreement in May of 2014 and consistent with the operating
12 agreement stated a 30-day term withdrawing effective June 11,
13 2014.

14         Thereafter the single member LLC, the debtor, the
15 single member remaining being A. Kershaw, P.C., moved the state
16 of incorporation to New York by filing a termination in
17 Missouri and opening the company here under the laws of New
18 York.

19         What is required both under Missouri law as well as
20 under the operating agreement for a dissolution of the company
21 that would have entitled Spangler, P.C. to a distribution of
22 assets is filing of something called a notice, a resolution of
23 dissolution.  That was never done.  The resolution of
24 dissolution was not filed.  It's our position therefore the
25 company was never dissolved, simply terminated its Missouri

1  incorporation and came here to New York.

2  Now that pivotal issue will decide whether Spangler, P.C.'s arguments that Missouri Knowledge Strategy fraudulently transferred all its assets over to New York, Knowledge Strategy -- it's really the basis of the entire arguments between the parties and I believe a core bankruptcy question here.

7  THE COURT: But I, as I understood it, and maybe Mr. Ruskamp can correct me, this isn't a fraudulent transfer claim.

9  MS. KIRBY: There are fraudulent transfer claims alleged.

11  THE COURT: No, but that's not, but that's not what's being mediated -- arbitrated.

13  MS. KIRBY: The claims that are being arbitrated, I specifically refer to them.

15  THE COURT: I mean I, Mr. Ruskamp, I thought your response to the objection was that it would be perfectly fine to carve out avoidance issues from the arbitration.

18  MR. RUSKAMP: Right, Your Honor. This is Todd Ruskamp. I understood from the last hearing that you had made clear that an owner would likely carve out any, any Chapter 5 claims and we're not intending to try to prosecute those claims. The pleadings aren't framed that way and we certainly would be respectful of the Court's direction that we not try to prosecute fraudulent transfer claims. I think they exist but those are --

1  THE COURT: I understand. But I understand there --
2  MR. RUSKAMP: -- those are for this Court.
3  THE COURT: Right. I understand there are, there are factual overlaps but that is how I understood your position and you just reiterated it so.
6  MS. KIRBY: Well I --
7  THE COURT: I mean I -- and if it's a you know if there's a veil piercing type of issue here, it seems to me that the focus is solely in respect of how the corporate forum was used in respect of or against Sharon Spangler, P.C., not creditors generally. So again that would not appear to me to be usurpation of you know an estate issue. It's really a -- it's really an individual issue for Spangler, P.C.
14  MS. KIRBY: Well the for instance three counts that were brought against both the debtor and Kershaw, P.C. in the civil action, three of them were transferred over to arbitration and one of them for example is count four which alleges causing the Knowledge Strategy Solution assets to be used and/or transferred to the New York entity.
20  THE COURT: Right.
21  MS. KIRBY: So fraudulent transfer is alleged.
22  THE COURT: But again the order would carve out fraudulent transfer claims and veil piercing claims that are not unique to Ms. Spangler. So you know one of the bases for -- well I don't know whether under Missouri law this would be

the case, but certainly under New York, piercing the veil is if you use the corporate forum improperly or fraudulently as to you know a particular person or here a P.C.

And to me that's, that's -- arbitrating that issue is not taking over an estate cause of action and doesn't involve multiple parties you know i.e. the other creditors in this case to the extent there are any, it relieves just a dispute between Ms. Spangler and Ms. Kershaw and you know through her the debtor.

MS. KIRBY: But I further believe that it involves, it's a Court issue because it involves property of the estate under Section 541. They're seeking a determination that all of the property of the debtor's estate belongs to another entity. That's essential --

THE COURT: Well vis-a-vis Ms. Spangler, that's right, that's the distinction --

MS. KIRBY: Well vis-a-vis all creditors.

THE COURT: Well, no, that's the distinction I was just making is that this is, it appears to me in looking at the underlying claims, a case that would -- you know how the Second Circuit in the various Madoff cases has distinguished veil piercing where basically every creditor is affected equally by, or substantially equally, by the actions that are asserted to give rise to veil piercing.

In those circumstances it's an estate cause of action

1  and because third parties are involved who didn't sign on to
2  the arbitration provision I think it would be a much closer
3  question whether, whether under the case law, as I discussed in
4  the Hostess case given the third party involvement, the stay
5  would be lifted or not.
6      But here this -- these claims seem to me, and the
7  order can make it clear so the arbitrator understands the
8  distinction, these claims seem to me to be unique to Ms.
9  Spangler.  It's not how the corporation was run generally.
10 She's saying that basically it was run in a way to,
11 specifically to impair her rights, not creditors generally, but
12 her rights.
13     MS. KIRBY:  But what she's claiming, Your Honor, is
14 that under her hypothetical all of the assets of the operating
15 company in Missouri were fraudulently transferred to a
16 different company here in New York, which we don't agree with.
17     THE COURT:  Right.
18     MS. KIRBY:  But under that argument she would be
19 seeking to take all of the debtor's assets and transfer it back
20 to a different company for the benefit at the end of the day
21 for all creditors.  And Ms. Spangler, P.C. being a --
22     THE COURT:  No, that's not -- that would be carved
23 out.  It's, look, this is why I urged you all to settle.  The
24 result of this -- first of all it's only against Ms. Kershaw,
25 it's not against the debtor -- but the result of this

```
 1  litigation would not be an avoidance, would not affect all
 2  creditors, it would just affect her -- it would determine her
 3  claim against Ms. Kershaw as P.C.
 4           It's not a fraudulent transfer action, it's not
 5  determining the rights of other creditors, and it doesn't even
 6  give her a specific property interest beyond a claim if she
 7  wins.
 8           MS. KIRBY:  I agree with Your Honor that it is not --
 9           THE COURT:  So it's just fixing her claim.
10           MS. KIRBY:  Correct.
11           THE COURT:  And so you know to me this isn't -- this
12  doesn't implicate the issues that I discussed in Hostess about
13  arbitration.  It really is just an issue between her and Ms.
14  Kershaw and through Ms. Kershaw the debtor.  It doesn't
15  determine the rights of third parties, all the other creditors,
16  they're not affected by this or the debtor's rights on their
17  behalf, i.e. the avoidance claims or veil piercing claims that
18  would belong to the debtor as opposed to just an individual
19  creditor.
20           MS. KIRBY:  Okay.  Well the other issue then is the
21  cost of the arbitration.  The arbitrator's declining to decide
22  this legal issue in advance, instead scheduling a four-day
23  arbitration.
24           And the distraction of Ms. Kershaw from the operation
25  of the debtor during all this period leading up to and during
```

1  the four-days and therefore since these claims are similarly
2  pending against the debtor in the civil action would this Court
3  consider continuing the stay as against the arbitration for
4  when the case which we are seeking to transfer here comes
5  before Your Honor and we could make a motion on that discreet
6  legal issue?
7         THE COURT:  I don't think under the Supreme Court
8  case law that that would be a proper exercise of my discretion
9  if I have any such discretion.  I'm not aware of any bankruptcy
10 cases, certainly none after the <u>Italian Colors</u> Supreme Court
11 case came down that would lead me to do that.
12         I mean, the Supreme Court has made it very clear that
13 arbitration provisions should be enforced except for
14 exceptional circumstances and generally speaking cost isn't one
15 of those circumstances.  Cost and efficiency.  They basically
16 say you made the deficiency determination when you signed the
17 agreement.
18         So I just -- I think that -- I mean I have ruled
19 that, once, that it would be improper to arbitrate a situation
20 where in essence the issue was whether a debtor's discharge was
21 violated given the policy behind the discharge, i.e. these
22 people have no money and they should have access to the
23 Bankruptcy Court and therefore you know that's, Congress has
24 directed that to be the access.
25         But I just got reversed on that by the judge so he

1  read <u>Italian Colors</u> differently.  And this case isn't close to
2  those facts, particularly when there's been a settlement
3  apparently previously agreed to.  So I'm not going to exercise
4  my discretion there.
5           MS. KIRBY:  May I just -- my client wants to speak to
6  me.
7           THE COURT:   Sure.
8                (Attorney/client discussion)
9           MS. KIRBY:  My client is asking Your Honor to direct
10 the arbitrator -- I don't understand.  I apologize, Your Honor.
11          THE COURT:  Well, I think I -- I mean, I overheard
12 the discussion.
13          MS. KIRBY:   I'm sorry.
14          THE COURT:  I think, and this is consistent with one
15 of the points raised in the objection, that I should at least
16 stay everything in the arbitration other than the issue of the
17 effect of the corporate change.  And I don't believe that would
18 be appropriate for me to do.  You could make that argument to
19 the arbitrator.  I think he's already -- and he's, you know, an
20 experienced person, I think he's already made that decision.
21 He's considered that argument.
22          Now you may given that there will be a carve out in
23 this order which we've already discussed, you may feel that
24 that gives you a basis to raise the point again with him and
25 maybe that will be sufficient.  But I'm not going to direct him

1  to do that. He's much closer to the facts and he's the one
2  that will be trying this and I think that he should decide how
3  he's going to try it.
4          MS. KIRBY: Okay.
5          THE COURT: I mean generally speaking judges, and
6  this person is a former judge, try to try things as efficiently
7  as possible and I'm not going to second guess either what he's
8  done so far or what he may do in light of the order lifting the
9  stay.
10         MS. KIRBY: Okay. So we'll confer with Mr. Ruskamp
11 on the --
12         THE COURT: Right.
13         MS. KIRBY: -- form of the order.
14         THE COURT: I mean I don't know if you have anything
15 more to say, Mr. Ruskamp, but you basically won.
16         MR. RUSKAMP: Thank you, Your Honor. I did just want
17 to raise with you the question of whether or not the Court
18 would consider waiting a 14-day stay and I'll probably get the
19 Rule wrong --
20         THE COURT: Well is there a -- do you have --
21         MR. RUSKAMP: -- is it seventy sixty-two?
22         THE COURT: -- do you have a date? Is there a reason
23 to waive it? I mean do you have a date from --
24         MR. RUSKAMP: Well I'm sorry to interrupt, Your
25 Honor. We do not currently have a date. Where it stands right

now is that the arbitrator continued the matter and asked us to report back after this hearing.

THE COURT: Right.

MR. RUSKAMP: And probably will wait to report back until after you enter an order just so that we don't misstate things.

THE COURT: Right.

MR. RUSKAMP: But I, I guess what I'd be concerned about is that if the -- if A.K. takes the position that we can't even talk with the Court about rescheduling and trying to get this back on track until the 14 days has run we're just going to lose you know additional time. I'd at least like to be able to go to the arbitrator once the order is entered and begin that process of getting back on calendar.

There will end up being some lead time but there is you know in our view anyway no reason to just have 14 days of dead time trying to satisfy the Rule. So it's for that reason that I ask.

THE COURT: Okay. All right. Well I think that the -- I think there is sufficient cause for the waiver to inform the arbitrator of the entry of the order and to discuss scheduling. I think as a practical matter you're not going to have the trial within 14 days of entry of the order but certainly there's no reason not to inform the arbitrator of the entry of the order and have a, if he wants a scheduling

1 conference for example or to discuss scheduling with him and
2 you know with both the parties.  So you could put that in the
3 order.
4         MR. RUSKAMP:  Thank you, Your Honor.
5         THE COURT:  So I'm going to ask you -- I'm not going
6 to ask you to formally settle the order on notice but you
7 should after you prepare it e-mail a copy to Ms. Kirby and give
8 her you know a day or so to look it over and discuss it with
9 you before you e-mail it to chambers.
10         MR. RUSKAMP:  All right.
11         THE COURT:  Okay.
12         MS. KIRBY:  Judge --
13         MR. RUSKAMP:  Thank you, Your Honor.  And again thank
14 you for allowing me to participate by phone.
15         THE COURT:  Sure.
16         MS. KIRBY:  There is one other issue I just wanted to
17 raise.  I learned this morning from Ms. Lee that the debtor's
18 motion for a violation of the automatic stay which concerns
19 letters sent to the debtor's accountants which was previously
20 scheduled for November 16th.
21         THE COURT:  Right.
22         MS. KIRBY:  I'm advised that date is, all matters on
23 that date are being adjourned.
24         THE COURT:  Well not necessarily.
25         MS. KIRBY:  Oh, okay.

1  THE COURT: They might be.
2  MS. KIRBY: Okay. Well our issue, Your Honor, is
3  that I hoped that --
4  THE COURT: She's a very hard worker. She takes --
5  MS. KIRBY: She has a hard job.
6  THE COURT: Something came up that is -- that's one
7  of two potential days that I might.
8  MS. KIRBY: Okay.
9  THE COURT: And it's not clear that's going to go off
10 or not.
11 MS. KIRBY: Well our issue, and I hope that you would
12 discuss it for Mr. Ruskamp's benefit, is the return date of the
13 motion, on the return date of the motion Your Honor decides if
14 an evidentiary hearing is needed, that would be at a later
15 date.
16     And Mr. Ruskamp has served a subpoena on the
17 accountants which includes requests concerning you know did you
18 receive this letter or what are your communications.
19 THE COURT: I'm just not that familiar with the
20 motion but if what you're going to is this point. I mean our
21 local rules provide with some exceptions and I don't think this
22 is one of them, that the initial hearing on a matter unless the
23 Court orders otherwise is a non-evidentiary hearing.
24 MS. KIRBY: Right. I'm hoping -- I wanted Mr.
25 Ruskamp to hear that from Your Honor because I'm hoping to

1  resolve some of the objections so I don't have to file a motion
2  to quash and objections and spend more time of the --
3       THE COURT:  Well you should talk about the discovery
4  between yourselves.
5       MS. KIRBY:  Okay, thank you.
6       THE COURT:  But you also should, I mean I still -- I
7  can't say this strongly enough.  I think given the work that
8  had already been put into trying to resolve this matter before,
9  shortly before the petition was filed, you want to close that
10 loop before any more money is spent.
11      And you know if there's a good financial reason that
12 that deal doesn't exist any more I understand that, but that
13 requires you know particularly since we're dealing with people
14 in Missouri, showing them.
15      And I don't know what's help up the negotiations.  I
16 just think everyone should be bending over backwards to resolve
17 them.  And if it's a factual issue as to the debtor's financial
18 condition you know show them.  And I think probably if it's not
19 that what applied before generally should apply now.
20      MS. KIRBY:  We continue to discuss my -- Ms. Kershaw
21 came early to my office this morning --
22      THE COURT:  Okay.
23      MS. KIRBY:  -- to meet with me and Mr. Pasternack --
24      THE COURT:  So you --
25      MS. KIRBY:  -- and unfortunately our paralegal didn't

WWW.JJCOURT.COM

1 tell us she was there --
2 THE COURT: Okay.
3 MS. KIRBY: -- so we're going back to do that right
4 now.
5 THE COURT: So use the next few you know that should
6 be the main concern.
7 MS. KIRBY: Yup.
8 THE COURT: Okay.
9 MS. KIRBY: Thank you, Your Honor.
10 THE COURT: Thank you.

\* \* \* \* \*

## C E R T I F I C A T I O N

I, JANET D. PERSONS, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Janet D. Persons
JANET D. PERSONS
J&J COURT TRANSCRIBERS, INC.   DATE: October 22, 2015