**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re:

                                                        Chapter 11
KNOWLEDGE STRATEGY SOLUTIONS LLC,        Case No. 15-23105 (RDD)

                                       Debtor.
-------------------------------------------------------------X

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
----------------------------------------------------------------X
SHANNON L. SPANGLER, P.C,

                    Plaintiff/Counterclaim-Defendant,   District Court Index No_____

                         -against-

A. KERSHAW, P.C. and KNOWLEDGE STRATEGY        Circuit Court – Jackson County
SOLUTIONS LLC,                                  Case No. 1416-CV18812

                    Defendants.
----------------------------------------------------------------X


                    <u>NOTICE OF REMOVAL</u>


**TO THE HONORABLE DISTRICT COURT JUDGE**
**ASSIGNED TO THESE PROCEEDINGS:**


        Knowledge Strategy Solutions LLC (the "<u>Movant</u>" or the "<u>Debtor</u>"), by its attorney Jill D.

Olsen, respectfully provides notice to this Court of removal of the above-captioned action from

the Circuit Court of Jackson County, Missouri at Kansas City,  to the United States District Court

for the Western District of Missouri, and respectfully represents as follows:

        1.        By Petition for Damages and Appointment of Receiver dated August 7, 2014 (the

"<u>Petition</u>") filed by Shannon L. Spangler, P.C. ("<u>Plaintiff</u>" or "<u>Spangler</u>") against, *inter alia,* the

Debtor in the Circuit Court of Jackson County, Missouri at Kansas City (the "Circuit Court"), bearing Case No. 1416-CV18812 (the "Circuit Court Action"). Annexed hereto as **Exhibit "1"** is a copy of the Petition.

2.      On November 12, 2014, Defendant A. Kershaw PC filed an Answer to the Petition. On November 12, 2014, Defendant Knowledge Strategy Solutions LLC (MO) filed an Answer to the Petition. On December 5, 2014, the Debtor filed an Answer to the Petition. Copies of all three (3) Answers are annexed hereto as **Exhibit "2"**. On April 23, 2015, the Debtor filed an Amended Counterclaim, a copy of which is annexed hereto as **Exhibit "3"**.

## THE BANKRUPTCY FILING

3.      On August 4, 2015, the Debtor filed a Chapter 11 petition in the United States District Court for the Southern District of New York, assigned Case No. 15-23105 (RDD). The Debtor has continued in possession of its property and management of its affairs as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      This Notice of Removal is being timely filed pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure.

5.      Section 1452(a) of Title 28 of the U.S. Code grants a very broad right to parties to civil parties to remove "any claim or cause of action" to the district court (and by referral to the bankruptcy court) provided that bankruptcy jurisdiction exists under 28 U.S.C. § 1334. This United States District Court for the Western District of Missouri has subject matter jurisdiction over the Circuit Court Action because the Circuit Court Action is a civil proceeding that arises in or is related to a case under title 11 -- the Chapter 11 case of the Debtor. The Circuit Court Action alleges significant counterclaims which constitute property of the Debtor's bankruptcy estates. The Debtor shortly will file a motion for transfer of venue to the New York District

Court.

6.      This action is a "core proceeding" within the meaning of 28 U.S.C §157(b)(2)(A), (B), (C), (K), (L) (N) and (O) in that the action concerns (i) the disposition of property of the estate; (ii) counterclaims asserted by the Debtor, and (iii) the ability of the Debtor to timely proceed in its attempt to reorganize under Chapter 11 of the Bankruptcy Code.

7.      Pursuant to 28 U.S.C. Section 1334(d) and the permanent order of reference of the United States District Court for the Southern District of New York issued pursuant to 28 U.S.C. §157, the Bankruptcy Court has jurisdiction over counterclaims by the Debtor's estates against person filing claims against the estates.   Consequently, the above captioned action, which involves determination of counterclaims asserted by the Debtor, as well as the disposition of property of the Debtor and the proper administration of the Debtor's bankruptcy estate, should be decided by the Honorable Judge assigned to these proceedings.

8.      Bankruptcy Court determination of these issues is crucial. Specifically, ability of the Debtor to reorganize is based upon the ability to create unencumbered assets in which the Estate has an interest. It is essential that the Bankruptcy Court be in a position to adjudicate the counterclaims asserted by the Debtor, as they are critical to the Debtor's ability to reorganize under Chapter 11.

9.      This action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. Section 1334, and is one which may be removed to this Court by the Debtor pursuant to the provisions of 28 U.S.C. Section 1452, in that the matter in controversy is a civil action related to a bankruptcy case.

10.      Upon removal the Debtor will promptly seek to transfer venue of this action pursuant to 28 U.S.C. § 1404 to the Court where the Chapter 11 proceedings are pending, the

United States District Court for the Southern District of New York, for its ultimate referral to the Bankruptcy Court.

11.    The Debtor has complied with all applicable requirements of Bankruptcy Rule 9027, and will file a true and correct copy of this Notice of Removal with the State Court. Debtor is also providing counsel for Plaintiff a copy of this Notice of Removal.

Dated: August 6, 2015

*Respectfully submitted,*

THE OLSEN LAW FIRM, LLC

By: */s/ Jill Olsen*
Jill Olsen                MO #49835
118 N. Conistor Ln., Suite B #290
Liberty, MO 64068
Tel: (816) 521-8811
Fax: (816) 278-9493
EM: jill@olsenlawkc.com
ATTORNEY FOR DEBTOR

Exhibit "1"

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| SHANNON L. SPANGLER, P.C.,<br>70-3A Sunrise Ridge Drive<br>Sunrise Beach, MO 65079<br><br>        **Plaintiff,**<br><br>v.<br><br>A. KERSHAW, P.C.,<br>151 Grove Street, Suite 200<br>Tarrytown, NY 10591<br><br>        **AND**<br><br>KNOWLEDGE STRATEGY SOLUTIONS,<br>LLC, a limited liability company organized<br>under the laws of the State of Missouri,<br>c/o Anne Kershaw<br>151 Grove Street<br>Tarrytown, NY 10591<br><br>        **AND**<br><br>KNOWLEDGE STRATEGY SOLUTIONS,<br>LLC, a limited liability company organized<br>under the laws of the State of New York<br>151 Grove Street<br>Tarrytown, NY 10591<br><br>        **Defendants.** | Case No.<br><br>Div. No. |

## PETITION FOR DAMAGES AND APPOINTMENT OF RECEIVER

COMES NOW, Shannon L. Spangler, P.C. ("Plaintiff"), by and through its counsel of

record and in support of its claims against A. Kershaw, P.C. ("AK"), Knowledge Strategy

Solutions, LLC, organized under the laws of the State of Missouri ("KSS"), and Knowledge

Strategy Solutions, LLC, organized under the laws of the State of New York ("KSS–New York")

(KSS-New York together with "AK", and "KSS" referenced as "Defendants"), states and alleges as follows:

## PARTIES

1.     Plaintiff is a professional corporation organized under the laws of the State of Missouri, with its principal place of business in Missouri.  Shannon L. Spangler is the principal of Plaintiff.

2.     AK is a professional corporation organized under the laws of the State of New York with its principal place of business in New York.  Upon information and belief, Anne Kershaw is the principal of AK.

3.     KSS is a limited liability company organized under the laws of the State of Missouri with its principal place of business in New York.

4.     KSS-New York is a limited liability company organized under the laws of the State of New York.  Upon information and belief, its principal place of business is in New York.

## JURISDICTION & VENUE

5.     This Court has personal jurisdiction over Defendants pursuant to Mo. Rev. Stat. § 506.500.  Defendant KSS is a Missouri corporation and it has transacted business within the state and entered into contracts within the state of Missouri.  Upon information and belief, Defendant AK has: (i) transacted business within the state; (ii) entered into contracts within the state; (iii) executed and filed documents initiating the dissolution of KSS in the state, and (iv) used, transferred or caused the use and transfer of assets of KSS by KSS-New York while KSS was involved in dissolution proceedings in the state.  Upon information and belief, Defendant KSS-New York has: (i) transacted business within the state; and (ii) used, transferred or caused

2

the use and transfer of assets of KSS by and to KSS-New York while KSS was involved in dissolution proceedings in the state.

      6.     Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010.  None of the defendants reside in the state of Missouri and this action may be brought in any county in the state.

**FACTS COMMON TO ALL COUNTS**

      7.     On or about April 10, 2013, Plaintiff and AK executed an Operating Agreement for the purpose of forming KSS, a limited liability company organized under the laws of the State of Missouri.  A copy of the Operating Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

      8.     At the time of formation and pursuant to the terms of the Operating Agreement, KSS was a member-managed limited liability company comprised of two members—Plaintiff and AK.

      9.     The purpose of KSS was to engage in the business of providing consulting services to organizations regarding data, records and knowledge management, information governance, e-discovery and related matters, and to engage in any lawful act or activity for which a limited liability company may be formed within the State of Missouri.

**Plaintiff Exercises its Right to Voluntarily Withdraw**

      10.    Under the terms of the Operating Agreement, any member was allowed to withdraw from KSS upon thirty (30) days' written notice.

      11.    Specifically, with respect to withdrawal, section 4.01 of the Operating Agreement provided as follows: "Any Member may withdraw voluntarily or retire from Knowledge Strategy Solutions, LLC by giving not less than 30 days' written notice of its intention to do so."

3

12.     On May 11, 2014, Plaintiff, through its principal, Shannon L. Spangler, confirmed in writing that Plaintiff was voluntarily withdrawing from KSS as permitted by the Operating Agreement.

13.     In communications following Plaintiff's written notice of its intent to withdraw, the parties agreed the withdrawal would be effective as of June 30, 2014—more than thirty (30) days from the written notice.

14.     Plaintiff worked diligently to address all outstanding issues arising from or related to the withdrawal and addressed all such issues by the date of withdrawal agreed to by both AK and Plaintiff—June 30, 2014.

15.     Accordingly, by letter dated June 30, 2014, Plaintiff tendered to KSS its ownership interest in KSS.

16.     Under the terms of the Operating Agreement, Plaintiff withdrew from KSS effective June 30, 2014.

17.     In connection with Plaintiff's withdrawal, Defendants were to remove all references to Plaintiff and/or Plaintiff's principal, Shannon L. Spangler, from all KSS business and promotional materials, including websites, biographical materials, and business cards, effective July 1, 2014.

18.     Plaintiff has demanded that Defendants remove all references to Plaintiff and/or Ms. Spangler in accordance with their obligation to do so.  Defendants have failed and refused to remove such references.

## Defendants Use and Transfer of Assets

19.     After Plaintiff provided written notice of its intent to withdrawal, but before the effective date of withdrawal on June 30, 2014, AK and KSS (at the direction of AK) acted

4

uncooperatively, took unilateral actions without Plaintiff's knowledge or consent, and took various acts to obstruct Plaintiff's access to KSS assets and information about KSS's operations, finances, and other matters.

20. These obstructive and secretive acts by AK and KSS (at the direction of AK) included, among others, unilaterally revoking Plaintiff's access to various banking accounts and other accounts, revoking Plaintiff's access to KSS's payroll system, eliminating Plaintiff's access to KSS credit cards, moving certain domain names out of joint control and into AK's sole control, failing and refusing to make distributions to Plaintiff and extending at least one offer of employment.

21. In addition, despite numerous requests from Plaintiff to AK and KSS, AK and KSS (at the direction of AK) refused to tell Plaintiff whether KSS intended to continue the business activities of KSS as a single-member entity or to proceed with dissolution in accordance with the Operating Agreement.

22. Without notice to Plaintiff, and without Plaintiff's knowledge, on or about June 24, 2014, AK filed with the Missouri Secretary of State a Notice of Winding Up and Articles of Termination for KSS. A copy of the Notice of Winding Up, Articles of Termination, and Certificate of Termination are attached hereto as **Exhibit 2** and incorporated by reference.

23. Anne Kershaw, the principal of AK, executed the Notice of Winding Up and Articles of Termination for KSS. She represented therein that the "reason for filing articles of termination is: Incorporation in New York."

24. As a member of KSS until June 30, 2014, Plaintiff was entitled to know about and participate in these activities, to have access to information of KSS and to receive assets and amounts due it under the Operating Agreement.

5

25.     Plaintiff requested on multiple occasions that AK fulfill its obligations to consult with and/or inform Plaintiff of these developments and to restore access to the various accounts, information, and other materials and to receive distributions all of which Plaintiff was entitled to as a member.  AK, however, failed and refused to do so and persisted in a course of obstruction.

26.     On or about July 28, 2014, AK, its principal Anne Kershaw or someone at their direction, filed Articles of Organization for KSS-New York with the New York Secretary of State.

27.     Upon information and belief, AK, its principal Anne Kershaw or someone at their direction, caused the KSS assets to be used by and/or transferred to AK and/or KSS-New York without Plaintiff's knowledge, permission or approval.

28.     Upon information and belief, the transferred assets include, but are not limited to, the name, website, customer information, customer contacts, customer lists, trademarks, certifications, publications, bank accounts, and capital of KSS, including capital contributed by Plaintiff, among other things.

29.     Upon information and belief, since at least July 28, 2014, KSS-New York has been using assets of KSS to conduct its business, despite those assets being subject to the Missouri winding up process and claims of Plaintiff and creditors of KSS as part of the dissolution of KSS.

30.     Upon information and belief, AK and/or KSS-New York have used the name, likeness, qualifications, reputation, publications and other attributes of and published personal information about Shannon L. Spangler, principal of Plaintiff, without her knowledge or consent.

31.     The website used by KSS-New York is an asset of KSS which AK, its principal Anne Kershaw or someone at their direction, caused to be used by and/or transferred to KSS-

6

New York. The website contains or contained multiple references to assets of KSS, including the name, website address, customer references and endorsements, trademarks, certifications, and publications of KSS, as well as references to Shannon L. Spangler despite the fact that Ms. Spangler has no involvement with, does not own and does not consult for KSS-New York.

32.     KSS-New York has used customer information, customer contacts, and customer lists to market and promote itself and its services, including on July 29, 2014, when an email "blast" was sent to existing and potential clients and contacts of KSS taken from information that AK, its principal Anne Kershaw or someone at their direction, caused to be used by and/or transferred to AK and/or KSS-New York.

**Defendants Refuse to Compensate and Distribute to Plaintiff its Capital Account Required by the Operating Agreement**

33.     Pursuant to Section 3.04(d) of the Operating Agreement, each member of KSS was to "be paid draws as mutually agreed from time to time prior to the end of the year."

34.     Over the course of KSS's existence, the parties received draws monthly, on or about the 15th of each month, when KSS would distribute the net amount to the members.

35.     Thus, the Operating Agreement requires distributions to both Plaintiff and AK each month, on or around the 15th day of the month.

36.     According to the parties' agreement and course of performance, therefore, Plaintiff was entitled to receive a draw on or about June 15, 2014, and on or about July 15, 2014, for the revenues received in May 2014 and June 2014, respectively. Plaintiff is further entitled to receive distributions for revenues received in future months for work performed by Plaintiff.

37.     AK and KSS have, however, failed and refused to pay the monthly draw to which Plaintiff is entitled.

7

38.     Plaintiff has demanded that AK and KSS pay the draw amount which Plaintiff was entitled to receive on June 15, 2014, and July 15, 2014, and thereafter, but AK and KSS have failed and refused to do so.

39.     Upon KSS's dissolution, the members are entitled to a distribution of their capital accounts, as provided in section 4.07(b) of the Operating Agreement.

40.     KSS dissolved upon Plaintiff's withdrawal as of June 30, 2014, or on or about June 26, 2014, by virtue of AK's unilateral filing of the Notice of Winding Up and Articles of Termination.

41.     AK and KSS have failed and refused to distribute to Plaintiff its capital account as required by the Operating Agreement.

42.     Plaintiff has been damaged by the use and/or transfer of KSS assets by and to KSS-New York and AK's and KSS's failure to distribute to Plaintiff its capital account and the distribution amounts owed to Plaintiff as required by the Operating Agreement.

## COUNT I – BREACH OF CONTRACT – USE AND/OR TRANSFER OF ASSETS OF KSS BY AK AND KSS-NEW YORK

43.     Plaintiff incorporates Paragraphs 1-42 above, as if fully set forth herein.

44.     Upon information and belief, AK, its principal Anne Kershaw or someone at their direction, caused the KSS assets to be used by and/or transferred to AK and/or KSS-New York without Plaintiff's knowledge, permission or approval.

45.     Upon information and belief, the transferred assets include, but are not limited to, the name, website, customer information, customer contacts, customer lists, trademarks, certifications, publications, bank accounts, and capital of KSS, including capital contributed by Plaintiff, among other things.

8

46.     The website used by KSS-New York's is an asset of KSS, which AK, its principal Anne Kershaw or someone at their direction, caused to be used by and/or transferred to KSS-New York.  The website contains or contained multiple references to assets of KSS, including the name, website address, customer references and endorsements, trademarks, certifications, and publications, as well as references to Shannon L. Spangler despite the fact that Ms. Spangler has no involvement with, does not own and does not consult for KSS-New York.

47.     KSS-New York has used customer information, customer contacts, and customer lists to market and promote itself and its services, including as recently as July 29, 2014, when an email "blast" was sent to existing and potential clients and contacts of KSS taken from information that AK, its principal Anne Kershaw or someone at their direction, caused to be used by and/or transferred to AK and/or KSS-New York to promote or further the business being transacted by KSS-New York.

48.     Defendants AK and KSS have breached the Operating Agreement in numerous respects, including without limitation:

      a.  Facilitating, promoting and conducting the business of KSS-New York under the name "Knowledge Strategy Solutions, LLC" in violation of the provisions of sections 1.02 and 4.03 of the Operating Agreement;

      b.  Using and/or transferring assets and property of KSS to transact the business of KSS-New York in violation of the provisions of sections 1.05 and 4.06 of the Operating Agreement;

      c.  Not contributing to KSS opportunities within the categories of law-related services and/or knowledge strategy services enumerated in section 2.03(a) of the Operating Agreement, and instead contributing, using and exploiting those

9

opportunities to transact the business of KSS-New York, in violation of section 2.03(a);

d. Failing to disclose to Plaintiff any matter that may be prejudicial to the business prospects of KSS, including its dissolution and the use by and/or transfer of its assets to KSS-New York, in violation of section 2.03(b) of the Operating Agreement;

e. Failing to preserve the confidentiality of all business secrets, trade secrets and other confidential information of KSS, and instead using such information to transact the business of KSS-New York, in violation of section 2.03(c) of the Operating Agreement;

f. Failing to comply with all the directions, instructions and rules as to the conduct of KSS's business generally as agreed to from time to time by the Members, including, by facilitating the use and/or transfer of KSS's assets such as its name, website, customer information, customer contacts, customer lists, trademarks, certifications, publications, bank accounts, and capital of KSS, among other things, in violation of section 2.03(d) of the Operating Agreement.

g. Competing with KSS by carrying on or engaging in any business, occupation or activity or taking steps to set up, promote or facilitate the establishment of any business, occupation or activity which competes with or intends to compete with any part of the business of KSS, in violation of section 2.04(a) of the Operating Agreement; and

10

h.   Failing to use their best endeavors towards the successful operating of KSS and at all times conducting themselves in a fair and proper manner in all transactions of any nature involving KSS, in violations of section 2.05 of the Operating Agreement.

49.   Plaintiff has performed all of its obligations under the Operating Agreement.

50.   Plaintiff has been damaged and continues to be damaged by Defendants' breach of their obligations under the Operating Agreement.

WHEREFORE Plaintiff respectfully moves this Court for entry of judgment in its favor and against Defendants AK and KSS under Count I, for damages to be determined at trial, together with interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT – MONTHLY DRAWS

51.   Plaintiff incorporates Paragraphs 1-50 above, as if fully set forth herein.

52.   Pursuant to Section 3.04 of the Operating Agreement, each member of KSS was to "be paid draws as mutually agreed from time to time prior to the end of the year."

53.   Over the course of KSS's existence, the AK and Plaintiff received draws monthly, on or about the 15th day of each month, when KSS would distribute the net amount to the members of KSS.

54.   Thus, the Operating Agreement required distributions to both Plaintiff and AK each month, on or around the 15th day of the month.

55.   Plaintiff was entitled to receive a draw on or about June 15, 2014, and on or about July 15, 2014, for revenues received in May 2014 and June 2014, respectively.   Plaintiff is

11

further entitled to receive distributions for revenues received in future months for work performed by Plaintiff.

56.     Plaintiff has performed all of its obligations under the Operating Agreement.

57.     AK and KSS have, however, failed and refused to perform their obligations under the Operating Agreement by failing and refusing to pay the monthly draws due to Plaintiff on or about June 15, 2014, and July 15, 2014, and in future months, as required by the Operating Agreement.  As a result, AK and KSS are in breach of the contract.

58.     Plaintiff has demanded that AK and KSS pay the draw amounts to which Plaintiff is entitled but AK and KSS have failed and refused to do so.

59.     Plaintiff has suffered damages and continues to suffer damages as a result of AK and KSS's breach of contract and failure and refusal to distribute the draw amounts owed to Plaintiff.

WHEREFORE, Plaintiff respectfully moves this Court for entry of judgment in its favor and against Defendants AK and KSS under Count II for damages to be determined at trial, together with interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

## COUNT III BREACH OF CONTRACT – CAPITAL ACCOUNT

60.     Plaintiff incorporates Paragraphs 1-59 above, as if fully set forth herein.

61.     Pursuant to Section 4.07(b) of the Operating Agreement, members are entitled to a distribution of their capital accounts upon KSS's dissolution.

62.     Pursuant to section 4.20 of the Operating Agreement, the "withdrawal . . . of a Member shall operate to dissolve [KSS], absent other agreement by the remaining Members."

63.     Plaintiff provided AK and KSS notice of its intent to withdraw on May 11, 2014.

12

64.     In reliance on the agreement between Plaintiff, AK and KSS that Plaintiff's withdrawal from KSS would be effective June 30, 2014, Plaintiff continued to provide services to/through KSS through June 30, 2014.

65.     Plaintiff withdrew from KSS, effective June 30, 2014.

66.     On or about June 24, 2014, AK unilaterally filed Articles of Termination and Notice of Winding Up with the Missouri Secretary of State's Office. The Missouri Secretary of State filed the Articles as of June 26, 2014, and issued a Certificate of Termination for KSS, dated June 26, 2014.

67.     KSS was dissolved either as a result of Plaintiff's withdrawal as a Member of KSS or the filing of the Articles of Termination and Notice of Winding Up filed by AK.

68.     Upon KSS's dissolution, Plaintiff is entitled to a distribution of its capital accounts as provided in section 4.07(b) of the Operating Agreement.

69.     Plaintiff has fully performed under the Operating Agreement.

70.     AK and KSS have, however, failed and refused to perform their obligations under the Operating Agreement by failing and refusing to distribute Plaintiff's capital account to Plaintiff as required by the Operating Agreement.  As a result, AK and KSS are in breach of the contract.

71.     Plaintiff has demanded that AK and KSS distribute Plaintiff's capital account to Plaintiff but AK and KSS have failed and refused to do so.

72.     Plaintiff has suffered damages and continues to suffer damages as a result of AK and KSS's breach of contract and failure and refusal to distribute the capital account amounts owed to Plaintiff.

WHEREFORE, Plaintiff respectfully moves this Court for entry of judgment in its favor and against Defendants AK and KSS under Count III for damages to be determined at trial, together with interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTIES

73.     Plaintiff incorporates Paragraphs 1-73 above, as if fully set forth herein.

74.     As a member of KSS, AK owed a duty of care and a duty of loyalty to Plaintiff pursuant to Mo. Rev. Stat. § 347.088.

75.     AK acted in its own self interest and in breach of its fiduciary duties by, among other things:

a)   Causing the KSS assets to be used by and/or transferred to AK and/or KSS-New York without Plaintiff's knowledge, permission or approval;

b)   Facilitating, promoting and/or conducting the business of KSS-New York;

c)   Usurping the corporate opportunities of KSS for itself and/or the benefit of KSS-New York;

d)   Failing to respond to Plaintiff's inquiries for information and failing to disclose information about KSS, including the dissolution of KSS and the use by and/or transfer of its assets to KSS-New York;

e)   Failing to preserve the confidentiality of all business secrets, trade secrets and other confidential information of KSS, and instead using such information to transact the business of KSS-New York;

6428815 v5

f)  Failing to comply with all the directions, instructions and rules as to the conduct of KSS's business generally as agreed to from time to time by the Members;

g)  Competing with KSS through participation in the business of KSS-New York;

h)  Failing and refusing to make distributions to Plaintiffs of monthly draws and Plaintiff's capital account upon dissolution of KSS; and

i)  Failing to diligently and properly conduct the winding up of KSS.

76.     As a result of AK's breach of fiduciary duties, Plaintiff has suffered damage and continues to suffer damage.

WHEREFORE, Plaintiff respectfully moves this Court for entry of judgment in its favor and against Defendant AK under Count IV for damages to be determined at trial, together with interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT

77.     Plaintiff incorporates Paragraphs 1-77 above, as if fully set forth herein.

78.     AK and Plaintiff entered into a valid contract, the Operating Agreement, for the formation and operation of KSS.

79.     The Operating Agreement includes certain provisions concerning the ownership and use of assets of KSS.  The Operating Agreement also includes provisions concerning the withdrawal of a Member of KSS and the dissolution of the entity.

80.     Defendant KSS-New York knew the Operating Agreement existed between AK and Plaintiff.  And Defendant KSS-New York knew AK, its principal Anne Kershaw or someone

at their direction, caused the KSS assets to be used by and/or transferred to KSS-New York without Plaintiff's knowledge, permission or approval.

81.     Defendant KSS-New York knew the transferred assets include, but are not limited to, the name, website, customer information, customer contacts, customer lists, trademarks, certifications, publications, bank accounts, and capital of KSS, including capital contributed by Plaintiff, among other things.

82.     Defendant KSS-New York knew that since at least July 28, 2014, KSS-New York has been using the transferred assets to conduct its business, despite those assets being owned by KSS.

83.     Defendant KSS-New York knew that Plaintiff has as an interest in the assets under the Operating Agreement and that the assets are subject to the Missouri winding up process and claims of Plaintiff and creditors of KSS as part of the dissolution of KSS.

84.     Defendant KSS-New York used the assets of KSS to facilitate, promote and further its interests and thereby intentionally interfered with and induced or caused a breach of the Operating Agreement.

85.     Defendant KSS-New York's acts are not justified.  KSS-New York has no rightful claim to the assets of KSS that it is using and exploiting for its own benefit.

86.     Plaintiff has suffered damages as a result of Defendant KSS-New Yorks' conduct.

WHEREFORE, Plaintiff respectfully moves this Court for entry of judgment in its favor and against Defendant KSS-New York under Count V for damages to be determined at trial, together with interest, attorneys' fees, costs, and such other and further relief as this Court deems just and proper.

## COUNT VI – APPOINTMENT OF RECEIVER

87.  Plaintiff incorporates Paragraphs 1-86 above, as if fully set forth herein.

88.  Pursuant to section 4.03 of the Operating Agreement, "[u]pon . . . dissolution . . . no further professional services shall be rendered in Knowledge Strategy Solution, LLC's name, and no further business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of Knowledge Strategy Solutions, LLC."

89.  Upon information and belief, Defendants AK, KSS and/or KSS-New York have caused further professional services to be rendered under the name of "Knowledge Strategy Solutions, LLC," beyond that necessary to wind up the affairs of KSS.

90.  Pursuant to Section 4.04 of the Operating Agreement, "in the event of dissolution each Member owes a duty to [KSS] and its clients to complete all unfinished work . . . ."

91.  Upon information and belief, AK did not complete the unfinished work of KSS's clients as required by Section 4.04 through KSS.  Instead, upon information and belief, AK transferred the unfinished work of KSS clients to KSS-New York and has worked on and completed the work of KSS clients through KSS-New York in breach of Section 4.04.  Doing so breached the Agreement and deprived KSS and Plaintiff of the payments and benefits KSS was entitled to receive through the completion of client work through KSS.

92.  Pursuant to Section 4.06 of the Operating Agreement, KSS "assets shall be used to pay or provide for all debts of [KSS] and all costs of liquidation."

93.  Pursuant to Section 4.04 (b)(1) and (6), each member promised to refrain from transferring assets of KSS.

94.  Pursuant to Section 4.07 of the Operating Agreement, the members were required to negotiate in good faith regarding the transfer of property rights such KSS's websites, domain

17

names, trademarks and other property to one or more members in exchange for valuable consideration.

95.    Section 4.07 provided further that the members agreed to negotiate in good faith and use best efforts to come to an amicable and reasonable resolution in the event of any disagreement as to the division of intangible property.

96.    Upon information and belief, Defendants improperly transferred assets of KSS to AK and/or KSS-New York, including the KSS domain names, website, trademarks, certifications, customer information, customer contacts, customer lists, unfinished KSS customer work, and cash, among others.

97.    Upon information and belief, AK and/or KSS have transferred assets to AK and or KSS-New York, which are subject to the winding up process, to claims by Plaintiff, to debts of KSS, and all costs of liquidation.

98.    AK has also refused Plaintiff access to books, records, and other files and office forms.

99.    AK has further failed and refused to negotiate in good faith with Plaintiff as required by Section 4.07 with respect to the transfer of assets from KSS to other entities and reasonable access by Plaintiffs to the books and records of KSS.

100.    Instead, the assets were transferred to AK and/or KSS-New York without any consultation or notice, let alone negotiation, with Plaintiff.

101.    Plaintiff has fully performed under the Operating Agreement.

102.    Defendants have, however, failed and refused to perform their obligations under the Operating Agreement by improperly transferring assets to AK and/or KSS-New York.

18

103.    By the conduct described above, Defendants have breached sections 4.03, 4.04, 4.06, 4.04(b)(1) and (6), and 4.07, among others.

104.    Upon information and belief, AK continues to engage in acts in breach of the Operating Agreement and Missouri law with respect to the dissolution of KSS despite demand from Plaintiff that such conduct cease.

105.    The assets of KSS must be used to pay or provide for all debts of KSS, in payment of loans to or for the benefit of KSS, for all costs of liquidation, and KSS must distribute to the members their capital accounts pursuant to Sections 4.06 and 4.07 of the Operating Agreement and Missouri law.

106.    To date, KSS has not wound up its affairs, settled all debts and the costs of liquidation, paid all loans, and distributed the members' capital accounts.  AK has obstructed efforts to initiate and proceed with winding up KSS by taking the unilateral and secretive actions described above and by denying Plaintiff access to books, records, and other materials.

107.    Although KSS has not been wound up, upon information and belief, AK has transferred and continues to transfer assets of KSS to AK, KSS-New York, and/or other entities or persons, which assets are subject to the winding up process for KSS, to claims by Plaintiff, to debts of KSS, and all costs of liquidation.

108.    Further, as described above, Plaintiff is entitled to a monthly draw for payments received in May 2014 and June 2014, and months thereafter, which AK and KSS have failed and refused to pay to Plaintiff.

109.    Notwithstanding Plaintiff's efforts to work in good faith to conclude its business relationship and to wind up its affairs as necessary, Defendants have failed and refused to

6428815 v5

cooperate and to windup the affairs of KSS and have, instead, transferred and continued to transfer assets necessary for the KSS windup process as described above.

110.   The appointment of a receiver over KSS, AK, and KSS-New York is necessary.

111.   Pursuant to Mo. Rev. Stat. § 515.240, the Court "shall have the power to appoint a receiver . . . to keep and preserve all property and protect any business or business interest entrusted to [the receiver] pending any legal or equitable proceeding concerning the same . . ."

112.   Rule 68.02 of the Mo. R. Civ. P. also provides for the appointment of a receiver "whenever in a pending legal or equitable proceeding it appears to the court that a receiver is necessary to keep, preserve, and protect any business, business interest or property."

113.   There is imminent danger of a miscarriage of justice if a receiver is not appointed, namely the continued transfer of KSS assets (and the receipt by AK and KSS-New York of improperly transferred KSS assets), which must be applied to KSS's winding up, along with KSS and Plaintiff's inability to recover the transferred and misappropriated assets for the payment of costs, debts, capital accounts, draw amounts, and the like in the process of winding up KSS's affairs.  As described above, it appears that through fraud, mismanagement, misconduct or otherwise, there is a likelihood that the property will be squandered, wasted, misappropriated or unlawfully diverted without the Court's intervention.  Accordingly, a receiver is necessary and should be appointed.

WHEREFORE, Plaintiff respectfully requests the Court appoint a receiver over KSS, AK, and KSS-New York, effective immediately, with the usual powers and duties to take possession of the property in order to protect KSS and Plaintiff from further dissipation of KSS's assets by AK and KSS-New York.  Plaintiff further requests reasonable attorneys' fees, costs, expenses, and such other and further relief this Court deems just and proper.

20

Date:  August 7, 2014

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By:   /s/ Todd Ruskamp
    Todd Ruskamp, #38625
    Jessica A.E. McKinney, #64288

    2555 Grand Boulevard
    Kansas City, MO  64108-2613
    Telephone: 816.474.6550
    Facsimile: 816.421.5547
    truskamp@shb.com
    jamckinney@shb.com

    ATTORNEYS FOR PLAINTIFF

21

# Exhibit 1

# OPERATING AGREEMENT FOR
# KNOWLEDGE STRATEGY SOLUTIONS, LLC

## A Member-Managed Limited Liability Company

**THIS OPERATING AGREEMENT** for Knowledge Strategy Solutions, LLC, is made the 10th day of April, 2013, by and between A. Kershaw, PC, a professional corporation incorporated in the State of New York and Shannon L. Spangler, PC, a professional corporation incorporated in the State of Missouri, the MEMBERS ("Members"), for the purpose of forming a Limited Liability Company pursuant to the provisions of Missouri's Limited Liability Company Act (the "Act"), R.S.Mo. Chapter 347. The rights and obligations of the parties are as provided in the Act in effect on April 10, 2013, except as otherwise expressly provide in this Operating Agreement or as provided by an amendment of this Operating Agreement adopted unanimously by the Members.

## Article One

## THE LIMITED LIABILITY COMPANY

*1.01 Purpose.* The purpose of Knowledge Strategy Solutions, LLC, is to engage in the business of providing consulting services to organizations regarding data, records and knowledge management, information governance, E-Discovery and related matters, and to engage in any lawful act or activity for which a Limited Liability Company may be formed within the State of Missouri.

(a)     Law-Related Entity – Knowledge Strategy Solutions, LLC, may provide services that would be considered "Law-Related" under ABA Model Rule 5.7 and Missouri Supreme Court Rule 4-5.7, or a "business transaction" with a client under ABA Model Rule 1.8(a) and Missouri Supreme Court Rule 4-1.8(a). Each Member agrees that the services to be provided by Knowledge Strategy Solutions, LLC, are separate and distinct from any legal services that might be provided in other circumstances by either or both of the Members, which are professional corporations qualified to engage in the practice of law; and the principals of each Member, who are lawyers duly qualified to practice in the State(s) in which they are licensed. Each Member further agrees that Knowledge Strategy Solutions, LLC, will take reasonable measures to assure that clients of Knowledge Strategy Solutions, LLC, know that the services that Knowledge Strategy Solutions, LLC, provides are not legal services and that the protections of the client-lawyer relationship may not exist for those services.

*1.02 Name.* Knowledge Strategy Solutions, LLC, shall be operated under the name "Knowledge Strategy Solutions, LLC." All business of Knowledge Strategy Solutions, LLC, shall be conducted solely under that name.

*1.03 Term.* Knowledge Strategy Solutions, LLC, shall continue until dissolved under its terms. Knowledge Strategy Solutions, LLC, shall not be dissolved by the admission of additional Members or by the death, disability, retirement, expulsion, or withdrawal of any Member.

*1.04 Location.* The principal place of the business of Knowledge Strategy Solutions, LLC, shall be 70-3A Sunrise Ridge Drive, Sunrise Beach, Missouri, 65079, unless otherwise agreed by the

Members. Knowledge Strategy Solutions, LLC, may establish and maintain additional offices at other locations approved by the Members.

*1.05 Title to Property.* Each Member shall retain separate ownership of its property – both real and personal – that will be used by each in conducting Knowledge Strategy Solutions, LLC ,business. All property contributed to Knowledge Strategy Solutions, LLC (except cash capital contributions) as provided in the Schedule hereto and all property purchased after the effective date of this agreement with funds of Knowledge Strategy Solutions, LLC, shall be owned by Knowledge Strategy Solutions, LLC, as an entity, and no Member shall have any ownership interest in Knowledge Strategy Solutions, LLC, property in its own individual name or right. Each Member's interest in Knowledge Strategy Solutions, LLC, shall be personal property for all purposes.

*1.06 Registered Agent.* $49 Registered Agent Services, LLC, is the initial registered agent, at P.O. Box 1120, Osage Beach, Missouri, 65065.

*1.07 Prior Agreements.* All previous agreements, understandings, and undertakings, whether oral or written, among any Members regarding their association are hereby superseded in their entirety by this Agreement.

## Article Two

## THE MEMBERS

*2.01 Identification of Members.* The Members shall be the signatories to this Operating Agreement and such additional Members as may be admitted in the future.

*2.02 Outside Activities.* The Members each understand that other Member(s) do or may engage in other professional or business activities, including the practice of law. These activities are independent of the activities of Knowledge Strategy Solutions, LLC, and neither Member shall have any claim to revenues, profit or income of the other that is generated by these separate activities absent written agreement otherwise, nor any liability for such other professional or business activities of the other Member.

*2.03 Obligations of Members.* Each Member warrants that the each Member shall, unless it has the consent of other members:

(a)     Contribute to Knowledge Strategy Solutions, LLC, any opportunity that falls within the following categories of law-related services and/or knowledge strategy services: data and records management; information governance; knowledge management and/or strategy; E-Discovery support services, including expert witness engagements; and E-Discovery dispute resolution.   Members may agree from time to time to contribute additional categories of engagements to Knowledge Strategy Solutions, LLC.

(b)     Disclose to the other Members any matter that may prejudice the business prospect of Knowledge Strategy Solutions, LLC;

(c)     Preserve the confidentiality of all business secrets, trade secrets, and other confidential information, including client confidences; and

(d)      Comply with all directions, instructions and rules as to the conduct of Knowledge Strategy Solutions, LLC's business generally as agreed to from time to time by the Members.

*2.04 Limitations on Members.* Each Member warrants that the each Member shall not, unless it has the consent of other Members:

(a)      Compete with Knowledge Strategy Solutions, LLC, by carrying on or engaging in any business, occupation or activity, or taking steps to set up, promote or facilitate the establishment of any business, occupation or activity which competes with or intends to compete with any part of the business of Knowledge Strategy Solutions, LLC;

(b)      Employ or terminate the employment of any employee or agent of Knowledge Strategy Solutions, LLC;

(c)      Loan any money or property belonging to Knowledge Strategy Solutions, LLC, to any other person, firm or business, nor accept any such money or property, whether in the form of a loan or otherwise, on behalf of Knowledge Strategy Solutions, LLC, from any other person, firm or business;

(d)      Offer a guaranty or agree in the name of Knowledge Strategy Solutions, LLC, to indemnify any person or entity;

(e)      Accept a guaranty or promise for sums as may be owed to Knowledge Strategy Solutions, LLC, from time to time;

(f)      Accept any compromise or part-payment of any such sums that may be owed to Knowledge Strategy Solutions, LLC, from time to time;

(g)      Assign, mortgage, or charge its share in Knowledge Strategy Solutions, LLC, or any part thereof;

(h)      Open any bank account or borrow any money in the name of or for Knowledge Strategy Solutions, LLC.

*2.05 Best Endeavors.* The Members agree to use their best endeavors towards the successful operating of Knowledge Strategy Solutions, LLC, and at all times shall conduct themselves in a fair and proper manner in all transactions of any nature affecting Knowledge Strategy Solutions, LLC. This includes that all Members shall use best endeavors to keep proper records of all business transacted by or on behalf of Knowledge Strategy Solutions, LLC.

*2.06 Management.* The management of Knowledge Strategy Solutions, LLC, shall be vested in the Members, who may delegate responsibilities to one Member, except that there must be unanimous consent in the exercise of the following decision powers:

(a)      Admission of new members;

(b)      Adjustments in the amount of capital;

(c)      Creation or expansion of debt;

(d)      Purchase and sale of real estate;

(e)      Determination of amount of professional liability insurance maintained; and

(f)      Mergers with or into another company or firm.

*2.07 Membership Meetings.* The Members agree that their principals will schedule and attend regular Membership meetings by telephone (or other virtual means) or in person. The Members will use their best efforts to meet in person at least two times a year, at a time and place mutually convenient.

### Article Three

### CAPITAL, DISTRIBUTIONS, AND ALLOCATION OF PROFIT

*3.01 Contributions.* The initial capital of Knowledge Strategy Solutions, LLC, shall be the total sum specified in Schedule A attached hereto, contributed by the Members in the amounts set opposite their respective names in Schedule A. Each of the Members shall forthwith pay into Knowledge Strategy Solutions, LLC, bank account the sum to be contributed by it.

      (a)    If at any time the Members decide to increase the capital of Knowledge Strategy Solutions, LLC, the amounts of the increase shall be contributed in such proportions as they may agree or, in default of agreement, in the same proportions as they are entitled to in the capital of Knowledge Strategy Solutions, LLC.

      (b)    No Member while in Knowledge Strategy Solutions, LLC, shall withdraw any capital except with the written consent of the other Member.

*3.02 Capital Account.* An individual capital account shall be established and maintained for each Member in accordance with the provisions of the Internal Revenue Code. Each Member's capital account (a) shall be increased by (1) the amount of money and fair market value of property contributed to Knowledge Strategy Solutions, LLC, and (2) the Member's allocable share of income and gain allocated pursuant to this Agreement, and (b) shall be decreased by (1) the amount of money and fair market value of property distributed to that Member and (2) that Member's allocable share of deductions and loss allocated pursuant to this Agreement. No Member shall have a deficit in that Member's capital account at the end of any Knowledge Strategy Solutions, LLC, calendar year.

*3.03 Allocations.* Except as may be required by the Internal Revenue Code, all items of income, gain, deduction, loss, and credit shall be allocated among the Members for each Knowledge Strategy Solutions, LLC, calendar year, in the same order as provided in Section 4.07 (a)-(c) below and in the proportions set forth in Schedule A attached hereto, as may be amended by the Members from time to time.

*3.04 Expenses and Draws.* Each Member is entitled to reimbursement of expenses and distributions of income as follows:

      (a)    Each Member will be responsible for all expenses associated with its respective offices, equipment and supplies except for those expenses described in Schedule A attached hereto.

      (b)    Each Member agrees that it is not entitled to reimbursement of travel expenses that are not client-chargeable and were incurred without approval of the other Member(s).

      (c)    Approved Travel Expenses. Client-chargeable expenses shall be reimbursed by Knowledge Strategy Solutions, LLC, within 30 days of submission of documentation for all expenditures over $25.00. Travel and out-of-pocket expenses incurred by the Member that are

not client-chargeable but have been approved by the Member(s) shall be paid directly by each Member and reimbursed pursuant to Schedule A attached hereto. Each Member will provide monthly, by the 10th day of the following month, a full accounting and itemization of the out-of-pocket expenses it incurred on behalf of Knowledge Strategy Solutions, LLC.

(d)    Each Member will be paid draws as mutually agreed from time to time prior to the end of the year. Unless otherwise agreed in writing, within 60 days of Knowledge Strategy Solutions, LLC's calendar year-end, all income shall be distributed in the same order as provided in Section 4.07(a)-(c) below and in the proportions set forth in Schedule A attached hereto, except for an amount agreed by the Members to be held to pay normal operating expenses.

## Article Four

### RIGHTS AND OBLIGATIONS UPON DISSOLUTION OR WITHDRAWAL, DISABILITY, DEATH OR RETIREMENT OF A MEMBER

*4.01 Withdrawal, Retirement, Disability or Death of a Member.* Any Member may withdraw voluntarily or retire from Knowledge Strategy Solutions, LLC, by giving not less than 30 days' written notice of its intention to do so.

*4.02 Dissolution.* The withdrawal, retirement, permanent disability or death of a Member shall operate to dissolve Knowledge Strategy Solutions, LLC, absent other agreement by the remaining Members. In the event of dissolution, the Members shall cause a resolution of dissolution to be enacted stating the effective date of dissolution.

*4.03 Termination of Professional Services.* Upon the enactment of a Resolution of Dissolution, or dissolution by operation of law, no further professional services shall be rendered in Knowledge Strategy Solutions, LLC's name, and no further business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of Knowledge Strategy Solutions, LLC. Maintenance of offices to effectuate the winding up or liquidation of Knowledge Strategy Solutions, LLC, affairs shall not be construed as a continuation of Knowledge Strategy Solutions, LLC.

*4.04 Duty of Members.* Notwithstanding the foregoing, in the event of dissolution each Member owes a duty to Knowledge Strategy Solutions, LLC, and its clients to complete all unfinished work, and each Member selected by a client to continue such work shall hold the other Members and Knowledge Strategy Solutions, LLC, harmless in that regard. In addition:

(a)    Each Member warrants and represents that he or she shall not at any time aid, abet, assist, or encourage a client or any other third party in litigation between a client of Knowledge Strategy Solutions, LLC, on one hand and Knowledge Strategy Solutions, LLC, on the other hand, concerning work performed by Knowledge Strategy Solutions, LLC, for the client, including but not limited to the client's obligation to pay Knowledge Strategy Solutions, LLC, for services rendered to the client on the client's behalf. Nothing contained herein is intended to or shall be construed to interfere with or violate existing statute or case authority requiring persons to comply with subpoenas duly issued and properly served.

  (b)  The Members covenant to cooperate in every regard in the winding up of Knowledge Strategy Solutions, LLC, affairs and, without limiting the generality of the foregoing, will refrain from the following conduct:

    (1)  Transferring Knowledge Strategy Solutions, LLC, assets;

    (2)  Failing to comply with client directives to turn over client files;

    (3)  Removing client files from the offices of Knowledge Strategy Solutions, LLC, without noting on a permanent log that is available for inspection by any party;

    (4)  Refusing any other Member access to Knowledge Strategy Solutions, LLC, offices;

    (5)  Removing any Knowledge Strategy Solutions, LLC, books of account of records;

    (6)  Refusing access to personal effects, office forms, files, and computer disks and equipment; and

    (7)  Tampering with information found in computers and files used by Knowledge Strategy Solutions, LLC, or any Member.

*4.05 Disposition of Client Files.* In the event of dissolution of Knowledge Strategy Solutions, LLC, all files, documents, and records pertaining to each client shall be delivered to the appropriate Members, subject to any written instructions of any client.

*4.06 Costs of Liquidation.* Knowledge Strategy Solutions, LLC, assets shall be used to pay or provide for all debts of Knowledge Strategy Solutions, LLC, and all costs of liquidation.

*4.07 Distribution to Members.* Certain Knowledge Strategy Solutions, LLC, property, such as domain names, websites, trademarks and other elements of goodwill may not be easily converted to cash for distribution to Members. The Members agree to negotiate in good faith regarding the transfer of these property rights to one or more Members in exchange for valuable consideration to be agreed to by the Members. The Members agree that they will negotiate in good faith and use best efforts to come to an amicable and reasonable resolution should there be any disagreement as to the division of intangible property. In all other respects, final distribution to the Members shall be made within 12 months of the date of dissolution, in the following order, after payment of the debts of Knowledge Strategy Solutions, LLC, and the costs of liquidation:

  (a)  In payment of loans to or for the benefit of Knowledge Strategy Solutions, LLC;

  (b)  To the Members in accordance with their credit balances, if any, of their capital accounts, after giving effect to all contributions, distributions, and allocations for all periods;

  (c)  Any indebtedness of any Member to Knowledge Strategy Solutions, LLC, as of the date of dissolution of Knowledge Strategy Solutions, LLC, shall be deducted from each distribution to which he or she may otherwise be entitled pursuant to this Section, to the extent required to satisfy and discharge such indebtedness.

*4.08 Waiver of Right to Court Decree of Dissolution.* The Members agree that irreparable damage would be done to the relationships between Members and clients and to the reputation of Knowledge Strategy Solutions, LLC, if any Member should bring action in court to dissolve

Knowledge Strategy Solutions, LLC. Care has been taken in this Operating Agreement to provide fair and just payments to a Member whose relationship with Knowledge Strategy Solutions, LLC, is terminated for any reason. Accordingly, each of the Members accepts the provisions under this Operating Agreement as the Member's sole entitlement upon termination of his or her relationship with Knowledge Strategy Solutions, LLC. Each Member hereby waives and renounces its right to seek an independent adversarial appointment by a court of a liquidator or receiver for Knowledge Strategy Solutions, LLC, but each does agree to resolve all matters, including, if necessary, by use of the procedure set forth therein in Article Six below.

## Article Five
### INSURANCE

*5.01 Insurance Coverage.* Knowledge Strategy Solutions, LLC, shall maintain professional liability and/or errors and omissions insurance coverage for all, in such amounts as the Members may from time to time determine.

## Article Six
### DISPUTE RESOLUTION

*6.01 Arbitration.* Except for controversies regarding the compensation of Members, which are to be determined solely in accordance with the terms of this Operating Agreement, any controversy arising out of or relating to this Operating Agreement shall be settled by mandatory, binding arbitration in accordance with JAMS Streamlined Rules of Arbitration and its Expedited Arbitration Procedures. The parties agree that all conferences, hearings or other proceedings that are part of the arbitration process shall be conducted virtually, whether by telephone, videoconference or web-based meeting tools. Judgment upon any arbitration award rendered in accordance herewith may be entered in any court having jurisdiction thereof.

### Article Seven
### GENERAL PROVISIONS

*7.01 Complete Agreement and Amendments.* The terms and conditions set forth herein constitute the entire agreement between the parties and supersede any communications or previous agreements with respect to the subject matter of this Operating Agreement. There are no written or oral understandings directly or indirectly related to this Operating Agreement that are not set forth herein. No change can be made to this Operating Agreement other than in a writing signed and approved by the Members.

*7.02 Books, Records and Accounting.* Knowledge Strategy Solutions, LLC's books and records, together with all the documents and papers pertaining to the business of Knowledge Strategy Solutions, LLC, shall be maintained in electronic format in a shared space accessible by all Members at any time. Non-digital records shall be converted to a digital format and maintained in the shared space. Any Member may copy Knowledge Strategy Solutions, LLC, records from the shared space at any time. The electronic books and records shall in all circumstances be considered the official records of Knowledge Strategy Solutions, LLC, and every provision in this Agreement relating to such books and records shall apply to the electronic versions to the

same extent as they would apply to paper records. Knowledge Strategy Solutions, LLC's records shall be adequately secured, and backups are to be performed as agreed to by the Members. The books and records of Knowledge Strategy Solutions, LLC, shall be kept on a calendar-year basis and shall reflect all Knowledge Strategy Solutions, LLC, transactions and be appropriate and adequate for Knowledge Strategy Solutions, LLC's business.

*7.03 Notices.* Any notice required by this Operating Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party in the first instance by email; receipt of such email notice shall be acknowledged by the recipients by return email within 5 days. If no such acknowledgement is provided, notice must be accomplished by personal delivery or a recognized overnight delivery service such as FedEx.

*7.04 Severability.* If any term of this Operating Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

*7.05 Survival of Rights.* Except as provided herein to the contrary, this Operating Agreement shall be binding upon and inure to the benefit of the parties signatory hereto (as well as to all future parties who are admitted as Members in Knowledge Strategy Solutions, LLC), their respective spouses, heirs, executors, legal representatives, and permitted successors and assigns.

*7.06 Waiver.* The waiver or failure of either party to exercise in any respect any right provided in this agreement shall not be deemed a waiver of any other right or remedy to which the party may be entitled.

*7.07 Further Assurances.* Each party hereto agrees to do all acts and things and to make, execute, and deliver such written instruments as shall from time to time be reasonably required to carry out the terms and provisions of this Operating Agreement.

*7.08 Headings.* The headings in this Operating Agreement are for convenience only, confirm no rights or obligations in either party, and do not alter any terms of this Agreement.

In Witness whereof, the parties have executed this Operating Agreement as of the date first written above.

_____          _____
Anne Kershaw, President of A. Kershaw P.C.    Shannon Spangler, President of Shannon L.
                                              Spangler, P.C.
Dated: _____June 26, 2013_____
                                              Dated: _____June 2, 2013_____

**Schedule A to Operating Agreement**

Pursuant to the Operating Agreement dated April 10, 2013 as amended from time to time by agreement of the Members, the Members agree as follows:

1. **Equal Ownership:** Each Member shall own an equal share in Knowledge Strategy Solutions, LLC, and will share equally in its assets and liabilities, except as otherwise provided in the Operating Agreement and this Schedule A.

2. **Capital Contributions:** The initial capital of Knowledge Strategy Solutions, LLC, shall be as follows, adjusted from time to time as described in Article Three of the Operating Agreement:

    a. **ShannonLSpangler, PC (SLS):**

| Cash/Contribution of Start-Up Expenses | $16,000 |
| --- | --- |

    b. **AKershaw, PC (AK):**

| Cash/Credit for Infrastructure Contributions | $16,000 |
| --- | --- |

3. **Other Member Contributions:** The Members agree that the starting Capital Accounts, valued as described in Paragraph 2. above, do not reflect the value of goodwill and other intangible property contributed to Knowledge Strategy Solutions, LLC by the Members.  Instead, the value of goodwill and other intangible property contributed, including but not limited to those contributions described in Paragraphs 3.a-c, is reflected in the revenue allocations set forth in Paragraph 8 below.

    a. AK will make good faith and reasonable efforts to transfer certain of its client matters to Knowledge Strategy Solutions, LLC.  AK has provided a list such client matters and a proposed plan and timeline for transfer (recognizing, of course, that each client will have the final decision regarding transfer).

    b. AK agrees that its client database, referred to as the "CRM," will be made available to Knowledge Strategy Solutions, LLC, for all purposes during the term of the Operating Agreement, as it exists as of the effective date of the Operating Agreement and as expanded or revised over time by AK and/or SLS.

    c. SLS agrees that it will contribute an initial list of potential clients/contacts and will continue to use its best efforts to develop additional potential clients/contacts for addition to the CRM.

4. **Office and Operating Expenses:** Each Member will have responsibility for office and operating expenses attributable to Knowledge Strategy Solutions, LLC, as follows:

    a. Members will share (50/50) expenses relating to the day-to-day operations of Knowledge Strategy Solutions, LLC, including but not limited to software licenses for business tools; telephone and other communication tools; payroll systems; employee and contractor costs (except as set forth in Paragraph 6 below); professional liability and/or E&O insurance; domain and website maintenance; business filing fees; subscription services; and professional organization fees.

    b. Members will each bear their own costs relating to their separate offices, including but not limited to computer and hardware expenses; property and premises liability insurance; and employee or contractor expense not related to the business of Knowledge Strategy Solutions, LLC.

5. **Administrative and Business Development:** Each Member will keep track of time spent performing administrative and business development work and the Members will confer from time to time to discuss and evaluate time spent on this work so as to ensure fair and sensible distributions in light of their respective billable work. SLS's start-up work, including website development work, will not be counted towards administrative or business development.

6. **Support Personnel:** Upon approval by all Members, each Member will from time to time engage support personnel to work on behalf of Knowledge Strategy Solutions, LLC. Each Member will be responsible for the costs associated with such personnel and entitled to the benefits of revenue generated by such personnel as follows:

    a. Members will share responsibility equally for the wages and expense reimbursements paid to such support personnel that are non-client chargeable and attributable to administrative work for Knowledge Strategy Solutions, LLC.

    b. Members will share responsibility equally for other expenses related or incidental to support personnel, including payroll taxes and employee benefits.

    c. Revenue realized and wages/expenses incurred from client-chargeable work performed by support personnel shall be allocated according to the formulas set forth in Paragraph 8 below.

    d. All wages, expense reimbursements and other expenses incidental to the retention of support personnel shall be paid by Knowledge Strategy Solutions, LLC. Each Member will make additional cash capital contributions as may be required from time to time to cover its share of these costs.

7. **Travel and Out-of-Pocket Expenses:** Each Member will keep an accounting of all approved travel and out-of-pocket expenses incurred in connection with its work for the benefit of Knowledge Strategy Solutions, LLC, noting which are client chargeable and which are administrative in nature, and submit such accounting for the previous month by the 10th day of the following month. Each Member's approved travel expenses will be reimbursed as follows:

    a.  Each Member's approved travel expenses will be reimbursed from that Member's secured client revenue, once each Member has secured client revenue available to pay such reimbursements.

    b.  Prior to the time a Member has secured client revenue sufficient to pay reimbursements, and/or if such reimbursement would reduce another Member's share of the secured client revenue of the Member to be reimbursed, then Members will discuss an appropriate schedule for the required reimbursement.

8.  **Allocations of Revenue:**  Except as may be required by the Internal Revenue Code or as specified in paragraph 8(e), all items of income, gain, deduction, loss, and credit shall be allocated among the Members for each fiscal (calendar) year, in accordance with the formulas set forth below:

    a.  Revenue from AK work (Member A.Kershaw, P.C.) on AK secured clients will be paid, after reimbursement of travel expenses as set forth above, 100% to AK;

    b.  Revenue from AK work (Member A.Kershaw, P.C.) on SLS secured clients will be paid 87.5% to AK and 12.5% to SLS.

    c.  Revenue from SLS work (Member ShannonLSpangler, P.C.) on AK secured clients will be as follows:

| Revenue | Portion to SLS | Portion to AK |
|---|---|---|
| Up to $300,000 | 75% | 25% |
| $300,000-$1,000,000 | 80% | 20% |
| More than $1,000,000 | 85% | 15% |

    d.  Revenue from SLS work on SLS secured clients will be paid, after reimbursement of travel expenses as set forth above, as follows:

| Revenue | Portion to SLS | Portion to AK |
|---|---|---|
| Up to $300,000 | 75% | 25% |
| $300,000-$1,000,000 | 80% | 20% |
| More than $1,000,000 | 85% | 15% |

    e.  Revenue from personnel working on a Member's secured clients will be paid to 100% to that Member.

    f.  Any revenue from Altria is payable 100% to the Member billing the work. Revenue from personnel working on any Altria matter will be divided equally between the Members.

    g.  The Members agree that they will review and, as necessary, revise the Allocations Formula not less than every two years to fairly reflect the contributions of each Member to Knowledge Strategy Solutions, LLC.  In considering whether any revision to the

Allocations Formula is appropriate, the Members will take into account the ongoing value of their original goodwill contributions to Knowledge Strategy Solutions and will consider at least the following factors:  (i) the relative percentages of annual revenue for the prior two years attributable to AK secured clients, SLS secured clients, and shared secured clients; (ii) the relative contributions of each Member to the CRM network; (iii) the relative contributions of each Member to administration and business development; and (iv) the average effective rates charged for AK and SLS secured clients and margin contributions.

For purposes of the Allocation Formula set forth in this paragraph 8  , an "AK secured client" means any client that retains Knowledge Strategy Solutions, LLC due to efforts initiated by AK.  A "SLS secured client" means any client that retains Knowledge Strategy Solutions, LLC due to efforts initiated by SLS.  The Members agree that they shall discuss and determine whether a client is AK secured or SLS secured prior to commencing work on any engagement.  They may also agree that any client was secured by their mutual efforts and agree on a percentage allocation of "share."

#          #          #

# Exhibit 2



**State of Missouri**

Jason Kander, Secretary of State

Corporations Division
PO Box 778 / 600 W. Main St., Rm. 322
Jefferson City, MO 65102

LC1295816
Date Filed: 6/26/2014
Jason Kander
Missouri Secretary of State

## Notice of Winding Up for Limited Liability Company

*(Submit with filing fee of $25.00)*

1. The name of the limited liability company is    Knowledge Strategy Solutions, LLC    Charter #:   LC1295816

2. The articles of organization for the limited liability company were filed on the following date   March 1, 2013

       *Month/Day/Year*

3. Persons with claims against the limited liability company should present them in accordance with the following procedure:

   A. In order to file a claim with the limited liability company, you must furnish the following:
      i.   Amount of the claim
      ii.   Basis for the claim
      iii.   Documentation of the claim

   B. Claims must be mailed to:

   Anne Kershaw

   *Name*

   161 Gove Street

   *Street Address*

   Tarrytown, N.Y. 10591

   *City/State/Zip*

4. A claim against the limited liability company will be barred unless a proceeding to enforce the claim is commenced within three years after the publication of the notice.

In Affirmation thereof, the facts stated above are true and correct:
(The undersigned understands that false statements made in this filing are subject to the penalties provided under Section 575.040, RSMo)

| | | |
|---|---|---|
| *Authorized Signature* | Anne Kershaw | June 24, 2014 |
| | *Printed Name* | *Date* |
| *Authorized Signature* | *Printed Name* | *Date* |
| *Authorized Signature* | *Printed Name* | *Date* |

ORI-07032014-0672 State of Missouri
No of Pages 1 Page

With/Term/Dissolve - LLC/LP/LLP/LLLP

Name and address to return filed document:

Name:   Anne Kershaw

Address:   161 Grove Street

City, State, and Zip Code:   Tarrytown, NY 10591

LLC-13 (11/2008)



**State of Missouri**
Jason Kander, Secretary of State

Corporations Division
PO Box 778 / 600 W. Main St., Rm. 322
Jefferson City, MO 65102

LC1295816
Date Filed: 6/26/2014
Jason Kander
Missouri Secretary of State

### Articles of Termination for
### Limited Liability Company
*(Submit with filing fee of $25.00)*

1. The name of the limited liability company is  Knowledge Strategy Solutions, LLC          Charter #: LC1295816

2. The date the limited liability company's articles of organization were filed: March 1, 2013

3. The reason for filing articles of termination is: Incorporation in New York

4. The effective date of this document is the date it is filed by the Secretary of State of Missouri unless a future date is otherwise indicated:

*(Date may not be more than 90 days after the filing date)*

5. On June 24, 2014 _____ a notice of merger or consolidation or a notice of winding up disclosing the dissolution
   *Month/Day/Year*
was filed with the Secretary of State of Missouri.

6. Any other matters: _____

_____

_____

In Affirmation thereof, the facts stated above are true and correct:
(The undersigned understands that false statements made in this filing are subject to the penalties provided under Section 575.040, RSMo)

_Anne Kershaw_                    Anne Kershaw                          June 14, 2014
Authorized Signature             *Printed Name*                        *Date*

_____          _____          _____
Authorized Signature             *Printed Name*                        *Date*

_____          _____          _____
Authorized Signature             *Printed Name*                        *Date*

ORI-07032014-0673 State of Missouri
No of Pages 1 Page

With/Term/Dissolve - LLC/LP/LLP/LLLP

Name and address to return filed document:

Name: Anne Kershaw

Address: 161 Grove Street

City, State, and Zip Code: Tarrytown, N. Y. 10591

LLC-5 (11/2008)





**Jason Kander**
**Secretary of State**

CERTIFICATE OF TERMINATION

WHEREAS, a request for termination of

*Knowledge Strategy Solutions, LLC*
*LC1295816*

a Limited Liability Company, has been received, found to conform to law, and filed.

NOW, THEREFORE, I, JASON KANDER, Secretary of State of the State of Missouri, issue this Certificate of Termination certifying of the a forenamed Limited Liability Company, certifying that the existence of said Limited Liability Company has this date ceased.

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the GREAT SEAL of the State of Missouri. Done at the City of Jefferson, this 26th day of June, 2014.

Secretary of State





THE JUDICIAL BRANCH OF STATE GOVERNMENT

--Select Destination--

**New Case Filing Confirmation**

Thank you for your submission on **8/7/14 at 3:45 PM**. Below is important information regarding this submission. You will receive emails from the eFiling System regarding the status of your submission. This page is printer friendly.

If you need to contact the clerk about this submission or if you need to submit another filing and you do not have the case number, please use the following.

**eFiling Confirmation Number:** EF1989980

The following information and documents were submitted with this filing.

**Attorney Reference Number:** 38625

**Payment confirmation number: 10165907**

| Court Location | Item Description | | Amount |
|---|---|---|---|
| Jackson County - Kansas City - Civil | Filing Fee | $ | 112.00 |
| | Processing Fee+ | $ | 2.63 |
| | **Total** | **$** | **114.63** |

+ This amount is charged by the credit card vendor to process payments.

**Cardholder Name:** DORIS RETZLAFF

**Billing Address:**

Shook, Hardy & Bacon
2555 Grand Blvd.
Kansas City,  64108-2613

**Credit Card Type:** VISA

**Credit Card Number:** ****5392

**Case**

**SHANNON L. SPANGLER PC V. A. KERSHAW, PC, ET AL.**

Contract-Other filed in Jackson County - Kansas City - Civil

**Notes to Clerk:**  We will be using a process server.

**Party**

**SHANNON L. SPANGLER, P.C. - Plaintiff**
represented by: Todd  W.  Ruskamp
70-3A SUNRISE RIDGE DRIVE
SUNRISE BEACH, MO 65709
**SSN/EIN:** None entered by filer
**Phone Number:** None entered by filer
**Email:** None entered by filer

**A. KERSHAW, P.C. - Defendant**
151 GROVE STREET, SUITE 200
TARRYTOWN, NY 10591
**SSN/EIN:** None entered by filer
**Phone Number:** None entered by filer
**Email:** None entered by filer

**KNOWLEDGE STRATEGY SOLUTIONS, LLC - Defendant**
C/O ANNE KERSHAW
151 GROVE STREET
TARRYTOWN, NY 10591
**SSN/EIN:** None entered by filer
**Phone Number:** None entered by filer
**Email:** None entered by filer

**KNOWLEDGE STRATEGY SOLUTIONS, LLC - Defendant**
151 GROVE STREET
TARRYTOWN, NY 10591
**SSN/EIN:** None entered by filer
**Phone Number:** None entered by filer
**Email:** None entered by filer

**Document**

**Petition/Initial Pleading/Criminal to/for/filed in - Circuit Court**
Petition for Damages and Appointment of Receiver
    **Attachments**
      Exhibit 1
      Exhibit 2

**Filed on behalf of:**   SHANNON L. SPANGLER, P.C.

EFILING
MENU

eFiling Version 1.3.3.21

Release 06/19/2014

Exhibit "2"

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

SHANNON L. SPANGLER, P.C.,

        Plaintiff,

v.

A. KERSHAW, P.C., et al.

        Defendants.

Case No. 1416-CV18812

## ANSWER FOR DEFENDANT A. KERSHAW, PC

**COMES NOW** A. Kershaw, PC, by and through its attorneys, James W. Tippin & Associates and for its Answer states and avers as follows:

## PARTIES

1. Defendant admits that S. Spangler, P.C. is a Missouri professional corporation all other allegations of fact contained in Plaintiff's Petition paragraph 1 is hereby denied.

2. Defendant admits A. Kershaw, PC is a New York professional corporation with its principal place of business is in New York and its principal is Anne Kershaw.

3. Denies the allegations of fact contained in Plaintiff's Petition paragraph 3, and in further Answer that KSS's incorporation in Missouri has been terminated and no longer exists, but the KSS business continues to exist.

4. Defendant admits Knowledge Strategy Solutions, LLC (hereinafter "KSS, LLC") is a limited liability company organized under the laws of the State of New York with its principal place of business located in the State of New York.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

### JURISDICTION & VENUE

5.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 5.

6.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 6.

7.  Defendant admits that it entered into an operating agreement on or about April 10, 2013. All other allegations of fact contained in Plaintiff's Petition paragraph 7 are hereby denied.

8.  Defendant admits that Plaintiff and Defendant were the only two members of KSS-Missouri.  All other allegations of fact contained in Plaintiff's Petition paragraph 8 are hereby denied.

9.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 9, and in further Answer states Plaintiff and Defendant were engaged in providing "law related" services as defined by the American Bar Association to attorneys and law firms.

10. Defendant admits that any member "may withdraw voluntarily or retire from [KSS, LLC] by giving not less than thirty (30) days written notice of its intention to do so," all other allegations of fact contained in Plaintiff's Petition paragraph 10 are hereby denied.

11. Defendant admits the allegations contained in Plaintiff's Petition paragraph 11.

12. Defendant admits the allegations contained in Plaintiff's Petition paragraph 12.

13. Defendant denies the allegations contained in Plaintiff's Petition paragraph 13.

14. Defendant denies the allegations contained in Plaintiff's Petition paragraph 14.

15. Defendant denies the allegations contained in Plaintiff's Petition paragraph 15, and in further Answer states Plaintiff had tendered its ownership interest in KSS, LLC on or about June 11, 2014.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

16.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 16.

17.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 17.

18.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 18.

### Defendant's Use and Transfer of Assets

19.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 19.

20.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 20.

21.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 21.

22.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 22.

23.  Defendant admits the allegations contained in Plaintiff's Petition paragraph 23.

24.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 24.

25.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 25.

26.  Defendant admits that KSS, LLC was incorporated in the of State of New York on or about July 28, 2014, all other allegations contained in Plaintiff's Petition paragraph 25 are hereby denied.

27.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 27.

28.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 28.

29.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 29.

30.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 30.

31.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 31.

32.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 32.

33.  Defendant admits that the Operating Agreement provided to each member of KSS, LLC "draws as mutual agreed from time to time prior to the end of the year," all other allegations of fact contained in Plaintiff's Petition paragraph 33 are hereby denied.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

34. Defendant denies the allegations contained in Plaintiff's Petition paragraph 34.

35. Defendant denies the allegations contained in Plaintiff's Petition paragraph 35.

36. Defendant denies the allegations contained in Plaintiff's Petition paragraph 36.

37. Defendant denies the allegations contained in Plaintiff's Petition paragraph 37.

38. Defendant denies the allegations contained in Plaintiff's Petition paragraph 38.

39. Defendant denies the allegations contained in Plaintiff's Petition paragraph 39.

40. Defendant denies the allegations contained in Plaintiff's Petition paragraph 40.

41. Defendant denies the allegations contained in Plaintiff's Petition paragraph 41.

42. Defendant denies the allegations contained in Plaintiff's Petition paragraph 42.

## COUNT I – BREACH OF CONTRACT – USEAND/OR TRANSFER OF ASSETS OF KSS-MO BY AK AND KSS-NY

43.   This portion Plaintiff's Petition has been moved to Arbitration pursuant to this Court's Order dated October 14, 2014.  Defendant hereby denies all of the allegations contained in Plaintiff's Petition Count I.

## COUNT II – BREACH OF CONTRACT – MONTHLY DRAWS

44. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-50, as if fully set forth herein.

45. Defendant admits that the Operating Agreement provided to each member of KSS, LLC "draws as mutual agreed from time to time prior to the end of the year," all other allegations of fact contained in Plaintiff's Petition paragraph 52 are hereby denied.

46. Defendant denies the allegations contained in Plaintiff's Petition paragraph 53.

47. Defendant denies the allegations contained in Plaintiff's Petition paragraph 54.

48. Defendant denies the allegations contained in Plaintiff's Petition paragraph 55.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

49. Defendant denies the allegations contained in Plaintiff's Petition paragraph 56.

50. Defendant denies the allegations contained in Plaintiff's Petition paragraph 57.

51. Defendant denies the allegations contained in Plaintiff's Petition paragraph 58.

52. Defendant denies the allegations contained in Plaintiff's Petition paragraph 59.

53. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 59 because it is a prayer; therefore Defendant denies the same.

### COUNT III BREACH OF CONTRACT – CAPITAL ACOUNT

54. This portion Plaintiff's Petition has been moved to Arbitration pursuant to this Court's Order dated October 14, 2014.  Defendant hereby denies all of the allegations contained in Plaintiff's Petition Count III.

### COUNT IV BREACH OF FIDUCIARY DUTIES

55. This portion Plaintiff's Petition has been moved to Arbitration pursuant to this Court's Order dated October 14, 2014.  Defendant hereby denies all of the allegations contained in Plaintiff's Petition Count IV.

### COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT

56. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-77, as if fully set forth herein.

57.  Defendant admits that it entered into a valid contract under the Operating Agreement dated April 10, 2013; all other allegations of fact contained in Plaintiff's Petition paragraph 78 are hereby denied.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

58. Defendant admits that the Operating Agreement contains provisions regarding Member ownership; use of assets; withdrawals of Members; and dissolution of KSS, LLC, all other allegations of fact contained in Plaintiff's Petition paragraph 79 are hereby denied.

59. Defendant denies the allegations contained in Plaintiff's Petition paragraph 80.

60. Defendant denies the allegations contained in Plaintiff's Petition paragraph 81.

61. Defendant denies the allegations contained in Plaintiff's Petition paragraph 82.

62. Defendant denies the allegations contained in Plaintiff's Petition paragraph 83.

63. Defendant denies the allegations contained in Plaintiff's Petition paragraph 84.

64. Defendant denies the allegations contained in Plaintiff's Petition paragraph 85.

65. Defendant denies the allegations contained in Plaintiff's Petition paragraph 86.

66. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 86 because it is a prayer; therefore Defendant denies the same.

## COUNT VI – APPOINTMENT OF A RECEIVER

67. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-86, as if fully set forth herein.

68. Defendant admits that the Operating Agreement provides, "[u]pon the enactment of a Resolution of Dissolution, or dissolution by operation of law, no further professional services shall be rendered in Knowledge Strategy Solutions, LLC's name, and no further business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of Knowledge Strategy Solutions, LLC. Maintenance of offices to effectuate the winding up or liquidation of Knowledge Strategy Solutions, LLC, affairs shall not be construed as a continuation of Knowledge Strategy

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

Solutions, LLC," all other allegations of fact contained in Plaintiff's Petition paragraph 88 are hereby denied.

69. Defendant denies the allegations contained in Plaintiff's Petition paragraph 89.

70. Defendant admits that the Operating Agreement provides that, "in the event of dissolution each Member owes a duty to Knowledge Strategy Solutions, LLC, and its clients to complete all unfinished work, and each Member selected by a client to continue such work shall hold the other Members and Knowledge Strategy Solutions, LLC, harmless in that regard," all other allegations of fact contained in Plaintiff's Petition paragraph 90 are hereby denied.

71. Defendant denies the allegations contained in Plaintiff's Petition paragraph 91.

72. Defendant admits the allegations contained in Plaintiff's Petition paragraph 92.

73. Defendant admits the allegations contained in Plaintiff's Petition paragraph 93.

74. Defendant admits the allegations contained in Plaintiff's Petition paragraph 94.

75. Defendant admits the allegations contained in Plaintiff's Petition paragraph 95.

76. Defendant denies the allegations contained in Plaintiff's Petition paragraph 96.

77. Defendant denies the allegations contained in Plaintiff's Petition paragraph 97.

78. Defendant denies the allegations contained in Plaintiff's Petition paragraph 98.

79. Defendant denies the allegations contained in Plaintiff's Petition paragraph 99.

80. Defendant denies the allegations contained in Plaintiff's Petition paragraph 100.

81. Defendant denies the allegations contained in Plaintiff's Petition paragraph 101.

82. Defendant denies the allegations contained in Plaintiff's Petition paragraph 102.

83. Defendant denies the allegations contained in Plaintiff's Petition paragraph 103.

84. Defendant denies the allegations contained in Plaintiff's Petition paragraph 104.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

85. Defendant denies the allegations contained in Plaintiff's Petition paragraph 105.

86. Defendant denies the allegations contained in Plaintiff's Petition paragraph 106.

87. Defendant denies the allegations contained in Plaintiff's Petition paragraph 107.

88. Defendant denies the allegations contained in Plaintiff's Petition paragraph 108.

89. Defendant denies the allegations contained in Plaintiff's Petition paragraph 109.

90. Defendant denies the allegations contained in Plaintiff's Petition paragraph 110.

91. Defendant can neither admit nor deny Plaintiff's Petition paragraph 111 because it is the citation of a statute and not an allegation of fact, therefore Defendant denies the same.

92. Defendant can neither admit nor deny Plaintiff's Petition paragraph 112 because it is the citation of a rule of civil procedure and not an allegation of fact, therefore Defendant denies the same.

93. Defendant denies the allegations contained in Plaintiff's Petition paragraph 113.

94. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 113 because it is a prayer; therefore Defendant denies the same.

## **AFFIRMATIVE DEFENSES**

95. Defendant A. Kershaw, PC having fully Answered Plaintiff's Petition sets forth its Affirmative Defenses as follows:

### *First Affirmative Defense – Lack of Standing*

96. Plaintiff lacks standing to bring a tortuous interference claim for KSS, LLC since it is no longer a member of KSS, LLC.

97. All actions claimed by Plaintiff to be tortuous interference all occurred after Plaintiff's withdrawal took effect, even if using the disputed date of June 30, 2014, as the effective date of Plaintiff's withdrawal from KSS, LLC.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

### *Second Affirmative Defense – Estoppel*

98. Plaintiff represented to Defendant that it had an interest in Plaintiff's claims are barred to the extent its own actions and conduct have estopped them from asserting any claim against Defendant.

### *Third Affirmative Defense –*
### *Lack of a Claim for Which Relief May Be Granted*

99. Plaintiff is barred from pursuing the claims stated in its Petition because it has failed to allege facts in its Petition that state a claim upon which relief may be granted.

### *Fourth Affirmative Defense – Waiver, Estoppel, Laches and Unclean Hands*

100. Plaintiff's claims are barred by the doctrine of waiver, estoppel, laches, and unclean hands.

### *Fifth Affirmative Defense –Barred and Estopped from the Appointment of a Receiver*

101. Plaintiff's request for appointment of receiver is barred and estopped by the Operating Agreement provisions.

102. The Operating Agreement specifically states that the parties will not seek a liquidator or receiver—to wit:

> Accordingly, each of the Members accepts the provisions under this Operating Agreement as the Member's sole entitlement upon termination of his or her relationship with Knowledge Strategy Solutions, LLC. **Each Member hereby waives and renounces its right to seek an independent adversarial appointment by a court of a liquidator or _receiver_ for Knowledge Strategy Solutions, LLC,** but each does agree to resolve all matters, including, if necessary, by use of the procedure set forth therein in Article Six below. [emphasis added]

Article Six refers to the use of Arbitration to resolve disputes regarding the Operating Agreement.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

103. Defendant reserves the right to assert additional affirmative defenses and matters in avoidance that may be disclosed during the course of further investigation and discovery.

**WHEREFORE** Defendant A. Kershaw, PC prays that this Court dismiss Plaintiff's Petition with each party to bear its own costs and all other relief deemed proper and just.

### DEFENDANT A. KERSHAW, PC'S COUNTERCLAIM AGAINST PLAINTIFF SHANNON SPANGLER, PC

104. Section 2.05 of the Operating Agreement provides, "The Members agree to use their best endeavors towards the successful operating of Knowledge Strategy Solutions, LLC, and at all times shall conduct themselves in a fair and proper manner in all transactions of any nature affecting Knowledge Strategy Solutions, LLC. This includes that all Members shall use best endeavors to keep proper records of all business transacted by or on behalf of Knowledge Strategy Solutions, LLC."

105. Plaintiff requested responsibility for the accounting for KSS, LLC.

106. Shannon Spangler, principle of Plaintiff, requested that her husband, Michael Spangler and his partner Joe P. McNair, both certified public accountants, assist her with KSS, LLC's accounting and tax returns.

107. Anne Kershaw, PC, acquiesced the accounting and tax returns for KSS, LLC, relying on Spangler's representations that she would and could maintain the accounting for KSS, LLC with the help of her husband and husband's business associate.

108. After Plaintiff withdrew from the operating agreement, Anne Kershaw, PC discovered the accounting that had been done by Plaintiff or done at Plaintiff's direction had been grossly mismanaged.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

109. Further, the tax returns prepared by the accountants chosen by Plaintiff were improper and unsubstantiated.

110. The errors and deficiencies in the accounting provided by Plaintiff or Plaintiff's accountants include, but are not limited to:

    a.   Accounting on an accrual versus and cash basis, thereby affecting the Profit and Loss Statement for KSS, LLC;

    b.   Creating distributions instead of salaries for A. Kershaw, PC and Plaintiff;

    c.   Improperly issuing K-1 forms instead of W-2 forms to A. Kershaw, PC and Plaintiff;

    d. Claiming capital account contributions for Plaintiff in the KSS, LLC accounting system without supporting documentation;

    e. Claiming capital account contributions on KSS, LLC's 2013 tax returns without corresponding accounting documentation in KSS, LLC's accounting system; and

    f. Improperly applying receivables and payments in the KSS, LLC's accounting system.

111. Due to the negligence of Plaintiff, individually, A. Kershaw, PC has been damaged in an amount in excess of Twenty-five Thousand Dollars.

**WHEREFORE** A. Kershaw, PC prays that this Court enter a judgment in favor of A. Kershaw, PC against Shannon Spangler, P.C., in an amount in excess of Twenty-five Thousand Dollars and all other relief deemed proper and just.

JAMES W. TIPPIN & ASSOCIATES

/s/ *Dana T. Cutler*

DANA TIPPIN CUTLER   MO#36377

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

21 WEST GREGORY BOULEVARD
KANSAS CITY, MISSOURI  64114
816.471.8575
816.421.0243 – FAX
dtcutler@tippinlawfirm.com

ATTORNEYS FOR A. KERSHAW, PC

**CERTIFICATE OF MAILING**

I hereby certify on this 12th day of November, 2014, I electronically filed the foregoing with the clerk of the court by using the Missouri e-Filing System, which will send a Notice of Electronic Filing to the following:

Todd Russkamp, Esq.           trusskamp@shb.com

Jessica A.E. McKinney, Esq.   jamckinney@shb.com

I further certify that, on the above and foregoing document was mailed first class, postage prepaid, to the following non participant(s) in the Missouri e-Filing System:

None

/s/ *Dana T. Cutler*
DANA TIPPIN CUTLER

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| SHANNON L. SPANGLER, P.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1416-CV18812 |
| | ) |
| v. | ) |
| | ) |
| A. KERSHAW, P.C., et al. | ) |
| | ) |
| Defendants. | ) |

**ANSWER FOR DEFENDANT**
**KNOWLEDGE STRATEGY SOLUTIONS, LLC. NEW YORK**

**COMES NOW** Knowledge Strategy Solutions, LLC-New York (hereinafter "KSS-NY"),

by and through its attorneys, James W. Tippin & Associates and for its Answer states and avers

as follows:

**PARTIES**

1. Defendant admits that S. Spangler, P.C. is a Missouri professional corporation all other

allegations of fact contained in Plaintiff s Petition paragraph I is hereby denied.

2. Defendant admits A. Kershaw, P.C. is a New York professional corporation with its principal

place of business is in New York and its principal is Anne Kershaw.

3. Denies the allegations of fact contained in Plaintiffs Petition paragraph 3, and in further

Answer KSS-Missouri has been terminated and no longer exists.

4. Defendant admits KSS-New York is a limited liability company organized under the laws of

the State of New York with its principal place of business located in the State of New York.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

**JURISDICTION & VENUE**

5. Defendant denies the allegations contained in Plaintiffs Petition paragraph 5.

6. Defendant denies the allegations contained in Plaintiffs Petition paragraph 6.

7. Defendant admits that it entered into an operating agreement on or about April 10, 2013.

All other allegations of fact contained in Plaintiff s Petition paragraph 7 are hereby denied.

8. Defendant admits that Plaintiff and Defendant were the only two members of KSS Missouri.

All other allegations of fact contained in Plaintiffs Petition paragraph 8 are hereby denied.

9. Defendant denies the allegations contained in Plaintiffs Petition paragraph 9, and in further Answer states Plaintiff and Defendant were engaged in providing "law related" services as defined by the American Bar Association to attorneys and law firms.

10. Defendant admits that any member "may withdraw voluntarily or retire from [KSS-MO] by giving not less than thirty (30) days written notice of its intention to do so," all other allegations of fact contained in Plaintiff s Petition paragraph 10 are hereby denied.

11. Defendant admits the allegations contained in Plaintiff s Petition paragraph 11.

12. Defendant admits the allegations contained in Plaintiffs Petition paragraph 12.

13. Defendant denies the allegations contained in Plaintiff s Petition paragraph 13.

14. Defendant denies the allegations contained in Plaintiffs Petition paragraph 14.

15. Defendant denies the allegations contained in Plaintiffs Petition paragraph 15, and in further Answer states Plaintiff had tendered its ownership interest in KSS-Mo on or about June 11, 2014.

16. Defendant denies the allegations contained in Plaintiff s Petition paragraph 16.

17. Defendant denies the allegations contained in Plaintiffs Petition paragraph 17.

18. Defendant denies the allegations contained in Plaintiff s Petition paragraph 18.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

**Defendant's Use and Transfer of Assets**

19. Defendant incorporates all of its Answers to Plaintiff s Petition paragraphs 1-18, as if fully set forth herein.

20. Defendant denies the allegations contained in Plaintiff s Petition paragraph 19.

21. Defendant denies the allegations contained in Plaintiffs Petition paragraph 20.

22. Defendant denies the allegations contained in Plaintiff s Petition paragraph 21.

23. Defendant denies the allegations contained in Plaintiffs Petition paragraph 22.

24. Defendant admits the allegations contained in Plaintiffs Petition paragraph 23.

25. Defendant denies the allegations contained in Plaintiffs Petition paragraph 24.

26. Defendant denies the allegations contained in Plaintiffs Petition paragraph 25.

27. Defendant admits that KSS-NY was formed and its paperwork was filed with Secretary of State of New York on or about July 28, 2014, all other allegations contained in Plaintiff s Petition paragraph 25 are hereby denied.

28. Defendant denies the allegations contained in Plaintiffs Petition paragraph 27.

29. Defendant denies the allegations contained in Plaintiffs Petition paragraph 28.

30. Defendant denies the allegations contained in Plaintiffs Petition paragraph 29.

31. Defendant denies the allegations contained in Plaintiffs Petition paragraph 30.

32. Defendant denies the allegations contained in Plaintiffs Petition paragraph 3l.

33. Defendant denies the allegations contained in Plaintiffs Petition paragraph 32.

34. Defendant admits that the Operating Agreement provided to each member of KSS-Mo "draws as mutual agreed from time to time prior to the end of the year," all other allegations of fact contained in Plaintiffs Petition paragraph 33 are hereby denied.

35. Defendant denies the allegations contained in Plaintiffs Petition paragraph 34.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

36. Defendant denies the allegations contained in Plaintiffs Petition paragraph 35.

37. Defendant denies the allegations contained in Plaintiffs Petition paragraph 36.

38. Defendant denies the allegations contained in Plaintiffs Petition paragraph 37.

39. Defendant denies the allegations contained in Plaintiff's Petition paragraph 38.

40. Defendant denies the allegations contained in Plaintiffs Petition paragraph 39.

41. Defendant denies the allegations contained in Plaintiffs Petition paragraph 40.

42. Defendant denies the allegations contained in Plaintiff s Petition paragraph 41.

43. Defendant denies the allegations contained in Plaintiffs Petition paragraph 42.

## COUNT I - BREACH OF CONTRACT - USEAND/OR TRANSFER OF ASSETS OF KSS-MO BY AK AND KSS-NY

44. Defendant incorporates all of its Answers to Plaintiff s Petition paragraphs 1-42, as if fully set forth herein.

45. Defendant denies the allegations contained in Plaintiff s Petition paragraph 44

46. Defendant denies the allegations contained in Plaintiffs Petition paragraph 45.

47. Defendant denies the allegations contained in Plaintiffs Petition paragraph 46.

48. Defendant denies the allegations contained in Plaintiffs Petition paragraph 47.

49. Defendant denies the allegations contained in Plaintiffs Petition paragraph 48a; 48b; 48c; 48d; 48e; 48f; 48g; and 48h.

50. Defendant denies the allegations contained in Plaintiffs Petition paragraph 49.

51. Defendant denies the allegations contained in Plaintiffs Petition paragraph 50.

52. Defendant can neither admit nor deny Plaintiffs Petition unnumbered paragraph following paragraph 50 because it is a prayer; therefore Defendant denies the same.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

## COUNT II - BREACH OF CONTRACT - MONTHLY DRAWS

53. Defendant incorporates all of its Answers to Plaintiffs Petition paragraphs 1-50, as if fully set forth herein.

54. Defendant admits that the Operating Agreement provided to each member of KSS-Mo "draws as mutual agreed from time to time prior to the end of the year," all other allegations of fact contained in Plaintiff s Petition paragraph 52 are hereby denied.

55. Defendant denies the allegations contained in Plaintiffs Petition paragraph 53.

56. Defendant denies the allegations contained in Plaintiffs Petition paragraph 54.

57. Defendant denies the allegations contained in Plaintiff s Petition paragraph 55.

58. Defendant denies the allegations contained in Plaintiffs Petition paragraph 56.

59. Defendant denies the allegations contained in Plaintiffs Petition paragraph 57.

60. Defendant denies the allegations contained in Plaintiffs Petition paragraph 58.

61. Defendant denies the allegations contained in Plaintiffs Petition paragraph 59.

62. Defendant can neither admit nor deny Plaintiffs Petition unnumbered paragraph following paragraph 59 because it is a prayer; therefore Defendant denies the same.

## COUNT III BREACH OF CONTRACT - CAPITAL ACOUNT

63. Defendant incorporates all of its Answers to Plaintiffs Petition paragraphs 1-59, as if fully set forth herein.

64. Defendant denies the allegations contained in Plaintiffs Petition paragraph 61.

65. Defendant denies the allegations contained in Plaintiffs Petition paragraph 62.

66. Defendant admits the allegations contained in Plaintiffs Petition paragraph 63.

67. Defendant denies the allegations contained in Plaintiffs Petition paragraph 64.

68. Defendant denies the allegations contained in Plaintiffs Petition paragraph 65.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

69. Defendant denies the allegations contained in Plaintiffs Petition paragraph 66.

70. Defendant denies the allegations contained in Plaintiffs Petition paragraph 67.

71. Defendant admits that the Articles of Termination dissolved KSS-Mo all other allegations contained in Plaintiffs Petition paragraph 68 are hereby denied.

72. Defendant denies the allegations contained in Plaintiff s Petition paragraph 69.

73. Defendant denies the allegations contained in Plaintiffs Petition paragraph 70.

74. Defendant denies the allegations contained in Plaintiffs Petition paragraph 71.

75. Defendant denies the allegations contained in Plaintiffs Petition paragraph 72.

76. Defendant can neither admit nor deny Plaintiffs Petition unnumbered paragraph following paragraph 72 because it is a prayer; therefore Defendant denies the same.

## COUNT IV BREACH OF FIDUCIARY DUTIES

77. Defendant incorporates all of its Answers to Plaintiffs Petition paragraphs 1-72, as if fully set forth herein.

78. Defendant denies the allegations contained in Plaintiffs Petition paragraph 74.

79. Defendant denies the allegations contained in Plaintiffs Petition paragraph 75a; 75b; 75c; 75d; 75e; 75f; 75g; 75h; and 75i.

80. Defendant denies the allegations contained in Plaintiffs Petition paragraph 76.

81. Defendant can neither admit nor deny Plaintiffs Petition unnumbered paragraph following paragraph 76 because it is a prayer; therefore Defendant denies the same.

## COUNT V - TORTIOUS INTERFERENCE WITH CONTRACT

82. Defendant incorporates all of its Answers to Plaintiff s Petition paragraphs 1-77, as if fully set forth herein.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

83. Defendant admits that it entered into a valid contract under the Operating Agreement dated April 10, 2013; all other allegations of fact contained in Plaintiff s Petition paragraph 78 are hereby denied.

84. Defendant admits that the Operating Agreement contains provisions regarding ownership; use of assets; withdrawals of members; and dissolution of KSS-Mo, all other allegations of fact contained in Plaintiffs Petition paragraph 79 are hereby denied.

85. Defendant denies the allegations contained in Plaintiffs Petition paragraph 80.

86. Defendant denies the allegations contained in Plaintiffs Petition paragraph 81.

87. Defendant denies the allegations contained in Plaintiffs Petition paragraph 82.

88. Defendant denies the allegations contained in Plaintiffs Petition paragraph 83.

89. Defendant denies the allegations contained in Plaintiffs Petition paragraph 84.

90. Defendant denies the allegations contained in Plaintiffs Petition paragraph 85.

91. Defendant denies the allegations contained in Plaintiffs Petition paragraph 86.

92. Defendant can neither admit nor deny Plaintiffs Petition unnumbered paragraph following paragraph 86 because it is a prayer; therefore Defendant denies the same.

## COUNT VI - APPOINTMENT OF A RECEIVER

93. Defendant incorporates all of its Answers to Plaintiff s Petition paragraphs 1-86, as if fully set forth herein.

94. Defendant admits that the Operating Agreement provides, "[u]pon the enactment of a Resolution of Dissolution, or dissolution by operation of law, no further professional services shall be rendered in Knowledge Strategy Solutions, LLC's name, and no further business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of Knowledge Strategy Solutions, LLC. Maintenance of offices to effectuate the

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

winding up or liquidation of Knowledge Strategy Solutions, LLC, affairs shall not be construed as a continuation of Knowledge Strategy Solutions, LLC," all other allegations of fact contained in Plaintiffs Petition paragraph 88 are hereby denied.

95. Defendant denies the allegations contained in Plaintiffs Petition paragraph 89.

96. Defendant admits that the Operating Agreement provides that, "in the event of dissolution each Member owes a duty to Knowledge Strategy Solutions, LLC, and its clients to complete all unfinished work, and each Member selected by a client to continue such work shall hold the other Members and Knowledge Strategy Solutions, LLC, harmless in that regard," all other allegations of fact contained in Plaintiffs Petition paragraph 90 are hereby denied.

97. Defendant denies the allegations contained in Plaintiffs Petition paragraph 91.

98. Defendant admits the allegations contained in Plaintiffs Petition paragraph 92.

99. Defendant admits the allegations contained in Plaintiffs Petition paragraph 93.

100. Defendant admits the allegations contained in Plaintiffs Petition paragraph 94.

101. Defendant admits the allegations contained in Plaintiffs Petition paragraph 95.

102. Defendant denies the allegations contained in Plaintiffs Petition paragraph 96.

103. Defendant denies the allegations contained in Plaintiffs Petition paragraph 97.

104. Defendant denies the allegations contained in Plaintiffs Petition paragraph 98.

105. Defendant denies the allegations contained in Plaintiffs Petition paragraph 99.

106. Defendant denies the allegations contained in Plaintiffs Petition paragraph 100.

107. Defendant denies the allegations contained in Plaintiff's Petition paragraph 101.

108. Defendant denies the allegations contained in Plaintiff's Petition paragraph 102.

109. Defendant denies the allegations contained in Plaintiff's Petition paragraph 103.

110. Defendant denies the allegations contained in Plaintiff's Petition paragraph 104.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

111. Defendant denies the allegations contained in Plaintiff's Petition paragraph 105.

112. Defendant denies the allegations contained in Plaintiff's Petition paragraph 106.

113. Defendant denies the allegations contained in Plaintiff's Petition paragraph 107.

114. Defendant denies the allegations contained in Plaintiff's Petition paragraph 108.

115. Defendant denies the allegations contained in Plaintiff's Petition paragraph 109.

116. Defendant denies the allegations contained in Plaintiff's Petition paragraph 110.

117. Defendant can neither admit nor deny Plaintiff's Petition paragraph 111 because it is the citation of a statute and not an allegation of fact, therefore Defendant denies the same.

118. Defendant can neither admit nor deny Plaintiff's Petition paragraph 112 because it IS the citation of a rule of civil procedure and not an allegation of fact, therefore Defendant denies the same.

119. Defendant denies the allegations contained in Plaintiff's Petition paragraph 113.

120. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 113 because it is a prayer; therefore Defendant denies the same.

## **AFFIRMATIVE DEFENSES**

120. Defendant KSS-Mo having fully Answered Plaintiff's Petition sets forth its Affirmative Defenses as follows:

### *First Affirmative Defense - Lack of Standing*

121. Plaintiff lacks standing to bring a tortuous interference claim for KSS-Mo since it is no longer a member of KSS-Mo.

122. All actions claimed by Plaintiff to be tortuous interference all occurred after Plaintiff s withdrawal took effect, even if using the disputed date of June 30, 2014, as the effective date of Plaintiffs withdrawal from KSS-Mo.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

*Second Affirmative Defense - Estoppel*

123. Plaintiff represented to Defendant that it had an interest in Plaintiffs claims are barred to the extent its own actions and conduct have estopped them from asserting any claim against Defendant.

*Third Affirmative Defense -*

*Lack of a Claim for Which Relief May Be Granted*

124. Plaintiff is barred from pursuing the claims stated in its Petition because it has failed to allege facts in its Petition that state a claim upon which relief may be granted.

*Fourth Affirmative Defense - Waiver, Estoppel, Laches and Unclean Hands*

125. Plaintiff's claims are barred by the doctrine of waiver, estoppel, laches, and unclean hands.

*Fifth Affirmative Defense - Lack of Fiduciary Duty*

126. Plaintiff has included in its Petition a claim for breach of fiduciary duty.

127. Plaintiff asks for relief against A. Kershaw, P.C. only, under its claim for breach of fiduciary duty.

128. Defendant has denied any fiduciary duty to Plaintiff. In abundance of caution and for clarity Defendant sets forth this Affirmative Defense.

129. Defendant was the result of A. Kershaw, P.C. and Plaintiffs Operation Agreement; as such Defendant does not owe Plaintiff a fiduciary duty under how it's operated by its members.

*Sixth Affirmative Defense -Barred and Estoped from the Appointment of a Receiver*

130. Plaintiffs request for appointment of receiver is barred and estoped by the Operating Agreement provisions.

131. The Operating Agreement specifically states that the parties will not seek a liquidator or receiver-to wit:

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

Accordingly, each of the Members accepts the provisions under this Operating Agreement as the Member's sole entitlement upon termination of his or her relationship with Knowledge Strategy Solutions, LLC. *Each Member hereby waives and renounces its right to seek an independent adversarial appointment by a court of a liquidator or receiver for Knowledge Strategy Solutions, LLC,* but each does agree to resolve all matters, including, if necessary, by use of the procedure set forth therein in Article Six below. [Emphasis added]

132. Article Six refers to the use of Arbitration to resolve disputes regarding the Operating Agreement.

133. Defendant reserves the right to assert additional affirmative defenses and matters in avoidance that may be disclosed during the course of further investigation and discovery.

**WHEREFORE** Defendant KSS-NY prays that this Court dismiss Plaintiffs Petition with each party to bear its own costs and all other relief deemed proper and just.

**DEFENDANT KNOWLEDGE STRATEGY SOLUTION, LLC -NY'S
COUNTERCLAIM AGAINST PLAINTIFF
<u>SHANNON SPANGLER, P.C.</u>**

134. Section 2.05 of the Operating Agreement provides, "The Members agree to use their best endeavors towards the successful operating of Knowledge Strategy Solutions, LLC, and at all times shall conduct themselves in a fair and proper manner in all transactions of any nature affecting Knowledge Strategy Solutions, LLC. This includes that all Members shall use best endeavors to keep proper records of all business transacted by or on behalf of Knowledge Strategy Solutions, LLC."

135. Plaintiff requested responsibility for the accounting for KSS-MO.

136. Shannon Spangler, principle of Plaintiff, requested that her husband, Michael Spangler and his partner Joe P. McNair, both certified public accountants, assist her with KSSMO's accounting and tax returns.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

137. Anne Kershaw, PC, acquiesced and allowed Spangler to be responsible for the accounting and tax returns for KSS-MO, relying on Spangler's representations that she would and could maintain the accounting for KSSMO, with the help of her husband and husband's business associate.

138. After Plaintiff withdrew from the operating agreement, Anne Kershaw, PC discovered the accounting that had been done by Plaintiff or done at Plaintiff s direction had been grossly mismanaged.

139. Further, the tax returns prepared by the accountants chosen by Plaintiff were improper and unsubstantiated.

140. The errors and deficiencies III the accounting provided by Plaintiff or Plaintiffs accountants include, but are not limited to:

> a. Accounting on an accrual versus and cash basis, thereby affecting the Profit and Loss Statement for KSS-MO;
>
> b. Creating distributions instead of salaries for A. Kershaw, PC and Plaintiff;
>
> c. Improperly issuing K-1 forms instead of W-2 forms to A. Kershaw, PC and Plaintiff;
>
> d. Claiming capital account contributions for Plaintiff in the KSS-MO accounting system without supporting documentation;
>
> e. Claiming capital account contributions on KSS-MO's tax returns without corresponding accounting documentation in KSS-MO's accounting system; and
>
> f. Improperly applying receivables and payments in the KSS-MO's accounting system.

141. Due to the negligence of Plaintiff, individually, KSS-MO has been damaged in an amount in excess of Twenty-five Thousand Dollars.

Electronically Filed - Jackson - Kansas City - December 05, 2014 - 09:30 AM

**WHEREFORE** Knowledge Strategy Solutions, LLC-NY prays that this Court enter a judgment in its favor against Shannon Spangler, P.C. in an amount in excess of Twenty-five Thousand Dollars and all other relief deemed proper and just.

JAMES W. TIPPIN & ASSOCIATES

/s/ *Dana T. Cutler*

DANA TIPPIN CUTLER MO#36377
21 WEST GREGORY BOULEVARD
KANSAS CITY, MISSOURI 64114
816.471.8575
816.421.0243 - FAX
dtcutler@tippinlawfirm.com

ATTORNEYS FOR KNOWLEDGE
STRATEGY SOLUTIONS, LLC-NY

## CERTIFICATE OF MAILING

I hereby certify on this 5th day of December, 2014, I electronically filed the foregoing with the clerk of the court by using the Missouri e-Filing System, which will send a Notice of Electronic Filing to the following:

Todd Russkamp, Esq.                    Jessica A.E. McKinney, Esq.
trusskamp@shb.com                      jamckinneV@shb.com

I further certify that, on the above and foregoing document was mailed first class, postage prepaid, to the following non participant(s) in the Missouri e-Filing System:

None

/s/ *Dana T. Cutler*

DANA TIPPIN CUTLER

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

SHANNON L. SPANGLER, P.C.,

        Plaintiff,

v.

A. KERSHAW, P.C., et al.

        Defendants.

Case No. 1416-CV18812

### ANSWER FOR DEFENDANT KNOWLEDGE STRATEGY SOLUTIONS, LLC.

COMES NOW Knowledge Strategy Solutions, LLC (hereinafter "KSS-Mo"), by and through its attorneys, James W. Tippin & Associates and for its Answer states and avers as follows:

### PARTIES

1. Defendant admits that S. Spangler, P.C. is a Missouri professional corporation all other allegations of fact contained in Plaintiff's Petition paragraph 1 is hereby denied.

2. Defendant admits A. Kershaw, P.C. is a New York professional corporation with its principal place of business is in New York and its principal is Anne Kershaw.

3. Denies the allegations of fact contained in Plaintiff's Petition paragraph 3, and in further Answer KSS-Missouri has been terminated and no longer exists.

4. Defendant admits KSS-New York is a limited liability company organized under the laws of the State of New York with its principal place of business located in the State of New York.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

**JURISDICTION & VENUE**

5.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 5.

6.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 6.

7.  Defendant admits that it entered into an operating agreement on or about April 10, 2013. All other allegations of fact contained in Plaintiff's Petition paragraph 7 are hereby denied.

8.  Defendant admits that Plaintiff and Defendant were the only two members of KSS-Missouri.  All other allegations of fact contained in Plaintiff's Petition paragraph 8 are hereby denied.

9.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 9, and in further Answer states Plaintiff and Defendant were engaged in providing "law related" services as defined by the American Bar Association to attorneys and law firms.

10.  Defendant admits that any member "may withdraw voluntarily or retire from [KSS-MO] by giving not less than thirty (30) days written notice of its intention to do so," all other allegations of fact contained in Plaintiff's Petition paragraph 10 are hereby denied.

11.  Defendant admits the allegations contained in Plaintiff's Petition paragraph 11.

12.  Defendant admits the allegations contained in Plaintiff's Petition paragraph 12.

13.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 13.

14.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 14.

15.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 15, and in further Answer states Plaintiff had tendered its ownership interest in KSS-Mo on or about June 11, 2014.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

16.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 16.

17.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 17.

18.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 18.

**Defendant's Use and Transfer of Assets**

19.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 19.

20.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 20.

21.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 21.

22.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 22.

23.  Defendant admits the allegations contained in Plaintiff's Petition paragraph 23.

24.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 24.

25.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 25.

26.  Defendant admits that KSS-NY was formed and its paperwork was filed with Secretary of State of New York on or about July 28, 2014, all other allegations contained in Plaintiff's Petition paragraph 25 are hereby denied.

27.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 27.

28.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 28.

29.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 29.

30.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 30.

31.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 31.

32.  Defendant denies the allegations contained in Plaintiff's Petition paragraph 32.

33.  Defendant admits that the Operating Agreement provided to each member of KSS-Mo "draws as mutual agreed from time to time prior to the end of the year," all other allegations of fact contained in Plaintiff's Petition paragraph 33 are hereby denied.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

34. Defendant denies the allegations contained in Plaintiff's Petition paragraph 34.

35. Defendant denies the allegations contained in Plaintiff's Petition paragraph 35.

36. Defendant denies the allegations contained in Plaintiff's Petition paragraph 36.

37. Defendant denies the allegations contained in Plaintiff's Petition paragraph 37.

38. Defendant denies the allegations contained in Plaintiff's Petition paragraph 38.

39. Defendant denies the allegations contained in Plaintiff's Petition paragraph 39.

40. Defendant denies the allegations contained in Plaintiff's Petition paragraph 40.

41. Defendant denies the allegations contained in Plaintiff's Petition paragraph 41.

42. Defendant denies the allegations contained in Plaintiff's Petition paragraph 42.

## COUNT I – BREACH OF CONTRACT – USEAND/OR TRANSFER OF ASSETS OF KSS-MO BY AK AND KSS-NY

43. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-42, as if fully set forth herein.

44. Defendant denies the allegations contained in Plaintiff's Petition paragraph 44

45. Defendant denies the allegations contained in Plaintiff's Petition paragraph 45.

46. Defendant denies the allegations contained in Plaintiff's Petition paragraph 46.

47. Defendant denies the allegations contained in Plaintiff's Petition paragraph 47.

48. Defendant denies the allegations contained in Plaintiff's Petition paragraph 48a; 48b; 48c; 48d; 48e; 48f; 48g; and 48h.

49. Defendant denies the allegations contained in Plaintiff's Petition paragraph 49.

50. Defendant denies the allegations contained in Plaintiff's Petition paragraph 50.

51. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 50 because it is a prayer; therefore Defendant denies the same.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

**COUNT II – BREACH OF CONTRACT – MONTHLY DRAWS**

52. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-50, as if fully set forth herein.

53. Defendant admits that the Operating Agreement provided to each member of KSS-Mo "draws as mutual agreed from time to time prior to the end of the year," all other allegations of fact contained in Plaintiff's Petition paragraph 52 are hereby denied.

54. Defendant denies the allegations contained in Plaintiff's Petition paragraph 53.

55. Defendant denies the allegations contained in Plaintiff's Petition paragraph 54.

56. Defendant denies the allegations contained in Plaintiff's Petition paragraph 55.

57. Defendant denies the allegations contained in Plaintiff's Petition paragraph 56.

58. Defendant denies the allegations contained in Plaintiff's Petition paragraph 57.

59. Defendant denies the allegations contained in Plaintiff's Petition paragraph 58.

60. Defendant denies the allegations contained in Plaintiff's Petition paragraph 59.

61. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 59 because it is a prayer; therefore Defendant denies the same.

**COUNT III BREACH OF CONTRACT – CAPITAL ACOUNT**

62. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-59, as if fully set forth herein.

63. Defendant denies the allegations contained in Plaintiff's Petition paragraph 61.

64. Defendant denies the allegations contained in Plaintiff's Petition paragraph 62.

65. Defendant admits the allegations contained in Plaintiff's Petition paragraph 63.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

66. Defendant denies the allegations contained in Plaintiff's Petition paragraph 64.

67. Defendant denies the allegations contained in Plaintiff's Petition paragraph 65.

68. Defendant denies the allegations contained in Plaintiff's Petition paragraph 66.

69. Defendant denies the allegations contained in Plaintiff's Petition paragraph 67.

70. Defendant admits that the Articles of Termination dissolved KSS-Mo all other allegations contained in Plaintiff's Petition paragraph 68 are hereby denied.

71. Defendant denies the allegations contained in Plaintiff's Petition paragraph 69.

72. Defendant denies the allegations contained in Plaintiff's Petition paragraph 70.

73. Defendant denies the allegations contained in Plaintiff's Petition paragraph 71.

74. Defendant denies the allegations contained in Plaintiff's Petition paragraph 72.

75. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 72 because it is a prayer; therefore Defendant denies the same.

## COUNT IV BREACH OF FIDUCIARY DUTIES

76. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-72, as if fully set forth herein.

77. Defendant denies the allegations contained in Plaintiff's Petition paragraph 74.

78. Defendant denies the allegations contained in Plaintiff's Petition paragraph 75a; 75b; 75c; 75d; 75e; 75f; 75g; 75h; and 75i.

79. Defendant denies the allegations contained in Plaintiff's Petition paragraph 76.

80. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 76 because it is a prayer; therefore Defendant denies the same.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACT

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

81. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-77, as if fully set forth herein.

82. Defendant admits that it entered into a valid contract under the Operating Agreement dated April 10, 2013; all other allegations of fact contained in Plaintiff's Petition paragraph 78 are hereby denied.

83. Defendant admits that the Operating Agreement contains provisions regarding ownership; use of assets; withdrawals of members; and dissolution of KSS-Mo, all other allegations of fact contained in Plaintiff's Petition paragraph 79 are hereby denied.

84. Defendant denies the allegations contained in Plaintiff's Petition paragraph 80.

85. Defendant denies the allegations contained in Plaintiff's Petition paragraph 81.

86. Defendant denies the allegations contained in Plaintiff's Petition paragraph 82.

87. Defendant denies the allegations contained in Plaintiff's Petition paragraph 83.

88. Defendant denies the allegations contained in Plaintiff's Petition paragraph 84.

89. Defendant denies the allegations contained in Plaintiff's Petition paragraph 85.

90. Defendant denies the allegations contained in Plaintiff's Petition paragraph 86.

91. Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 86 because it is a prayer; therefore Defendant denies the same.

## COUNT VI – APPOINTMENT OF A RECEIVER

92. Defendant incorporates all of its Answers to Plaintiff's Petition paragraphs 1-86, as if fully set forth herein.

93. Defendant admits that the Operating Agreement provides, "[u]pon the enactment of a Resolution of Dissolution, or dissolution by operation of law, no further professional services shall be rendered in Knowledge Strategy Solutions, LLC's name, and no further

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of Knowledge Strategy Solutions, LLC. Maintenance of offices to effectuate the winding up or liquidation of Knowledge Strategy Solutions, LLC, affairs shall not be construed as a continuation of Knowledge Strategy Solutions, LLC," all other allegations of fact contained in Plaintiff's Petition paragraph 88 are hereby denied.

94. Defendant denies the allegations contained in Plaintiff's Petition paragraph 89.

95. Defendant admits that the Operating Agreement provides that, "in the event of dissolution each Member owes a duty to Knowledge Strategy Solutions, LLC, and its clients to complete all unfinished work, and each Member selected by a client to continue such work shall hold the other Members and Knowledge Strategy Solutions, LLC, harmless in that regard," all other allegations of fact contained in Plaintiff's Petition paragraph 90 are hereby denied.

96. Defendant denies the allegations contained in Plaintiff's Petition paragraph 91.

97. Defendant admits the allegations contained in Plaintiff's Petition paragraph 92.

98. Defendant admits the allegations contained in Plaintiff's Petition paragraph 93.

99. Defendant admits the allegations contained in Plaintiff's Petition paragraph 94.

100.    Defendant admits the allegations contained in Plaintiff's Petition paragraph 95.

101.    Defendant denies the allegations contained in Plaintiff's Petition paragraph 96.

102.    Defendant denies the allegations contained in Plaintiff's Petition paragraph 97.

103.    Defendant denies the allegations contained in Plaintiff's Petition paragraph 98.

104.    Defendant denies the allegations contained in Plaintiff's Petition paragraph 99.

105.    Defendant denies the allegations contained in Plaintiff's Petition paragraph 100.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

106.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 101.

107.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 102.

108.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 103.

109.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 104.

110.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 105.

111.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 106.

112.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 107.

113.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 108.

114.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 109.

115.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 110.

116.     Defendant can neither admit nor deny Plaintiff's Petition paragraph 111 because it is the citation of a statute and not an allegation of fact, therefore Defendant denies the same.

117.     Defendant can neither admit nor deny Plaintiff's Petition paragraph 112 because it is the citation of a rule of civil procedure and not an allegation of fact, therefore Defendant denies the same.

118.     Defendant denies the allegations contained in Plaintiff's Petition paragraph 113.

119.     Defendant can neither admit nor deny Plaintiff's Petition unnumbered paragraph following paragraph 113 because it is a prayer; therefore Defendant denies the same.

## AFFIRMATIVE DEFENSES

120.  Defendant KSS-Mo having fully Answered Plaintiff's Petition sets forth its Affirmative Defenses as follows:

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

### First Affirmative Defense – Lack of Standing

121.  Plaintiff lacks standing to bring a tortuous interference claim for KSS-Mo since it is no longer a member of KSS-Mo.

122.  All actions claimed by Plaintiff to be tortuous interference all occurred after Plaintiff's withdrawal took effect, even if using the disputed date of June 30, 2014, as the effective date of Plaintiff's withdrawal from KSS-Mo.

### Second Affirmative Defense – Estoppel

123.  Plaintiff represented to Defendant that it had an interest in Plaintiff's claims are barred to the extent its own actions and conduct have estopped them from asserting any claim against Defendant.

### Third Affirmative Defense – Lack of a Claim for Which Relief May Be Granted

124.  Plaintiff is barred from pursuing the claims stated in its Petition because it has failed to allege facts in its Petition that state a claim upon which relief may be granted.

### Fourth Affirmative Defense – Waiver, Estoppel, Laches and Unclean Hands

125.  Plaintiff's claims are barred by the doctrine of waiver, estoppel, laches, and unclean hands.

### Fifth Affirmative Defense – Lack of Fiduciary Duty

126.  Plaintiff has included in its Petition a claim for breach of fiduciary duty.

127.  Plaintiff asks for relief against A. Kershaw, P.C. only, under its claim for breach of fiduciary duty.

128.  Defendant has denied any fiduciary duty to Plaintiff.  In an abundance of caution and for clarity Defendant sets forth this Affirmative Defense.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

129.  Defendant was the result of A. Kershaw, P.C. and Plaintiff's Operation Agreement, as such Defendant does not owe Plaintiff a fiduciary duty under how its operated by its members.

*Sixth Affirmative Defense –Barred and Estopped from the Appointment of a Receiver*

130. Plaintiff's request for appointment of receiver is barred and estopped by the Operating Agreement provisions.

131.  The Operating Agreement specifically states that the parties will not seek a liquidator or receiver—to wit:

Accordingly, each of the Members accepts the provisions under this Operating Agreement as the Member's sole entitlement upon termination of his or her relationship with Knowledge Strategy Solutions, LLC. *Each Member hereby waives and renounces its right to seek an independent adversarial appointment by a court of a liquidator or receiver for Knowledge Strategy Solutions, LLC,* but each does agree to resolve all matters, including, if necessary, by use of the procedure set forth therein in Article Six below. [emphasis added]

132.  Article Six refers to the use of Arbitration to resolve disputes regarding the Operating Agreement.

133. Defendant reserves the right to assert additional affirmative defenses and matters in avoidance that may be disclosed during the course of further investigation and discovery.

**WHEREFORE** Defendant KSS-MO prays that this Court dismiss Plaintiff's Petition with each party to bear its own costs and all other relief deemed proper and just.

### DEFENDANT KNOWLEDGE STRATEGY SOLUTION, LLC'S COUNTERCLAIM AGAINST PLAINTIFF SHANNON SPANGLER, P.C.

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

134.  Section 2.05 of the Operating Agreement provides, "The Members agree to use their best endeavors towards the successful operating of Knowledge Strategy Solutions, LLC, and at all times shall conduct themselves in a fair and proper manner in all transactions of any nature affecting Knowledge Strategy Solutions, LLC. This includes that all Members shall use best endeavors to keep proper records of all business transacted by or on behalf of Knowledge Strategy Solutions, LLC."

135.  Plaintiff requested responsibility for the accounting for KSS-MO.

136.  Shannon Spangler, principle of Plaintiff, requested that her husband, Michael Spangler and his partner Joe P. McNair, both certified public accountants, assist her with KSS-MO's accounting and tax returns.

137.  Anne Kershaw, PC, acquiesced the accounting and tax returns for KSS-MO, relying on Spangler's representations that she would and could maintain the accounting for KSS-MO, with the help of her husband and husband's business associate.

138.  After Plaintiff withdrew from the operating agreement, Anne Kershaw, PC discovered the accounting that had been done by Plaintiff or done at Plaintiff's direction had been grossly mismanaged.

139.  Further, the tax returns prepared by the accountants chosen by Plaintiff were improper and unsubstantiated.

140.  The errors and deficiencies in the accounting provided by Plaintiff or Plaintiff's accountants include, but are not limited to:

   a.     Accounting on an accrual versus and cash basis, thereby affecting the Profit and Loss Statement for KSS-MO;

   b.     Creating distributions instead of salaries for A. Kershaw, PC and Plaintiff;

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

c.   Improperly issuing K-1 forms instead of W-2 forms to A. Kershaw, PC and Plaintiff;

d.   Claiming capital account contributions for Plaintiff in the KSS-MO accounting system without supporting documentation;

e.   Claiming capital account contributions on KSS-MO's tax returns without corresponding accounting documentation in KSS-MO's accounting system; and

f.   Improperly applying receivables and payments in the KSS-MO's accounting system.

141. Due to the negligence of Plaintiff, individually, KSS-MO has been damaged in an amount in excess of Twenty-five Thousand Dollars.

**WHEREFORE** Knowledge Strategy Solutions, LLC prays that this Court enter a judgment in its favor against Shannon Spangler, P.C. in an amount in excess of Twenty-five Thousand Dollars and all other relief deemed proper and just.

JAMES W. TIPPIN & ASSOCIATES
/s/ *Dana T. Cutler*
DANA TIPPIN CUTLER   MO#36377
21 WEST GREGORY BOULEVARD
KANSAS CITY, MISSOURI  64114
816.471.8575
816.421.0243 – FAX
dtcutler@tippinlawfirm.com

ATTORNEYS    FOR    KNOWLEDGE
STRATEGY SOLUTIONS, LLC

Electronically Filed - Jackson - Kansas City - November 12, 2014 - 06:18 PM

## CERTIFICATE OF MAILING

I hereby certify on this 31st day of October, 2014, I electronically filed the foregoing with the clerk of the court by using the Missouri e-Filing System, which will send a Notice of Electronic Filing to the following:

Todd Russkamp, Esq.                trusskamp@shb.com

Jessica A.E. McKinney, Esq.        jamckinney@shb.com

I further certify that, on the above and foregoing document was mailed first class, postage prepaid, to the following non participant(s) in the Missouri e-Filing System:

None

/s/ *Dana T. Cutler*
DANA TIPPIN CUTLER

Exhibit "3"

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | | |
|---|---|---|
| SHANNON L. SPANGLER, P.C., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A. KERSHAW, P.C., et al. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | Case No. 1416-CV18812 |
| | ) | |
| SHANNON SPANGLER, individually, | ) | |
| Third-Party Defendant to be served at 70- | ) | |
| 3A Sunrise Ridge Road | ) | |
| Sunrise Beach, Missouri 65079 | ) | |
| | ) | |
| or | ) | |
| | ) | |
| 11422 Bennett Flat Road | ) | |
| Truckee, California 96161 | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

**A. KERSHAW, P.C.'S AMENDED COUNTERCLAIM**

Defendant/Counterclaim-Plaintiff A. Kershaw, P.C., for its Amended Counterclaim against Plaintiff/Counterclaim-Defendant Shannon L. Spangler, P.C. ("Spangler PC") and against Shannon Spangler, individually ("Spangler"), hereby states and alleges as follows:

**ALLEGATIONS COMMON TO COUNTERCLAIM**

**PARTIES**

1.      A. Kershaw, PC ("AKPC") is law firm that was incorporated as a professional corporation in 1999 in New York.

2.      Anne Kershaw (hereinafter "Kershaw") is an attorney licensed to practice law in

1

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

New York and is the sole owner of AKPC.

3.      Spangler PC is a professional corporation organized under the laws of the State of Missouri.  Spangler is the principal of Spangler PC.  Collectively they are referred to herein as "Counterclaim Defendants."

4.      Kershaw is an e-discovery and data management expert and over the course of some fourteen years has developed a substantial practice which included several large law firms as well as Fortune 500 corporate clients.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Counterclaim Defendants because Spangler is a Missouri Resident and Spangler PC is an entity organized under the laws of the State of Missouri.  In addition, Counterclaim Defendants are subject to jurisdiction under R.S. Mo. § 506.500 because they have transacted business in Missouri, made contracts in Missouri (e.g., the Operating Agreement of Knowledge Strategy Solutions, LLC), and committed tortious acts in Missouri.

6.      Venue is proper in this Court under Missouri Rule of Civil Procedure 55.32(g), which allows the joinder of parties to a counterclaim other than those made parties to the original action in accordance with Rules 52.04 and 52.05.

## BACKGROUND

7.      In or about 2004, Kershaw developed a relationship with Spangler when Spangler took a position at Phillip Morris, one of AKPC's clients.

8.      In 2012, Spangler left the Phillip Morris litigation support facility, and Kershaw assisted Spangler in obtaining publishing and speaking engagements.

9.      In 2013, Spangler contacted Kershaw about working together to provide to

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

attorneys and law firms "law related" services (as defined by the American Bar Association), which include areas of e-discovery and data management consulting.

10.     On or about April 10, 2013, AKPC and Spangler PC entered into an Operating Agreement (attached hereto as **Exhibit 1** and incorporated herein by reference) to create a limited liability company organized under the laws of the State of Missouri, named Knowledge Strategy Solutions, LLC ("KSS").

11.     Counterclaim Defendants agreed to provide all start up work and costs including the website and marketing development costs for KSS.

12.     Kershaw agreed to migrate all of AKPC's existing clients, its Microsoft Dynamics Customer Relations Management (CRM) marketing database containing in excess of 20,000 email addresses, and all AKPC and Kershaw work product to KSS, providing Counterclaim Defendants unfettered access to valuable business contacts and know-how.

13.     Spangler and Kershaw contributed Eight Thousand Dollars ($8,000.00) each for a total of Sixteen Thousand Dollars ($16,000.00) to cover estimated overhead for the first year of operation.

14.     Counterclaim Defendants and Kershaw worked on a variety of projects with Kershaw's existing clients, and both participated in speaking and conference engagements.

15.     On or about April 29, 2014, Spangler advised that, because of a pre-existing medical condition, Counterclaim Defendants would no longer be able to perform the work associated with KSS.  Counterclaim Defendants did not disclose this pre-existing medical condition to AKPC before the formation of KSS.

16.     Counterclaim Defendants have failed to provide any medical record or any other evidence setting forth the details of the pre-existing medical condition that renders Spangler

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

unable to work.

17.     As agreed, Kershaw began to advise clients for whom Counterclaim Defendants were doing work that the work would be handled by Kershaw or other individuals hired for the task because of Spangler's medical condition.

18.     Kershaw assumed all of Counterclaim Defendants' tasks, including speaking engagements and conference dates.

19.     Under the terms of the parties' Operating Agreement, only Members are entitled to draws or distributions from Capital Accounts, and only upon agreement of the Members.

20.     Kershaw encouraged Spangler to have Spangler PC remain a Member of KSS through the end of 2014 to allow her to continue to access KSS accounting and systems, and to work out an appropriate withdrawal agreement, which would have included an agreement by Counterclaim Defendants not to use KSS's customer/business information and work product to compete with KSS.

21.     Counterclaim Defendants refused, choosing instead to terminate Spangler PC's Membership in KSS by tendering a withdrawal notice on or about May 11, 2014 on behalf of Spangler PC.  A copy of the letter sent by Spangler providing notice that Spangler PC was withdrawing as a Member of KSS effective June 11, 2014 is attached hereto as **Exhibit 2** and hereby incorporated; *see also* **Ex. 1** at 5 (Article Four of the Operating Agreement).

22.     Counterclaim Defendants then refused (and continue to refuse) to enter into an agreement not to use KSS's clients/business information and work product and not to compete with KSS.  Meanwhile, on May 16, 2014, Spangler registered two new domain names, which appear to be for the purposes of starting a new business.

23.     The effective date of Spangler PC's withdrawal notice, June 11, 2014, triggered

4

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

Spangler PC's removal from all of KSS' s bank accounts; cancellation of KSS credit cards in Spangler's possession; and termination of access to KSS' s accounting system.

24.     Spangler PC's withdrawal terminated its rights as a Member of KSS, including but not limited to Spangler PC's right to participate in the management of KSS.  *See* **Ex. 1**; *see also* R.S. Mo. § 347.121.3 (providing that "[e]xcept as otherwise provided in the operating agreement, upon the withdrawal of a member, the withdrawn member shall have no further right to participate in the management and affairs of the limited liability company . . . .").

25.     Spangler PC's interest in the management of KSS ceased on or about June 11, 2014.

26.     Between May 11, 2014 and June 11, 2014, Spangler PC, through its counsel in this case, communicated with AKPC regarding Spangler PC's withdrawal from KSS.

27.     Pursuant to Section 4.02 of the Operating Agreement, upon the withdrawal of a Member the remaining Member(s) can agree to continue the business of KSS instead of dissolution.

**28.**     AKPC entered into an agreement to continue the work of KSS, as provided for in the Operating Agreement.

## COUNT I – FRAUD
## AGAINST SPANGLER PC AND SPANGLER

29.     AKPC hereby incorporates by reference the allegations in all paragraphs of this Counterclaim as though fully set forth in this paragraph.

30.     Counterclaim Defendants made material representations that they knew, or were reckless in not knowing, were false.

31.     In addition, Counterclaim Defendants committed fraud by omission in that they

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

were in a position of superior knowledge and owed a duty of disclosure to AKPC but violated this duty by failing to disclose material facts.

32.     Counterclaim Defendants made fraudulent representations and fraudulent omissions with the intent that AKPC would act on and rely on them.

33.     Counterclaim Defendants knew, before the Operating Agreement was entered into, that Spangler had an alleged degenerative medical condition that could render her unable to work and for which there is no known cure.

34.     Counterclaim Defendants did not disclose this vital and material information to AKPC or to AKPC's sole principal, Anne Kershaw, before entering into the Operating Agreement on or about April 10, 2013.

35.     Counterclaim Defendants knew that AKPC was relying on them to be able to fulfill Spangler PC's duties as a Member of KSS, and that if it were disclosed that Spangler had an alleged degenerative medical condition, for which there is no known cure, AKPC would not have entered into the Operating Agreement.

36.     Counterclaim Defendants knew at the time of the Operating Agreement that Spangler was not healthy and that Counterclaim Defendants would not be able to fulfill commitments to KSS and consequently to AKPC.

37.     The failure to disclose the true status of Spangler's health was a material fact that should have been disclosed to the sole principal of AKPC, Anne Kershaw, so that a fully informed decision could have been made about whether to enter into an agreement.

38.      In choosing to enter into the Operating Agreement, AKPC reasonably and justifiably relied on Counterclaim Defendants' representation that Spangler was able to do the work envisioned for KSS.  AKPC was unaware of the falsity of that representation and unaware

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

of the (concealed) fact that Spangler was not healthy.

39.     Counterclaim Defendants undertook their course of conduct, including making fraudulent representations and concealing material information, with conscious disregard and/or reckless indifference to the rights of AKPC.

40.     Counterclaim Defendants' fraudulent misrepresentations and misrepresentations by omission have damaged AKPC, with damages including but not limited to lost business opportunities, unnecessary additional expenses and fees (including legal and court expenses), and punitive damages in an amount that is fair and reasonable but which will serve to deter Counterclaim Defendants and others from like conduct in the future;

**WHEREFORE** AKPC prays that this Court enter a judgment in favor of AKPC and against Shannon L. Spangler, P.C. and against Shannon Spangler, individually, in an amount in excess of Twenty-five Thousand Dollars, together with punitive damages, prejudgment and post-judgment interest at the highest interest rate allowed by law, attorneys' fees, and all other relief deemed proper and just.

Dated: April 23, 2015                         Respectfully submitted,

ROUSE HENDRICKS GERMAN MAY PC

By  /s/ Brandon J.B. Boulware
Brandon J.B. Boulware     MO Bar   # 54150
Jeremy M. Suhr            MO Bar   # 60075
1201 Walnut Street, 20th Floor
Kansas City, MO 64106
Tel: (816) 471-7700
Fax: (816) 471-2221
EM: BrandonB@rhgm.com
EM: JeremyS@rhgm.com

*Attorneys for Defendants A. Kershaw, P.C.
and Knowledge Strategy Solutions LLC*

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of April, 2015, the foregoing document was e-filed with the Clerk of the Court by using the Missouri eFiling System, which sent notification of such filing to all counsel of record.

_____/s/ Brandon J.B. Boulware_____
*Attorney for Defendants*

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

# Exhibit 1

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

**OPERATING AGREEMENT FOR**
**KNOWLEDGE STRATEGY SOLUTIONS, LLC**

**A Member-Managed Limited Liability Company**

**THIS OPERATING AGREEMENT** for Knowledge Strategy Solutions, LLC, is made the 10th day of April, 2013, by and between A. Kershaw, PC, a professional corporation incorporated in the State of New York and Shannon L. Spangler, PC, a professional corporation incorporated in the State of Missouri, the MEMBERS ("Members"), for the purpose of forming a Limited Liability Company pursuant to the provisions of Missouri's Limited Liability Company Act (the "Act"), R.S.Mo. Chapter 347. The rights and obligations of the parties are as provided in the Act in effect on April 10, 2013, except as otherwise expressly provide in this Operating Agreement or as provided by an amendment of this Operating Agreement adopted unanimously by the Members.

**Article One**

**THE LIMITED LIABILITY COMPANY**

*1.01 Purpose.* The purpose of Knowledge Strategy Solutions, LLC, is to engage in the business of providing consulting services to organizations regarding data, records and knowledge management, information governance, E-Discovery and related matters, and to engage in any lawful act or activity for which a Limited Liability Company may be formed within the State of Missouri.

(a)     Law-Related Entity – Knowledge Strategy Solutions, LLC, may provide services that would be considered "Law-Related" under ABA Model Rule 5.7 and Missouri Supreme Court Rule 4-5.7, or a "business transaction" with a client under ABA Model Rule 1.8(a) and Missouri Supreme Court Rule 4-1.8(a). Each Member agrees that the services to be provided by Knowledge Strategy Solutions, LLC, are separate and distinct from any legal services that might be provided in other circumstances by either or both of the Members, which are professional corporations qualified to engage in the practice of law; and the principals of each Member, who are lawyers duly qualified to practice in the State(s) in which they are licensed. Each Member further agrees that Knowledge Strategy Solutions, LLC, will take reasonable measures to assure that clients of Knowledge Strategy Solutions, LLC, know that the services that Knowledge Strategy Solutions, LLC, provides are not legal services and that the protections of the client-lawyer relationship may not exist for those services.

*1.02 Name.* Knowledge Strategy Solutions, LLC, shall be operated under the name "Knowledge Strategy Solutions, LLC." All business of Knowledge Strategy Solutions, LLC, shall be conducted solely under that name.

*1.03 Term.* Knowledge Strategy Solutions, LLC, shall continue until dissolved under its terms. Knowledge Strategy Solutions, LLC, shall not be dissolved by the admission of additional Members or by the death, disability, retirement, expulsion, or withdrawal of any Member.

*1.04 Location.* The principal place of the business of Knowledge Strategy Solutions, LLC, shall be 70-3A Sunrise Ridge Drive, Sunrise Beach, Missouri, 65079, unless otherwise agreed by the

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

Members. Knowledge Strategy Solutions, LLC, may establish and maintain additional offices at other locations approved by the Members.

*1.05 Title to Property.* Each Member shall retain separate ownership of its property – both real and personal – that will be used by each in conducting Knowledge Strategy Solutions, LLC ,business. All property contributed to Knowledge Strategy Solutions, LLC (except cash capital contributions) as provided in the Schedule hereto and all property purchased after the effective date of this agreement with funds of Knowledge Strategy Solutions, LLC, shall be owned by Knowledge Strategy Solutions, LLC, as an entity, and no Member shall have any ownership interest in Knowledge Strategy Solutions, LLC, property in its own individual name or right. Each Member's interest in Knowledge Strategy Solutions, LLC, shall be personal property for all purposes.

*1.06 Registered Agent.* $49 Registered Agent Services, LLC, is the initial registered agent, at P.O. Box 1120, Osage Beach, Missouri, 65065.

*1.07 Prior Agreements.* All previous agreements, understandings, and undertakings, whether oral or written, among any Members regarding their association are hereby superseded in their entirety by this Agreement.

## Article Two

### THE MEMBERS

*2.01 Identification of Members.* The Members shall be the signatories to this Operating Agreement and such additional Members as may be admitted in the future.

*2.02 Outside Activities.* The Members each understand that other Member(s) do or may engage in other professional or business activities, including the practice of law. These activities are independent of the activities of Knowledge Strategy Solutions, LLC, and neither Member shall have any claim to revenues, profit or income of the other that is generated by these separate activities absent written agreement otherwise, nor any liability for such other professional or business activities of the other Member.

*2.03 Obligations of Members.* Each Member warrants that the each Member shall, unless it has the consent of other members:

> (a)    Contribute to Knowledge Strategy Solutions, LLC, any opportunity that falls within the following categories of law-related services and/or knowledge strategy services: data and records management; information governance; knowledge management and/or strategy; E-Discovery support services, including expert witness engagements; and E-Discovery dispute resolution.    Members may agree from time to time to contribute additional categories of engagements to Knowledge Strategy Solutions, LLC.

> (b)    Disclose to the other Members any matter that may prejudice the business prospect of Knowledge Strategy Solutions, LLC;

> (c)    Preserve the confidentiality of all business secrets, trade secrets, and other confidential information, including client confidences; and

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

    (d)    Comply with all directions, instructions and rules as to the conduct of Knowledge Strategy Solutions, LLC's business generally as agreed to from time to time by the Members.

*2.04 Limitations on Members.* Each Member warrants that the each Member shall not, unless it has the consent of other Members:

    (a)    Compete with Knowledge Strategy Solutions, LLC, by carrying on or engaging in any business, occupation or activity, or taking steps to set up, promote or facilitate the establishment of any business, occupation or activity which competes with or intends to compete with any part of the business of Knowledge Strategy Solutions, LLC;

    (b)    Employ or terminate the employment of any employee or agent of Knowledge Strategy Solutions, LLC;

    (c)    Loan any money or property belonging to Knowledge Strategy Solutions, LLC, to any other person, firm or business, nor accept any such money or property, whether in the form of a loan or otherwise, on behalf of Knowledge Strategy Solutions, LLC, from any other person, firm or business;

    (d)    Offer a guaranty or agree in the name of Knowledge Strategy Solutions, LLC, to indemnify any person or entity;

    (e)    Accept a guaranty or promise for sums as may be owed to Knowledge Strategy Solutions, LLC, from time to time;

    (f)    Accept any compromise or part-payment of any such sums that may be owed to Knowledge Strategy Solutions, LLC, from time to time;

    (g)    Assign, mortgage, or charge its share in Knowledge Strategy Solutions, LLC, or any part thereof;

    (h)    Open any bank account or borrow any money in the name of or for Knowledge Strategy Solutions, LLC.

*2.05 Best Endeavors.* The Members agree to use their best endeavors towards the successful operating of Knowledge Strategy Solutions, LLC, and at all times shall conduct themselves in a fair and proper manner in all transactions of any nature affecting Knowledge Strategy Solutions, LLC. This includes that all Members shall use best endeavors to keep proper records of all business transacted by or on behalf of Knowledge Strategy Solutions, LLC.

*2.06 Management.* The management of Knowledge Strategy Solutions, LLC, shall be vested in the Members, who may delegate responsibilities to one Member, except that there must be unanimous consent in the exercise of the following decision powers:

    (a)    Admission of new members;

    (b)    Adjustments in the amount of capital;

    (c)    Creation or expansion of debt;

    (d)    Purchase and sale of real estate;

    (e)    Determination of amount of professional liability insurance maintained; and

    (f)    Mergers with or into another company or firm.

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

*2.07 Membership Meetings.* The Members agree that their principals will schedule and attend regular Membership meetings by telephone (or other virtual means) or in person. The Members will use their best efforts to meet in person at least two times a year, at a time and place mutually convenient.

### Article Three

### CAPITAL, DISTRIBUTIONS, AND ALLOCATION OF PROFIT

*3.01 Contributions.* The initial capital of Knowledge Strategy Solutions, LLC, shall be the total sum specified in Schedule A attached hereto, contributed by the Members in the amounts set opposite their respective names in Schedule A. Each of the Members shall forthwith pay into Knowledge Strategy Solutions, LLC, bank account the sum to be contributed by it.

(a)     If at any time the Members decide to increase the capital of Knowledge Strategy Solutions, LLC, the amounts of the increase shall be contributed in such proportions as they may agree or, in default of agreement, in the same proportions as they are entitled to in the capital of Knowledge Strategy Solutions, LLC.

(b)     No Member while in Knowledge Strategy Solutions, LLC, shall withdraw any capital except with the written consent of the other Member.

*3.02 Capital Account.* An individual capital account shall be established and maintained for each Member in accordance with the provisions of the Internal Revenue Code. Each Member's capital account (a) shall be increased by (1) the amount of money and fair market value of property contributed to Knowledge Strategy Solutions, LLC, and (2) the Member's allocable share of income and gain allocated pursuant to this Agreement, and (b) shall be decreased by (1) the amount of money and fair market value of property distributed to that Member and (2) that Member's allocable share of deductions and loss allocated pursuant to this Agreement. No Member shall have a deficit in that Member's capital account at the end of any Knowledge Strategy Solutions, LLC, calendar year.

*3.03 Allocations.* Except as may be required by the Internal Revenue Code, all items of income, gain, deduction, loss, and credit shall be allocated among the Members for each Knowledge Strategy Solutions, LLC, calendar year, in the same order as provided in Section 4.07 (a)-(c) below and in the proportions set forth in Schedule A attached hereto, as may be amended by the Members from time to time.

*3.04 Expenses and Draws.* Each Member is entitled to reimbursement of expenses and distributions of income as follows:

(a)     Each Member will be responsible for all expenses associated with its respective offices, equipment and supplies except for those expenses described in Schedule A attached hereto.

(b)     Each Member agrees that it is not entitled to reimbursement of travel expenses that are not client-chargeable and were incurred without approval of the other Member(s).

(c)     Approved Travel Expenses. Client-chargeable expenses shall be reimbursed by Knowledge Strategy Solutions, LLC, within 30 days of submission of documentation for all expenditures over $25.00. Travel and out-of-pocket expenses incurred by the Member that are

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

not client-chargeable but have been approved by the Member(s) shall be paid directly by each Member and reimbursed pursuant to Schedule A attached hereto. Each Member will provide monthly, by the 10th day of the following month, a full accounting and itemization of the out-of-pocket expenses it incurred on behalf of Knowledge Strategy Solutions, LLC.

(d)     Each Member will be paid draws as mutually agreed from time to time prior to the end of the year. Unless otherwise agreed in writing, within 60 days of Knowledge Strategy Solutions, LLC's calendar year-end, all income shall be distributed in the same order as provided in Section 4.07(a)-(c) below and in the proportions set forth in Schedule A attached hereto, except for an amount agreed by the Members to be held to pay normal operating expenses.

## Article Four

### RIGHTS AND OBLIGATIONS UPON DISSOLUTION OR WITHDRAWAL, DISABILITY, DEATH OR RETIREMENT OF A MEMBER

*4.01 Withdrawal, Retirement, Disability or Death of a Member.* Any Member may withdraw voluntarily or retire from Knowledge Strategy Solutions, LLC, by giving not less than 30 days' written notice of its intention to do so.

*4.02 Dissolution.* The withdrawal, retirement, permanent disability or death of a Member shall operate to dissolve Knowledge Strategy Solutions, LLC, absent other agreement by the remaining Members. In the event of dissolution, the Members shall cause a resolution of dissolution to be enacted stating the effective date of dissolution.

*4.03 Termination of Professional Services.* Upon the enactment of a Resolution of Dissolution, or dissolution by operation of law, no further professional services shall be rendered in Knowledge Strategy Solutions, LLC's name, and no further business shall be transacted from and after the date selected for dissolution except to the extent necessary to wind up the affairs of Knowledge Strategy Solutions, LLC. Maintenance of offices to effectuate the winding up or liquidation of Knowledge Strategy Solutions, LLC, affairs shall not be construed as a continuation of Knowledge Strategy Solutions, LLC.

*4.04 Duty of Members.* Notwithstanding the foregoing, in the event of dissolution each Member owes a duty to Knowledge Strategy Solutions, LLC, and its clients to complete all unfinished work, and each Member selected by a client to continue such work shall hold the other Members and Knowledge Strategy Solutions, LLC, harmless in that regard. In addition:

(a)     Each Member warrants and represents that he or she shall not at any time aid, abet, assist, or encourage a client or any other third party in litigation between a client of Knowledge Strategy Solutions, LLC, on one hand and Knowledge Strategy Solutions, LLC, on the other hand, concerning work performed by Knowledge Strategy Solutions, LLC, for the client, including but not limited to the client's obligation to pay Knowledge Strategy Solutions, LLC, for services rendered to the client on the client's behalf. Nothing contained herein is intended to or shall be construed to interfere with or violate existing statute or case authority requiring persons to comply with subpoenas duly issued and properly served.

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

(b)     The Members covenant to cooperate in every regard in the winding up of Knowledge Strategy Solutions, LLC, affairs and, without limiting the generality of the foregoing, will refrain from the following conduct:

(1)     Transferring Knowledge Strategy Solutions, LLC, assets;

(2)     Failing to comply with client directives to turn over client files;

(3)     Removing client files from the offices of Knowledge Strategy Solutions, LLC, without noting on a permanent log that is available for inspection by any party;

(4)     Refusing any other Member access to Knowledge Strategy Solutions, LLC, offices;

(5)     Removing any Knowledge Strategy Solutions, LLC, books of account or records;

(6)     Refusing access to personal effects, office forms, files, and computer disks and equipment; and

(7)     Tampering with information found in computers and files used by Knowledge Strategy Solutions, LLC, or any Member.

*4.05 Disposition of Client Files.* In the event of dissolution of Knowledge Strategy Solutions, LLC, all files, documents, and records pertaining to each client shall be delivered to the appropriate Members, subject to any written instructions of any client.

*4.06 Costs of Liquidation.* Knowledge Strategy Solutions, LLC, assets shall be used to pay or provide for all debts of Knowledge Strategy Solutions, LLC, and all costs of liquidation.

*4.07 Distribution to Members.* Certain Knowledge Strategy Solutions, LLC, property, such as domain names, websites, trademarks and other elements of goodwill may not be easily converted to cash for distribution to Members. The Members agree to negotiate in good faith regarding the transfer of these property rights to one or more Members in exchange for valuable consideration to be agreed to by the Members. The Members agree that they will negotiate in good faith and use best efforts to come to an amicable and reasonable resolution should there be any disagreement as to the division of intangible property. In all other respects, final distribution to the Members shall be made within 12 months of the date of dissolution, in the following order, after payment of the debts of Knowledge Strategy Solutions, LLC, and the costs of liquidation:

(a)     In payment of loans to or for the benefit of Knowledge Strategy Solutions, LLC;

(b)     To the Members in accordance with their credit balances, if any, of their capital accounts, after giving effect to all contributions, distributions, and allocations for all periods;

(c)     Any indebtedness of any Member to Knowledge Strategy Solutions, LLC, as of the date of dissolution of Knowledge Strategy Solutions, LLC, shall be deducted from each distribution to which he or she may otherwise be entitled pursuant to this Section, to the extent required to satisfy and discharge such indebtedness.

*4.08 Waiver of Right to Court Decree of Dissolution.* The Members agree that irreparable damage would be done to the relationships between Members and clients and to the reputation of Knowledge Strategy Solutions, LLC, if any Member should bring action in court to dissolve

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

Knowledge Strategy Solutions, LLC. Care has been taken in this Operating Agreement to provide fair and just payments to a Member whose relationship with Knowledge Strategy Solutions, LLC, is terminated for any reason. Accordingly, each of the Members accepts the provisions under this Operating Agreement as the Member's sole entitlement upon termination of his or her relationship with Knowledge Strategy Solutions, LLC. Each Member hereby waives and renounces its right to seek an independent adversarial appointment by a court of a liquidator or receiver for Knowledge Strategy Solutions, LLC, but each does agree to resolve all matters, including, if necessary, by use of the procedure set forth therein in Article Six below.

## Article Five
### INSURANCE

*5.01 Insurance Coverage.* Knowledge Strategy Solutions, LLC, shall maintain professional liability and/or errors and omissions insurance coverage for all, in such amounts as the Members may from time to time determine.

## Article Six
### DISPUTE RESOLUTION

*6.01 Arbitration.* Except for controversies regarding the compensation of Members, which are to be determined solely in accordance with the terms of this Operating Agreement, any controversy arising out of or relating to this Operating Agreement shall be settled by mandatory, binding arbitration in accordance with JAMS Streamlined Rules of Arbitration and its Expedited Arbitration Procedures. The parties agree that all conferences, hearings or other proceedings that are part of the arbitration process shall be conducted virtually, whether by telephone, videoconference or web-based meeting tools. Judgment upon any arbitration award rendered in accordance herewith may be entered in any court having jurisdiction thereof.

### Article Seven
### GENERAL PROVISIONS

*7.01 Complete Agreement and Amendments.* The terms and conditions set forth herein constitute the entire agreement between the parties and supersede any communications or previous agreements with respect to the subject matter of this Operating Agreement. There are no written or oral understandings directly or indirectly related to this Operating Agreement that are not set forth herein. No change can be made to this Operating Agreement other than in a writing signed and approved by the Members.

*7.02 Books, Records and Accounting.* Knowledge Strategy Solutions, LLC's books and records, together with all the documents and papers pertaining to the business of Knowledge Strategy Solutions, LLC, shall be maintained in electronic format in a shared space accessible by all Members at any time. Non-digital records shall be converted to a digital format and maintained in the shared space. Any Member may copy Knowledge Strategy Solutions, LLC, records from the shared space at any time. The electronic books and records shall in all circumstances be considered the official records of Knowledge Strategy Solutions, LLC, and every provision in this Agreement relating to such books and records shall apply to the electronic versions to the

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

same extent as they would apply to paper records. Knowledge Strategy Solutions, LLC's records shall be adequately secured, and backups are to be performed as agreed to by the Members. The books and records of Knowledge Strategy Solutions, LLC, shall be kept on a calendar-year basis and shall reflect all Knowledge Strategy Solutions, LLC, transactions and be appropriate and adequate for Knowledge Strategy Solutions, LLC's business.

*7.03 Notices.* Any notice required by this Operating Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party in the first instance by email; receipt of such email notice shall be acknowledged by the recipients by return email within 5 days. If no such acknowledgement is provided, notice must be accomplished by personal delivery or a recognized overnight delivery service such as FedEx.

*7.04 Severability.* If any term of this Operating Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

*7.05 Survival of Rights.* Except as provided herein to the contrary, this Operating Agreement shall be binding upon and inure to the benefit of the parties signatory hereto (as well as to all future parties who are admitted as Members in Knowledge Strategy Solutions, LLC), their respective spouses, heirs, executors, legal representatives, and permitted successors and assigns.

*7.06 Waiver.* The waiver or failure of either party to exercise in any respect any right provided in this agreement shall not be deemed a waiver of any other right or remedy to which the party may be entitled.

*7.07 Further Assurances.* Each party hereto agrees to do all acts and things and to make, execute, and deliver such written instruments as shall from time to time be reasonably required to carry out the terms and provisions of this Operating Agreement.

*7.08 Headings.* The headings in this Operating Agreement are for convenience only, confirm no rights or obligations in either party, and do not alter any terms of this Agreement.

In Witness whereof, the parties have executed this Operating Agreement as of the date first written above.

_____
Anne Kershaw, President of A. Kershaw P.C.

Dated: _____June 26, 2013_____

_____
Shannon Spangler, President of Shannon L. Spangler, P.C.

Dated: _____June 2, 2013_____

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

### Schedule A to Operating Agreement

Pursuant to the Operating Agreement dated April 10, 2013 as amended from time to time by agreement of the Members, the Members agree as follows:

1. **Equal Ownership:** Each Member shall own an equal share in Knowledge Strategy Solutions, LLC, and will share equally in its assets and liabilities, except as otherwise provided in the Operating Agreement and this Schedule A.

2. **Capital Contributions:** The initial capital of Knowledge Strategy Solutions, LLC, shall be as follows, adjusted from time to time as described in Article Three of the Operating Agreement:

   a. **ShannonLSpangler, PC (SLS):**

| Cash/Contribution of Start-Up Expenses | $16,000 |
|---|---|

   b. **AKershaw, PC (AK):**

| Cash/Credit for Infrastructure Contributions | $16,000 |
|---|---|

3. **Other Member Contributions:** The Members agree that the starting Capital Accounts, valued as described in Paragraph 2. above, do not reflect the value of goodwill and other intangible property contributed to Knowledge Strategy Solutions, LLC by the Members.  Instead, the value of goodwill and other intangible property contributed, including but not limited to those contributions described in Paragraphs 3.a-c, is reflected in the revenue allocations set forth in Paragraph 8 below.

   a. AK will make good faith and reasonable efforts to transfer certain of its client matters to Knowledge Strategy Solutions, LLC.  AK has provided a list such client matters and a proposed plan and timeline for transfer (recognizing, of course, that each client will have the final decision regarding transfer).
   b. AK agrees that its client database, referred to as the "CRM," will be made available to Knowledge Strategy Solutions, LLC, for all purposes during the term of the Operating Agreement, as it exists as of the effective date of the Operating Agreement and as expanded or revised over time by AK and/or SLS.
   c. SLS agrees that it will contribute an initial list of potential clients/contacts and will continue to use its best efforts to develop additional potential clients/contacts for addition to the CRM.

4. **Office and Operating Expenses:** Each Member will have responsibility for office and operating expenses attributable to Knowledge Strategy Solutions, LLC, as follows:

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

    a. Members will share (50/50) expenses relating to the day-to-day operations of Knowledge Strategy Solutions, LLC, including but not limited to software licenses for business tools; telephone and other communication tools; payroll systems; employee and contractor costs (except as set forth in Paragraph 6 below); professional liability and/or E&O insurance; domain and website maintenance; business filing fees; subscription services; and professional organization fees.

    b. Members will each bear their own costs relating to their separate offices, including but not limited to computer and hardware expenses; property and premises liability insurance; and employee or contractor expense not related to the business of Knowledge Strategy Solutions, LLC.

5. **Administrative and Business Development:**  Each Member will keep track of time spent performing administrative and business development work and the Members will confer from time to time to discuss and evaluate time spent on this work so as to ensure fair and sensible distributions in light of their respective billable work. SLS's start-up work, including website development work, will not be counted towards administrative or business development.

6. **Support Personnel:**  Upon approval by all Members, each Member will from time to time engage support personnel to work on behalf of Knowledge Strategy Solutions, LLC.  Each Member will be responsible for the costs associated with such personnel and entitled to the benefits of revenue generated by such personnel as follows:

    a. Members will share responsibility equally for the wages and expense reimbursements paid to such support personnel that are non-client chargeable and attributable to administrative work for Knowledge Strategy Solutions, LLC.

    b. Members will share responsibility equally for other expenses related or incidental to support personnel, including payroll taxes and employee benefits.

    c. Revenue realized and wages/expenses incurred from client-chargeable work performed by support personnel shall be allocated according to the formulas set forth in Paragraph 8 below.

    d. All wages, expense reimbursements and other expenses incidental to the retention of support personnel shall be paid by Knowledge Strategy Solutions, LLC.  Each Member will make additional cash capital contributions as may be required from time to time to cover its share of these costs.

7. **Travel and Out-of-Pocket Expenses:**  Each Member will keep an accounting of all approved travel and out-of-pocket expenses incurred in connection with its work for the benefit of Knowledge Strategy Solutions, LLC, noting which are client chargeable and which are administrative in nature, and submit such accounting for the previous month by the 10th day of the following month.  Each Member's approved travel expenses will be reimbursed as follows:

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

    a. Each Member's approved travel expenses will be reimbursed from that Member's secured client revenue, once each Member has secured client revenue available to pay such reimbursements.

    b. Prior to the time a Member has secured client revenue sufficient to pay reimbursements, and/or if such reimbursement would reduce another Member's share of the secured client revenue of the Member to be reimbursed, then Members will discuss an appropriate schedule for the required reimbursement.

8. **Allocations of Revenue:** Except as may be required by the Internal Revenue Code or as specified in paragraph 8(e), all items of income, gain, deduction, loss, and credit shall be allocated among the Members for each fiscal (calendar) year, in accordance with the formulas set forth below:

    a. Revenue from AK work (Member A.Kershaw, P.C.) on AK secured clients will be paid, after reimbursement of travel expenses as set forth above, 100% to AK;

    b. Revenue from AK work (Member A.Kershaw, P.C.) on SLS secured clients will be paid 87.5% to AK and 12.5% to SLS.

    c. Revenue from SLS work (Member ShannonLSpangler, P.C.) on AK secured clients will be as follows:

| Revenue | Portion to SLS | Portion to AK |
|---|---|---|
| Up to $300,000 | 75% | 25% |
| $300,000-$1,000,000 | 80% | 20% |
| More than $1,000,000 | 85% | 15% |

    d. Revenue from SLS work on SLS secured clients will be paid, after reimbursement of travel expenses as set forth above, as follows:

| Revenue | Portion to SLS | Portion to AK |
|---|---|---|
| Up to $300,000 | 75% | 25% |
| $300,000-$1,000,000 | 80% | 20% |
| More than $1,000,000 | 85% | 15% |

    e. Revenue from personnel working on a Member's secured clients will be paid to 100% to that Member.

    f. Any revenue from Altria is payable 100% to the Member billing the work. Revenue from personnel working on any Altria matter will be divided equally between the Members.

    g. The Members agree that they will review and, as necessary, revise the Allocations Formula not less than every two years to fairly reflect the contributions of each Member to Knowledge Strategy Solutions, LLC. In considering whether any revision to the

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

Allocations Formula is appropriate, the Members will take into account the ongoing value of their original goodwill contributions to Knowledge Strategy Solutions and will consider at least the following factors:  (i) the relative percentages of annual revenue for the prior two years attributable to AK secured clients, SLS secured clients, and shared secured clients; (ii) the relative contributions of each Member to the CRM network; (iii) the relative contributions of each Member to administration and business development; and (iv) the average effective rates charged for AK and SLS secured clients and margin contributions.

For purposes of the Allocation Formula set forth in this paragraph 8  , an "AK secured client" means any client that retains Knowledge Strategy Solutions, LLC due to efforts initiated by AK.  A "SLS secured client" means any client that retains Knowledge Strategy Solutions, LLC due to efforts initiated by SLS.  The Members agree that they shall discuss and determine whether a client is AK secured or SLS secured prior to commencing work on any engagement.  They may also agree that any client was secured by their mutual efforts and agree on a percentage allocation of "share."

#          #          #

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

# Exhibit 2

Electronically Filed - Jackson - Kansas City - April 23, 2015 - 05:23 PM

Shannon L. Spangler
ShannonLSpangler, P.C.
70-3A Sunrise Ridge Drive
Sunrise Beach, MO 65079
925-400-3752

May 11, 2014

Dear Anne:

On behalf of ShannonLSpangler, P.C., ("Spangler"), I provide notice of Spangler's withdrawal as a Member from Knowledge Strategy Solutions, LLC, effective June 11, 2014, or upon such other date as mutually agreed upon by the Members.

Best regards,

Shannon L. Spangler
President, ShannonLSpangler, PC

Case 1:16-cv-01250-PAE   Document 1-4   Filed 08/06/15   Page 1 of 2

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

### CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

| | |
|---|---|
| **Plaintiff(s):** | **Defendant(s):** |
| First Listed Plaintiff: | First Listed Defendant: |
| Shannon L. Spangler, P.C. ; | A. Kershaw, P.C. ; |
| **County of Residence:** Jackson County | **County of Residence:** Outside This District |
| | |
| | Additional Defendants(s): |
| | Knowledge Strategy Solutions, LLC ; |

**County Where Claim For Relief Arose:** Jackson County

| | |
|---|---|
| **Plaintiff's Attorney(s):** | **Defendant's Attorney(s):** |
| Todd Ruskamp ( Shannon L. Spangler, P.C.) | Jill D. Olsen ( A. Kershaw, P.C.) |
| Shook Hardy & Bacon, LLP | The Olsen Law Firm, LLC |
| 2555 Grand Blvd | 118 N. Conistor Ln., Suite B 290 |
| Kansas City, Missouri 64108 | Liberty, Missouri 64068 |
| **Phone:** 816-474-6550 | **Phone:** 816-521-8811 |
| **Fax:** 816-421-5547 | **Fax:** 816-278-9493 |
| **Email:** truskamp@shb.com | **Email:** jill@olsenlawkc.com |

**Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

**Citizenship of Principal Parties** (Diversity Cases Only)

    **Plaintiff:** N/A

    **Defendant:** N/A

**Origin:** 2. Removed From State Court

    **State Removal County:** Jackson County

    **State Removal Case Number:** 1416-CV18812

**Nature of Suit:** 190 All Other Contract Actions

**Cause of Action:** Determination of Removed Proceeding, 28 USC 1452

**Requested in Complaint**

Case 1:16-cv-01250-PAE   Document 1-4   Filed 08/06/15   Page 2 of 2

**Class Action:**  Not filed as a Class Action

**Monetary Demand (in Thousands):**

**Jury Demand:**  No

**Related Cases:**  Is NOT a refiling of a previously dismissed action

---

**Signature:** /s/ Jill D. Olsen

**Date:**  08/06/2015

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.